IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GENETEC (USA) INC. and GENETEC INC., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Sensormatic Electronics, LLC ("Sensormatic"), by and for its Complaint for patent infringement against Defendants Genetec (USA) Inc. ("Genetec USA") and Genetec Inc. ("Genetec") (collectively "Defendants"), alleges to the Court as follows:

## PARTIES

1. Sensormatic is a company organized and existing under the laws of the State of Nevada, with a principal place of business located at 6 Technology Park Drive, Westford, Massachusetts 01886.

2. Sensormatic is informed and believes that Genetec USA is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 300 Harmon Meadow Blvd, Suite 407, Secaucus, New Jersey 07094. Genetec USA may be served via its registered agent: Registered Agent Solutions, Inc., 9 E. Loockerman St. Ste. 311, Dover, Delaware 19901.

3. Sensormatic is informed and believes that Genetec is a corporation organized and existing under the laws of Canada, with a principal place of business located at 2280 Alfred-Nobel Blvd., Montreal, Quebec, Canada, H4S 2A4.

1

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising out of Defendants' unauthorized importation, manufacture, use, distribution, offer for sale, and sale of certain video surveillance and access control systems in violation of Sensormatic's patent rights. Because this action for infringement arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Genetec USA at least in that, at all times pertinent hereto, upon information and belief, Genetec USA has been and continues to be incorporated in Delaware and has done and continues to do business within this Judicial District.

6. This Court has personal jurisdiction over Genetec at least in that, at all times pertinent hereto, Genetec has dominated and continues to dominate Genetec USA, a wholly-owned subsidiary that is incorporated in Delaware and doing business in this Judicial District. Genetec USA is little more than Genetec's U.S. office. Among other indicia, there has been and remains substantial overlap in Genetec's and Genetec USA's leadership. On information and belief, Genetec's President and CEO, Pierre Racz, has been and remains the President and Treasurer of Genetec USA. *See* New Jersey Business Gateway Status Report, attached hereto as Exhibit A, at 2; Massachusetts Corporations Division Business Entity Summary, attached hereto as Exhibit B, at 1; Genetec Press Release, attached hereto as Exhibit C, at 2. On information and belief, Alain Cote, an Executive Vice President of Genetec, has been and remains Secretary of Genetec USA. Exs. A at 2; B at 1; and C at 1. On information and belief, Guy Chenard, former Vice President of Sales and current Chief Commercial Officer of Genetec, has been and remains a Vice President or other officer of Genetec USA. Exs. A at 2; B at 1; and C at 1.

7. In addition, through its website, Genetec represents all U.S.-based activity as being that of Genetec, rather than of Genetec USA, which, upon information and belief, does not

appear to maintain any separate commercial personality, engage in separate marketing activities, or maintain its own website. Genetec's website represents Genetec USA's headquarters in Secaucus, New Jersey, as Genetec's U.S. office, and the "Genetec Training Center".

8. Venue is proper in the District of Delaware as to Genetec USA, pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b), at least because Genetec USA resides in, is subject to personal jurisdiction in, and has committed acts of infringement in this District.

9. Venue is proper in the District of Delaware as to Genetec, pursuant to 28 U.S.C. §§ 1391(b) and 1391(c)(3), because Genetec does not reside in the United States, and thus may be sued in any judicial district, including this District.

## BACKGROUND

### SENSORMATIC IS A LEADER IN VIDEO SURVEILLANCE AND ACCESS CONTROL

10. Sensormatic has been a leader in retail solutions since it was founded in 1968 as Sensormatic Electronics Corporation. Since those early beginnings, Sensormatic joined with Tyco International, expanding its offerings to encompass both video surveillance and access control solutions. In 2016, Sensormatic joined Johnson Controls International plc ("JCI") as part of Johnson Controls' merger with Tyco.

11. Sensormatic highly values research and innovation and has a consistent practice of filing for intellectual property protection regarding such innovation. Overall, across all technology areas, Sensormatic has a total of 592 U.S.-issued patents and an additional 246 pending patent applications. Regarding specific technology areas, at least 118 of the issued patents are in the video surveillance space, and at least 78 of the issued patents are in the access control space.

12. JCI has a global team of over 105,000 experts in more than 150 countries and counts over 130 years of innovation. In addition to Sensormatic® and Tyco®, JCI's leading portfolio of building technology and solutions includes some of the most trusted names in the industry, such as American Dynamics, York®, Metasys®, Ruskin®, Titus®, Frick®, Penn®, Sabroe®, Simplex®, Ansul®, and Grinnell®.

13. Today, as part of the JCI family, Sensormatic continues to be synonymous with retail security and remains a leader in video surveillance and access control.

## THE PATENTS-IN-SUIT

14. Sensormatic is the assignee and owner of U.S. Patent No. 7,307,652 ("the '652 patent"). The '652 patent, which is entitled "Method and Apparatus for Object Tracking and Detection," was duly and legally issued by the U.S. Patent and Trademark Office on December 11, 2007. A true and correct copy of the '652 patent is attached hereto as Exhibit D.

15. Sensormatic is the assignee and owner of U.S. Patent No. 9,463,954 ("the '954 patent"). The '954 patent, which is entitled "Access Control System for Override Elevator Control and Method Therefor," was duly and legally issued by the U.S. Patent and Trademark Office on October 11, 2016. A true and correct copy of the '954 patent is attached hereto as Exhibit E.

16. The '652 and '954 patents are collectively referred to herein as the "Patents-in-Suit."

## COUNT I

### INFRINGEMENT OF UNITED STATES PATENT NO. 7,307,652

17. Sensormatic repeats and re-alleges each and every allegation contained in paragraphs 1-16 inclusive, as though fully set forth herein.

18. The '652 patent is valid and enforceable.

19. The '652 patent describing the improved method and apparatus for tracking and detecting moving objects within an environment was filed with the U.S. Patent and Trademark Office on March 7, 2001. The U.S. Patent Office carefully examined the claims that ultimately issued as the '652 patent on December 11, 2007. Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '652 patent, a person having ordinary skill in the art would understand that each claim of the '652 patent (independent or dependent) relates to a separate invention distinct from other claims as for example with dependent claim 2 which is distinct from independent claim 1.

20. The U.S. Patent Office considered the claims of the '652 patent against the background of prior technology to determine if the claims of the '652 patent identified a patentable advance over prior art systems before issuing the patent. Among other things, the U.S. Patent Office searched multiple sets of prior art in classifications including, but not limited to, 348/169, 157, 155; 382/243, 190, 107, 103; and 375/240.08. As an example, classification 348/169 includes patents relating to object tracking. The face of the '652 patent identifies multiple prior art references from the classifications and other prior art considered in allowing the various claims of the '652 patent.

21. A person having ordinary skill in the art would understand that the separate claims in the '652 patent did not pre-empt any field, but are improvements in methods and systems for tracking and detecting a moving object of interest. A person having ordinary skill in the art would also recognize that the claims of the '652 patent do not relate to implementation of a business method on a general purpose computer, but are specific improvements to an object detection system to facilitate data reduction and enhance tracking performance through user input.

22. The filing of this Complaint constitutes notice and actual knowledge in accordance with 35 U.S.C. § 287.

23. Without permission or authorization from Sensormatic, Defendants have imported, manufactured, used, offered for sale, and sold and continues to import, manufacture, use, offer for sale, and sell certain video analytics systems, including, without limitation, Defendants' Omnicast products that include KiwiVision™ Security Video Analytics with KiwiVision™ Intrusion Detector ("KiwiVision"), which infringes at least claim 1 of the '652 patent in violation of 35 U.S.C. § 271(a).

24. Without permission or authorization from Sensormatic and in violation of 35 U.S.C. § 271(b), Defendants are inducing the direct infringement of at least claim 1 of the '652 patent by aiding, abetting, and encouraging their customers' use of KiwiVision with knowledge of the infringement of the '652 patent and with the intent to cause such infringement.

25. For example, the following chart describes how KiwiVision meets each and every claim limitation of claim 1 of the '652 patent:

| U.S. Pat. No. 7,307,652 ||
|---|---|
| 1. A method for detecting a moving object of interest, having a characteristic with a predetermined value, in a field of view of a motion video camera using a video signal received from the motion video camera, said method comprising the steps of: | Genetec's KiwiVision™ Security Video Analytics with KiwiVision™ Intrusion Detector ("KiwiVision") performs object detection for moving objects. KiwiVision includes a Custom Intrusion Detector that detects objects entering or moving in restricted areas based on various parameters. KiwiVision includes an interface that can receive parameters such as minimum speed and minimum detection size to determine how to detect objects, as well as an indication of the restricted area. KiwiVision identifies potential threats and highlights relevant information. KiwiVision predetermines parameters such as allowed paths, speed of motion, or object size to reduce false detections.<br><br>"With this core module, your entire video surveillance system is now on the lookout. It helps you identify individuals, vehicles and objects, and analyze their behavior. It identifies potential threats and highlights relevant information, providing a 360-degree view of |

| U.S. Pat. No. 7,307,652 ||
|---|---|
| | events and shortening response time.  Security video analytics applications include perimeter protection, object detection, area protection, direction control and stopped vehicle detection." (KiwiVision Security Video Analytics, attached hereto as Exhibit F, at 1.)<br><br>"Custom Intrusion Detector: Detects objects entering or moving in restricted areas.  All parameters available." (Ex. F, at 2.)<br><br>"Draw custom detection areas and set the camera's perspective." (Ex. F, at 2.)<br><br>"The KiwiVision Intrusion Detector automatically detects whether people or vehicles have crossed into [critical] areas while considering the object's size, speed, direction, and more."  (KiwiVision Analytics Suite Integration, attached hereto as Exhibit G, at 1.)<br><br>"By predetermining allowed paths, the speed of motion or object size, false detections can be reduced to a minimum. Thus ensuring that neither weather conditions nor animals can lead to alarms." (KiwiSecurity – Intrusion Detector, attached hereto as Exhibit H.) |
| receiving an object qualifying parameter representative of the characteristic with the predetermined value of the moving object of interest; | KiwiVision is configured by importing custom settings or accessing all parameters for more elaborate configuration.  The parameters are associated with predetermined values, such as minimum speed for tracking or minimum detection size for alerting.<br><br>"Custom Intrusion Detector: Detects objects entering or moving in restricted areas.  All parameters available." (Ex. F, at 2.)<br><br>"Import custom settings or access all parameters for more elaborate configuration." (Ex. F, at 2.)<br><br>This image depicts parameters such as minimum speed for object tracking and minimum detection size for alert generation. |

| U.S. Pat. No. 7,307,652 ||
|---|---|
| | (Ex. F, at 2.) |
| receiving an indication of a selected monitoring area in said field of view; | KiwiVision allows the camera's perspective to be set, defining the field of view.  KiwiVision receives inputs for drawing custom detection areas in the field of view.  For example, an alarm region and a source region can be drawn to indicate monitoring areas in the field of view of the camera.<br><br>"Draw custom detection areas and set the camera's perspective." (Ex. F, at 2.)<br><br>"The KiwiVision Intrusion Detector automatically detects whether people or vehicles have crossed into [critical] areas while considering the object's size, speed, direction, and more."  (Ex. G, at 1.) |
| detecting moving objects within said selected monitoring area to determine the value of the characteristic of the moving object of interest for each detected moving object; | "By predetermining allowed paths, the speed of motion or object size, false detections can be reduced to a minimum. Thus ensuring that neither weather conditions nor animals can lead to alarms." (Ex. H.)<br><br>"The KiwiVision Intrusion Detector automatically detects whether people or vehicles have crossed into [critical] areas while considering the object's size, speed, direction, and more."  (Ex. G, at 1.)<br><br>"The speed of motion of objects as well as the minimum object size which leads to an alarm can also be defined individually." (KiwiVision Intrusion Detector Product Sheet, attached hereto as Exhibit I.) |
| determining if a value of the characteristic for | KiwiVision uses predetermined parameter values, such as minimum speed or object size, to identify objects to alert for.  KiwiVision uses |

8

| U.S. Pat. No. 7,307,652 ||
|---|---|
| each detected moving object is within a predefined tolerance of the predetermined value of the moving object of interest; and | these predetermined values to reduce false detections.<br><br>"By predetermining allowed paths, the speed of motion or object size, false detections can be reduced to a minimum. Thus ensuring that neither weather conditions nor animals can lead to alarms." (Ex. H.)<br><br>"The speed of motion of objects as well as the minimum object size which leads to an alarm can also be defined individually." (Ex. I.) |
| generating an indication of detected moving objects having the value of the characteristic within the predefined tolerance. | KiwiVision generates alerts or alarms for the objects that are detected, such as for detected intruders that cross boundaries indicated by alarm regions or that are determined to follow predetermined paths.<br><br>"With this core module, your entire video surveillance system is now on the lookout. It helps you identify individuals, vehicles and objects, and analyze their behavior. It identifies potential threats and highlights relevant information, providing a 360-degree view of events and shortening response time. Security video analytics applications include perimeter protection, object detection, area protection, direction control and stopped vehicle detection." (Ex. F, at 1.)<br><br>"Custom Intrusion Detector: Detects objects entering or moving in restricted areas. All parameters available." (Ex. F, at 2.)<br><br>"Draw custom detection areas and set the camera's perspective." (Ex. F, at 2.)<br><br>"By predetermining allowed paths, the speed of motion or object size, false detections can be reduced to a minimum. Thus ensuring that neither weather conditions nor animals can lead to alarms." (Ex. H.)<br><br>"The KiwiVision Intrusion Detector automatically detects whether people or vehicles have crossed into [critical] areas while considering the object's size, speed, direction, and more." (Ex. G, at 1.) |

26.    Sensormatic reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the information contained herein. This chart is intended to satisfy the notice

requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure; it does not represent Sensormatic's preliminary or final infringement contentions or preliminary or final claim construction positions.

27. Defendants' continued infringement of the '652 patent subsequent to the filing of this Complaint is willful and deliberate.

28. Defendants' conduct has caused and will continue to cause Sensormatic substantial damage, including irreparable harm, for which Sensormatic has no adequate remedy at law, unless and until Defendants are enjoined from infringing the '652 patent.

## COUNT II

### INFRINGEMENT OF UNITED STATES PATENT NO. 9,463,954

29. Sensormatic repeats and re-alleges each and every allegation contained in paragraphs 1-16, inclusive, as though fully set forth herein.

30. The '954 patent is valid and enforceable.

31. The '954 patent describing the improved method and system for controlling and overriding elevator access was filed with the U.S. Patent and Trademark Office on August 7, 2013. The U.S. Patent Office carefully examined the claims that ultimately issued as the '954 patent on October 11, 2016. Consistent with 35 U.S.C. § 282 and the limitations of the claims of the '954 patent, a person having ordinary skill in the art would understand that each claim of the '954 patent (independent or dependent) relates to a separate invention distinct from other claims as for example with dependent claim 16 which is distinct from independent claim 15.

32. The U.S. Patent Office considered the claims of the '954 patent against the background of prior technology to determine if the claims of the '954 patent identified a patentable advance over prior art systems before issuing the patent. Among other things, the U.S. Patent Office searched multiple sets of prior art in classifications including, but not limited

Case 1:20-cv-00760-GBW   Document 1   Filed 06/05/20   Page 11 of 16 PageID #: 11

to, B66B 1/468 (2013.01) and B66B 2201/4676 (2013.01).  As an example, classification B66B 1/468 includes patents relating to call registering systems in elevator control systems.  The face of the '954 patent identifies multiple prior art references from the classifications and other prior art considered in allowing the various claims of the '954 patent.

33. A person having ordinary skill in the art would understand that the separate claims in the '954 patent did not pre-empt any field, but are improvements in methods and systems for controlling and overriding elevator access.  A person having ordinary skill in the art would also recognize that the claims of the '954 patent do not relate to implementation of a business method on a general purpose computer, but are specific improvements to an elevator access control system to enable override in response to conditions defined by security system operators.

34. The filing of this Complaint constitutes notice and actual knowledge in accordance with 35 U.S.C. § 287.

35. Without permission or authorization from Sensormatic, Defendants have imported, manufactured, used, offered for sale, and sold and continues to import, manufacture, use, offer for sale, and sell certain access control systems, including, without limitation, Defendants' Security Center Synergis™ access control system with Destination Dispatch Management plugin, as used in, for example, Synergis™ integration with Otis CompassPlus™, which system infringes at least claim 15 of the '954 patent in violation of 35 U.S.C. § 271(a).

36. Without permission or authorization from Sensormatic and in violation of 35 U.S.C. § 271(b), Defendants are inducing the direct infringement of at least claim 15 of the '954 patent by aiding, abetting, and encouraging their customers' use of Security Center Synergis™

11

with Destination Dispatch with knowledge of the infringement of the '954 patent and with the intent to cause such infringement.

      37. For example, the following chart describes how the Security Center Synergis™ with Destination Dispatch meets each and every claim limitation of claim 15 of the '954 patent:

| | U.S. Pat. No. 9,463,954 |
|---|---|
| 15. A security control method for an elevator system, comprising: | Genetec's Security Center Synergis™ with Destination Dispatch controls a building's elevator dispatch system and access control system from one centralized platform.<br><br>"Centralize management of elevator dispatch and physical security systems" (Security Center Elevator Dispatch Feature Note, attached hereto as Exhibit J, at 1.)<br><br>"Through the Destination Dispatch Management plugin, you manage all elevator traffic from your Security Center unified platform." (Ex. J, at 1.)<br><br>"Manage floor access with your access control system - By unifying destination control, we make it possible to manage floor access with your access control system." (CompassPlus Destination Dispatch, attached hereto as Exhibit K.)<br><br>"CompassPlus Destination Dispatch: Command & Control (SDK) Through the Otis CompassPlus™ integration, you can manage all elevator traffic from your Genetec security platform, Security Center." (Ex. K.)<br><br>"Traditionally, passengers press the 'up' or 'down' elevator call buttons to get to where they need. A modern approach for elevator traffic management exists. With destination dispatch, passengers select their floor and the destination management system guides them to an assigned elevator. This increases passenger flow through orderly travel and optimizes your building operations." (Ex. K.) |
| an access control system providing a landing matrix application programming interface ("API") that accepts landing matrix objects in messages received over a security network; | Genetec's Security Center Synergis™ with Destination Dispatch is implemented through a Synergis™ plugin to Security Center that allows security personnel to manage landing matrices via the security network. An operator can send commands/requests from the Security Center access control system to manage access to floors and landing areas.<br><br>"Manually dispatch passengers from the Security Center monitoring |

| | U.S. Pat. No. 9,463,954 |
|---|---|
| | application," (Ex. J, at 1, 2, diagram.) <br><br> Security Center has three product branches: Synergis™ (access control), Omnicast™ (video analytics) and AutoVu™ (license plate recognition). Genetec advertises the use of SDKs to provide third-party integration into these branches of Security Center, "video surveillance, access control, intrusion detection and license plate recognition function calls are all available through a single software development kit (SDK)." (Genetec Extended Software Development Kit Feature Note, attached hereto as Exhibit L, at 1.) <br><br> "The plugin allows Security Center installations to connect directly to destination dispatch systems and allows you to configure secure landings to the kiosks on a scheduled basis. The plugin also communicates all access control card swipes and pin entry to the elevator system and reports elevator dispatch events in the system." (Ex. J, at 3.) |
| in the access control system, storing one or more landing matrices defining access to floors by one or more elevators; | Genetec's Security Center Synergis™ with Destination Dispatch controls access by linking user credentials with landing matrices to manage floor access. <br><br> "Manage your visitors by granting them temporary access with Bluetooth, NFC, or any other 3rd party readers supported by Synergis. You assign floor access rights, interfloor travel, and security modes to your cardholders and visitors." (Ex. J, at 2.) <br><br> "Augment the global security of your building by centrally managing elevator dispatch, access control, and video systems. Your personnel monitors elevator dispatch events, verifies cardholder authenticity using their pictures and video, and always know who accessed which floors." (Ex. K.) |
| the access control system receiving the landing matrix objects from a security network control system, and overriding the stored landing matrices with the landing matrix objects; and | Genetec's Security Center Synergis™ with Destination Dispatch receives manual override from an operator through the access control system. <br><br> "With a real-time link, you remain aware of elevator activity at all times and have the flexibility to make changes or take action whenever it's needed." (Ex. K.) <br><br> "Operators also benefit from Security Center threat levels for critical situations during which they can manually grant access or dispatch elevators at a moment's notice." (Ex. J, at 1.) <br><br> Operators can further issue a dispatch with an identifier "CIM |

| | U.S. Pat. No. 9,463,954 |
|---|---|
| | override" when dispatching an elevator. (Ex. J, at 2, diagram.) |
| | The dispatch request seen at 2 in diagram can further include characteristics such as VIP status, split grouping status, cart service status, and others. |
| providing the landing matrices to an elevator controller of the elevator. | Genetec's Security Center Synergis$^{TM}$ with Destination Dispatch are able to dispatch elevators. |
| | "Operators also benefit from Security Center threat levels for critical situations during which they can manually grant access or dispatch elevators at a moment's notice." (Ex. J, at 1.) |
| | "The plugin allows Security Center installations to connect directly to destination dispatch systems and allows you to configure secure landings to the kiosks on a scheduled basis." (Ex. J, at 3.) |

38.     Sensormatic reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the information contained herein.  This chart is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure; it does not represent Sensormatic's preliminary or final infringement contentions or preliminary or final claim construction positions.

39.     Defendants' continued infringement of the '954 patent subsequent to the filing of this Complaint is willful and deliberate.

40.     Defendants' conduct has caused and will continue to cause Sensormatic substantial damage, including irreparable harm, for which Sensormatic has no adequate remedy at law, unless and until Defendants are enjoined from infringing the '954 patent.

**REQUEST FOR RELIEF**

Wherefore, Sensormatic prays for judgment as follows:

A.     For a judgment that Defendants have infringed the '652 patent;

B.     For a judgment that Defendants have infringed the '954 patent;

C. For an order preliminarily and permanently enjoining Defendants and their officers, directors, agents, employees, successors, and all persons in privity or active concert or participation with Defendants, directly or indirectly, from infringing the Patents-in-Suit;

D. For a judgment and award that Defendants account for and pay to Sensormatic damages adequate to compensate for Defendants' infringement of the Patents-in-Suit, including lost profits but in no event less than a reasonable royalty;

E. For a judgment and award of any supplemental damages sustained by Sensormatic for any continuing post-verdict infringement of the unexpired Patents-in-Suit until entry of final judgment with an accounting as needed;

F. For a finding that Defendants' post-Complaint infringement is willful and an award of increased damages for willful infringement pursuant to 35 U.S.C. § 284;

G. For an order finding that this case is exceptional under 35 U.S.C. § 285 and awarding Sensormatic its costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees as available by law to be paid by Defendants;

H. For an award of pre-judgment interest, post-judgment interest, and costs in this action; and

I. For an award of such other relief as this Court deems just and proper.

## JURY DEMAND

Sensormatic demands a jury trial on all issues so triable.

*Of Counsel:*

Jeffrey N. Costakos
Kadie M. Jelenchick
Kevin J. Malaney
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400

Daniel P. Flaherty
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
(312) 832-4500

Dated: June 5, 2020

ASHBY & GEDDES

*/s/ Andrew C. Mayo*
_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8TH Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff Sensormatic Electronics, Inc.*

16