**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC, | |
| *Plaintiff,* | CASE NO. 1:20-CV-00760-MN |
| v. | PATENT CASE |
| GENETEC (USA) INC. and GENETEC INC., | JURY TRIAL DEMANDED |
| *Defendant.* | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES,**
**AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(1), Defendants Genetec (USA) Inc. ("Genetec USA") and Genetec Inc. ("Genetec") (collectively "Defendants"), hereby file their Answer, Affirmative Defenses, and Counterclaims to Plaintiff Sensormatic Electronics, LLC's ("Sensormatic") Complaint for Patent Infringement ("Complaint"). Defendants deny the allegations and characterizations in Sensormatic's Complaint unless expressly admitted in the following paragraphs.[1]

**PARTIES**

1.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint and, on that basis, denies all such allegations.

2.     Defendants admit the allegations in Paragraph 2 of the Complaint.

3.     Defendants admit the allegations in Paragraph 3 of the Complaint.

---

[1] To avoid any doubt, Defendants deny liability for all allegations of patent infringement included or implied in the introductory paragraph or in any headings of the Complaint.

## JURISDICTION AND VENUE

4.      Defendants admit that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Sensormatic has made allegations of patent infringement. Defendants deny they have committed or are committing acts of infringement, deny Sensormatic is entitled to any relief, and further deny any remaining allegations in Paragraph 4 of the Complaint.

5.      Defendants admit the allegations in Paragraph 5 of the Complaint.

6.      Defendants do not contest that this Court has personal jurisdiction over Genetec for the purposes of this action.  Defendants deny the remaining allegations in Paragraph 6 of the Complaint.

7.      Defendants deny the allegations in Paragraph 7 of the Complaint.

8.      Defendants admit that venue is proper in the District of Delaware as to Genetec USA. Defendants deny the remaining allegations in Paragraph 8 of the Complaint.

9.      Defendants admit that venue is proper in the District of Delaware as to Genetec. Defendants deny the remaining allegations in Paragraph 9 of the Complaint

## BACKGROUND

10.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and, on that basis, denies all such allegations.

11.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and, on that basis, denies all such allegations.

12.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and, on that basis, deny all such allegations.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint and, on that basis, denies all such allegations.

## THE PATENTS-IN-SUIT

14.     Defendants admit that a document bearing U.S. patent number 7,307,652 ("the '652 patent") entitled "Method and Apparatus for Object Tracking and Detection" bearing an issue date of December 11, 2007, was attached to the Complaint as Exhibit D. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint and, on that basis, deny all such allegations.

15.     Defendants admit that a document bearing U.S. patent number 9,463,954 ("the '954 patent") entitled "Access Control System for Override Elevator Control and Method Therefor" bearing an issue date of October 11, 2016, was attached to the Complaint as Exhibit E. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and, on that basis, deny all such allegations.

16.     Defendants admit the allegations in Paragraph 16 of the Complaint.

## COUNT I: [ALLEGED] INFRINGEMENT OF THE '652 PATENT

17.     Defendants incorporate by reference the answers to paragraphs 1-16 above.

18.     Defendants deny the allegations in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint.

22.     Defendants admit the allegations in Paragraph 22 of the Complaint.

23.     Defendants admit they have sold and offered for sale Defendants' Omnicast products that include KiwiVisionTM Security Video Analytics with KiwiVisionTM Intrusion Detector ("KiwiVision"). Defendants deny the remaining allegations in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations in Paragraph 28 of the Complaint.

**COUNT II: [ALLEGED] INFRINGEMENT OF THE '954 PATENT**

29.     Defendants incorporate by reference the answers to paragraphs 1-28 above.

30.     Defendants deny the allegations in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations in Paragraph 32 of the Complaint.

33.     Defendants deny the allegations in Paragraph 33 of the Complaint.

34.     Defendants admit the allegations in Paragraph 34 of the Complaint.

35.     Defendants admit they have sold and offered for sale Defendants' Security Center SynergisTM access control system with Destination Dispatch Management plugin. Defendants deny the remaining allegations in Paragraph 35 of the Complaint.

36.     Defendants deny the allegations in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations in Paragraph 38 of the Complaint.

39.     Defendants deny the allegations in Paragraph 39 of the Complaint.

4

40.     Defendants deny the allegations in Paragraph 40 of the Complaint.

## [SENSORMATIC'S] REQUEST FOR RELIEF

To the extent that a response is required to Sensormatic's request for relief, Defendants deny that Sensormatic is entitled to any judgment against Defendants and/or an order granting relief in any of the forms requested in parts A-I.

## JURY DEMAND

Defendants admit that Sensormatic requests a trial by jury on all issues so triable under Rule 38(b) of the Federal Rules of Civil Procedure.

## AFFIRMATIVE DEFENSES

Defendants' Affirmative Defenses are listed below. Defendants reserve the right to amend their Answer to add additional Affirmative Defenses consistent with the facts discovered in this case.

## FIRST AFFIRMATIVE DEFENSE

Defendants have not infringed and do not infringe, either literally or under the doctrine of equivalents, under any theory of infringement, any valid, enforceable, and asserted claim of the U.S. patent numbers 7,307,652 ("the '652 patent") or 9,463,954 ("the '954 patent") (collectively the "Patents-in-Suit").

## SECOND AFFIRMATIVE DEFENSE

Each asserted claim of the Patents-in-Suit are invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

To the extent that Sensormatic and/or any predecessors in interest to the Patents-in-Suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287,

or otherwise give proper notice that Defendants' actions allegedly infringe the Patents-in-Suit, Defendants are not liable to Sensormatic for the acts alleged to have been performed before Sensormatic received actual notice that it was allegedly infringing the Patents-in-Suit.

### FOURTH AFFIRMATIVE DEFENSE

Sensormatic's Complaint fails to state a claim upon which relief can be granted because the Patents-in-Suit do not claim patent eligible subject matter under 35 U.S.C. § 101.

### FIFTH AFFIRMATIVE DEFENSE

The claims of the Patents-in-Suit are not entitled to a scope sufficient to encompass any method practiced by Defendants.

### SIXTH AFFIRMATIVE DEFENSE

To the extent that Sensormatic asserts that Defendants indirectly infringe, either by contributory infringement or inducement of infringement, Defendants are not liable to Sensormatic for the acts alleged to have been performed before Defendants knew that their actions would cause the alleged indirect infringement.

### SEVENTH AFFIRMATIVE DEFENSE

Should Defendants be found to infringe any valid, enforceable claim of the Patents-in-Suit, such infringement was not willful.

### EIGHTH AFFIRMATIVE DEFENSE

To the extent Sensormatic asserts that Defendants indirectly infringe, either by contributory infringement or inducement of infringement, Sensormatic has failed to state a claim upon which relief can be granted.

### NINTH AFFIRMATIVE DEFENSE

Sensormatic's claims for damages are statutorily limited or barred by 35 U.S.C. § 286.

## TENTH AFFIRMATIVE DEFENSE

To the extent Sensormatic relies on the doctrine of equivalents to allege infringement, Sensormatic's claims are barred because the asserted scope of the equivalency encompasses or ensnares the prior art.

## ELEVENTH AFFIRMATIVE DEFENSE

Sensormatic has failed to state an essential element for an indirect infringement claim, as it has failed to allege that Defendants had a specific intent to induce direct infringement of the '052 Patent prior to Sensormatic's allegations of indirect infringement by Defendants.

## TWELTH AFFIRMATIVE DEFENSE

Sensormatic is precluded from recovering its reasonable attorneys' fees and/or costs under 35 U.S.C. § 285.

## THIRTEENTH AFFIRMATIVE DEFENSE

Sensormatic is estopped, based on statements, representations, and admissions made during prosecution of the patent application resulting in the Patents-in-Suit and/or applications related thereto, from asserting any interpretations of any valid, enforceable claims of the Patents-in-Suit that would be broad enough to cover any activity of Defendants, either literally or by application of the doctrine of equivalents.

## FOURTEENTH AFFIRMATIVE DEFENSE

Should Defendants be found to infringe any valid, enforceable claim of the Patents-in-Suit, Sensormatic is precluded from recovering increased damages under 35 U.S.C. § 284 and such alleged infringement was not willful.

## FIFTEENTH AFFIRMATIVE DEFENSE

Sensormatic failed to mitigate damages by taking reasonable steps to minimize or prevent the harm that Sensormatic claims to have incurred.

## SIXTEENTH AFFIRMATIVE DEFENSE

Sensormatic is not entitled to any injunctive relief because Sensormatic has, at a minimum, no irreparable injury and an adequate remedy at law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Sensormatic's attempted enforcement of the Patents-in-Suit against Defendants is barred by one or more of the equitable doctrines of estoppel, acquiescence, waiver, and unclean hands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Sensormatic is precluded from enforcing the '652 Patent, which was rendered unenforceable due to the inequitable conduct by one or more of the named inventors or prior assignees during the prosecution thereof as described in detail in Defendants' counterclaim of unenforceability due to inequitable conduct below. Defendants reserve the right to add additional information regarding such inequitable conduct if and when such information is discovered.

## NINETEENTH AFFIRMATIVE DEFENSE

35 U.S.C. § 288 bars Sensormatic from recovering costs associated with this action.

## RESERVATION OF ALL AFFIRMATIVE DEFENSES

Defendants reserve all affirmative defenses permitted under the Federal Rules of Civil Procedure, the patent laws of the United States and/or at law or in equity, that may now exist or may exist in the future based on discovery and further investigation in this case.

## GENETEC (USA) INC.'S AND GENETEC INC.'S COUNTERCLAIMS

For its counterclaims against Counterclaim Defendant Sensormatic Electronics, LLC ("Sensormatic"), Counterclaim Plaintiff Genetec (USA) Inc. ("Genetec USA") and Genetec Inc. ("Genetec") (collectively "Defendants"), allege as follows:

## PARTIES

1.      Genetec USA is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 300 Harmon Meadow Blvd, Suite 407, Secaucus, New Jersey 07094 and registered agent located at Agent Solutions, Inc., 9 E. Loockerman St. Ste. 311, Dover, Delaware 19901.

2.      Genetec is a corporation organized and existing under the laws of Canada, with a principal place of business located at 2280 Alfred-Nobel Blvd., Montreal, Quebec, Canada, H4S 2A4.

3.      Upon information and belief based solely on Paragraph 1 of the Complaint as pled by Sensormatic, Sensormatic is a company organized and existing under the laws of the State of Nevada, with a principal place of business located at 6 Technology Park Drive, Westford, Massachusetts 01886.

## JURISDICTION AND VENUE

4.      Defendants incorporate herein by reference Paragraphs 1-3 above.

5.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code. The jurisdiction of this Court is proper under at least 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

6.      Sensormatic has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District, as set forth in its Complaint.

7.      Based solely on the filing of this action, venue is proper in this District pursuant at least 28 U.S.C. §§ 1391 and 1400.

## COUNT I: DECLARATORY RELIEF REGARDING
## NON-INFRINGEMENT OF THE '652 PATENT

8.      Defendants incorporate herein by reference Paragraphs 1-7 above.

9.      Based on the filing of this action and at least Defendants' first affirmative defense, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe U.S. patent number 7,307,652 ("the '652 patent").

10.     Defendants does not infringe at least Claim 1 of the '652 Patent at least because it does not meet the limitations of "receiving an object qualifying parameter representative of the characteristic", "receiving an indication of a selected monitoring area in said field of view", "detecting moving objects within said selected monitoring area", "determining if a value of the characteristic for each detected moving object is within a predefined tolerance of the predetermined value", and/or "generating an indication of detected moving objects having the value of the characteristic within the predefined tolerance."

11.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Defendants requests a declaration by the Court that Defendants has not infringed and does not infringe any claim of the '652 Patent.

## COUNT II: DECLARATORY RELIEF REGARDING INVALIDITY OF THE '052 PATENT

12.     Defendants incorporate herein by reference Paragraphs 1-11 above.

13.     Based on the filing of this action and at least Defendants' Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '652 Patent.

14.     One or more of the asserted claims of the '652 Patent are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent Nos. 6,445,409 and 6,263,088.

15.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Defendants requests a declaration by the Court that claims of the '652 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without

limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### COUNT III: DECLARATION REGARDING
### UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT

16.    Defendants incorporate herein by reference Paragraphs 1-15 above.

17.    Based on the filing of this action and at least Defendants' Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '652 Patent.

18.    On information and belief, the named inventor of the '652 Patent and/or one or more representatives associated with the filing and prosecution of the application for the '652 Patent made material misrepresentations to the United States Patent and Trademark Office ("USPTO") during prosecution of the '652 Patent with the intent to deceive the examiner and the USPTO.

19.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Defendants request a declaration by the Court that all claims of the '652 Patent are unenforceable due to inequitable conduct because one or more of the individuals referenced above, with the intent to deceive the USPTO, failed to comply with the duty of candor to the USPTO, as set forth in 37 C.F.R. § 1.56, during prosecution of the application that led to the issuance of the '652 Patent.

### THE NAMED INVENTOR OF THE '652 PATENT

20.    On information and belief, due to his extensive involvement with filing and assisting in the prosecution of patent applications, the named inventor of the '652 Patent, Raymond M. Broemmelsiek, was familiar with policies and practices of the USPTO and its procedures, including its duty of good faith and candor.

21.    Mr. Broemmelsiek is a named inventor or assignee on at least nine other U.S. patents and/or patent applications dating back to at least 1996 including but not limited to US 5,574,836 A; US 6,567,881 B1; US 6,867,799 B2; US 7,042,494 B2; US 7,307,652 B2; US 2002/0030741 A1; US 2002/0060692 A1; US 2003/0030725 A1; and US 2006/0158548 A1.

22.    Further, Mr. Broemmelsiek is a named inventor or assignee on at least five non-U.S. patents and/or patent applications dating back to at least 2000 including but not limited to EP 1,382,205 A4; AU 2001/240100 A1; CA 2,445,111 A1; CA 2,282,166 C; and WO 2002/087215 A2.

### THE INITIAL PROSECUTION AND ABANDONMENT OF THE '484 APPLICATION

23.    On March 7, 2001, patent applicant filed U.S. Patent Application Serial No. 09/801,484 (the "'484 Application"), which ultimately issued as U.S. Patent No. 7,307,652, entitled "Method and Apparatus for Object Tracking and Detection" and attached as Exhibit A. The '652 Patent claims priority to Provisional application No. 60/188,171, filed on March 10, 2000. The '484 Application was prepared and filed by an in-house patent attorney for Sensormatic Electronics Corp.; namely, Rick F. Comoglio, Reg. No. 40,963. *See* Exhibit B ('652 Patent File History), Mar. 7, 2001 Transmittal of New Application at pg. 164. Tyco International, Ltd. was subsequently acquired by Sensormatic around August 2001.

24.    On November 10, 2003, USPTO examiner Charles E. Parsons issued the first office action rejecting all 26 claims of the '484 Application under 35 U.S.C. § 102(e) as anticipated by U.S. Patent No. 6,445,409 to Ito *et al*. *Id.* at Nov. 10, 2003 Non-Final Rejection at pg. 123.

25.    Patent applicant responded on February 13, 2004 reserving the right under 37 C.F.R. § 1.131 to establish a date of invention prior to the filing date of the Ito reference. *Id*. at Feb. 13, 2004 Applicant Remarks at pg. 119. The response was prepared and filed by an in-house

patent attorney for Sensormatic's parent company, Tyco Fire & Security Services; namely, Frank A. Cona, Reg. No. 38,412. *Id*. at pg. 120.

26.     On March 15, 2004, the applicant submitted a declaration from Mr. Broemmelsiek attesting to an earlier invention date—which referenced numerous exhibits including Statements of Work, Agreements, and other evidence as well as additional argument and remarks—to support an August 7, 1998 date of invention that would predate the Ito reference's July 28, 1999 filing date. *Id*. at Mar. 15, 2004 § 1.131 Declaration at pg. 93; Mar. 15, 2004 Applicant Remarks at pg. 92. This argument and evidence was prepared and filed by Mr. Cona. *Id*.

27.     On May 28, 2004, Examiner Parsons issued a Final Rejection in view of the Ito reference, indicating that the proffered § 1.131 Declaration was "insufficient to establish a conception of the invention prior to the effective date of the Ito reference [because… t]he subject matter presented in the affidavit as proof of conception and reduction to practice, is not what appears to be claimed." *Id*. at May 28, 2004 Final Rejection at pg. 86.

28.     Patent applicant responded on August 30, 2004, traversing examiner Parsons' "contention that the evidence submitted is insufficient to establish conception of the invention prior to the effective date of the Ito reference" and requesting that the "the rejection under 35 USC 102(e) be withdrawn." *Id*. at Aug. 30, 2004 Applicant Remarks at pgs. 77-82. Mr. Cona also prepared and filed this response. *Id.* at pg. 82.

29.     Unpersuaded, Examiner Parsons issued an Advisory Action on October 19, 2004 considering patent applicant's arguments but maintaining the rejection for a variety of reasons.

5. ☒  The a)☐ affidavit, b)☐ exhibit, or c)☒ request for reconsideration has been considered but does NOT place the
application in condition for allowance because: *See Continuation Sheet*.

...

Continuation of 5. does NOT place the application in condition for allowance because:  Applicants arguments in support of the affidavit
are not persuasive.  The exerpts from the statement of work cited do not contain all of the elements claimed for example inter alia it
macks no mention of a qualifying parameter, or how to determine one required by the claims. The statement of Work does not show a
reduction to practice.  Furthermore it specifically states that the subcontractor(in this case the applicant)  will "help establish the
technology concept"  meaning that others were involved in the conception.  It actually shows that the customer concieved of the idea and
the subcontractor (who is the applicant) is  helping in reducing it to practise.

*Id*. at Oct. 19, 2004 Advisory Action at pgs. 72-73 (consecutive screenshots from two pages combined). In particular, the examiner stated that the affidavit and accompanying documentation "do[es] not contain all elements claimed", "does not show a reduction to practice", and that it actually shows it was not Mr. Broemmelsiek who was the true and only inventor.

30.    Patent applicant elected not to respond. As a result of patent applicant's silence, Examiner Parsons issued a Notice of Abandonment on December 17, 2004, regarding the '484 Application, noting patent applicant's failure to respond the October 19, 2004 Advisory Action within the allotted three-month window. *Id*. at Dec. 17, 2004 Notice of Abandonment at pg. 69. The notice was mailed to, and on information and belief received by, Mr. Cona at his address at Tyco Fire & Security Services.

### THE '484 APPLICATION IS REVIVED

31.    Approximately eighteen months later, on May 18, 2006, patent applicant submitted a petition to revive the '484 Application, paid the required $1500 fee required under 37 CFR § 1.17(m), and specifically attested under 37 CFR § 1.137(b) that the abandonment was unintentional.

4. STATEMENT: The entire delay in filing the required reply from the due date for the required reply until the
filing of a grantable petition under 37 CFR 1.137(b) was unintentional. [NOTE: The United States Patent and
Trademark Office may require additional information if there is a question as to whether either the
abandonment or the delay in filing a petition under 37 CFR 1.137(b) was unintentional (MPEP 711.03(c),
subsections (III)(C) and (D).]

*Id*. at May 18, 2006 Petition for Review at pgs. 65-66.

32.     At this time, patent applicant was no longer represented by Mr. Cona, but rather by outside patent counsel, Mr. Evan R. Sotiriou, Reg. No. 46,247. *Id*. Although it is unclear from the file history of the '652 Patent why Mr. Cona was not engaged to resume prosecution of the '484 Application, on information and belief Mr. Cona remained in his role as managing IP counsel at Tyco during the entire prosecution of the '484 Application. *See* Exhibit C (Mr. Frank Cona LinkedIn page).

33.     Along with the petition to revive, Mr. Sotiriou, filed a Request for Continued Examination including additional remarks arguing that Examiner Parsons had erred in rejecting the inventor declaration eighteen months earlier. Exhibit B, May 18, 2006 Applicant Remarks at pgs. 58-60. In particular, Mr. Sotiriou argued that patent applicant was not required to "show a reduction to practice," that it was "not the purview of the Office to determine whether others were involved in the conception", and that "when all of the evidence submitted is considered in its entirety, all of the elements claimed are described." *Id*. Nowhere in patent applicant's remarks or RCE, however, was an explanation for the "unintentional" eighteen-month delay provided. *Id*.

34.     In a September 14, 2006 letter, patent applicant's request to revive was granted by the Office of Petitions indicating that patent applicant had met the requirements under 37 CFR § 1.137(b).

> The petition satisfies the requirements of 37 CFR 1.137(b) in that petitioner has supplied (1) the reply in the form of a Request for Continued Examination (RCE) under 37 CFR 1.114 with the $790 filing fee and an amendment;  (2) the petition fee of $1,500; and (3) an adequate statement of unintentional delay.  Therefore, the petition is **GRANTED**.

*Id*. at Sep. 14, 2006 USPTO Letter at pg. 50. However, patent applicant's only "statement" regarding the unintentional eighteen-month delay was the default attestation in the Petition for

Review form itself. *See, e.g., id*. at May 18, 2006 Applicant Remarks at pgs. 58-60; May 18, 2006 RCE at pg. 61; May 18, 2006 Petition for Review at pgs. 65-66.

35.     The regulatory guidelines governing USPTO procedure in effect at the time patent applicant attested to the unintentionality of the eighteen-month delay required patent applicants to undertake the requisite investigation when providing a statement of unintentionality to the USPTO:

> "[T]he Office **relies upon the applicant's duty of candor and good faith** and accepts the statement that 'the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(b) was unintentional' without requiring further information in the vast majority of petitions under 37 CFR 1.137(b). This is because the **applicant is obligated under 37 CFR 10.18 to inquire into the underlying facts and circumstances when a practitioner provides this statement to the Office**."

M.P.E.P. § 711(c)(II)(C) (emphasis added).

36.     Following the revival of the '484 Application, prosecution of the '484 Application resumed under a different examiner, Gims S. Philippe. On March 14, 2007, Examiner Philippe issued an office action rejecting all 26 claims under 35 U.S.C. § 102(e) as anticipated by U.S. Patent No. 6,263,088 to Crabtree *et al*. *Id.* at Mar. 14, 2007 Non-Final Rejection at pgs. 38-43. Examiner Philippe did not, however, address Examiner Parsons' 2004 objections regarding the § 1.131 Declaration, either party's arguments regarding the sufficiency of the evidence in support of that Declaration, or the Ito reference's status as prior art. *See id*.

37.     Ultimately, following additional prosecution, Examiner Philippe issued a Notice of Allowance on August 24, 2007. *Id*. at Aug. 24, 2007 Not. of Allowance at pg. 9.

### THE ABANDONMENT OF THE '484 APPLICATION WAS INTENTIONAL

38.     On information and belief, one or more of Mr. Broemmelsiek, Mr. Cona, Mr. Sotiriou, and/or others involved in the prosecution of the '484 Application deliberately deceived the USPTO in attesting that the '484 Application had been unintentionally abandoned. But for this

attestation, the USPTO would not have granted the petition to revive and the '652 Patent would not have issued.

39.    Mr. Broemmelsiek is the named inventor of three U.S. patents and patent applications, all of which stem from the same provisional application: the asserted '652 Patent, U.S. Patent No. 6,867,799 (the "'799 Patent"), and U.S. Patent Application Publication No. 2002/0008758A1 (the "'758 Publication"). A comparison between the '652 Patent, '799 Patent, and '758 Publication is provided in the table below.

|  | '652 Patent | '799 Patent | '758 Publication |
|---|---|---|---|
| **Title** | Method and Apparatus for Object Tracking and Detection | Method and Apparatus for Object Surveillance with a Movable Camera | Method and Apparatus for Video Surveillance with Defined Zones |
| **App. No.** | 09/801,484 (the "'484 Application") | 09/801,483 (the "'483 Application") | 09/801,441 (the "'441 Application) |
| **Parent** | U.S. Prov. App. No. 60/188,171 | U.S. Prov. App. No. 60/188,171 | U.S. Prov. App. No. 60/188,171 |
| **Priority Date** | March 10, 2000 | March 10, 2000 | March 10, 2000 |
| **Date Filed** | March 7, 2001 | March 7, 2001 | March 7, 2001 |
| **Date Granted** | December 11, 2007 | March 15, 2005 | Abandoned |
| **Patent Atty. at Abandonment of '484 Application** | Frank Cona | Frank Cona | Frank Cona |

*See generally* Exhibits A ('652 Patent); B ('652 Patent File History); D ('799 Patent); E ('799 Patent File History); F ('758 Publication); and G ('758 Publication File History).

40.    As is evident from the table above, the patent applications that led to the '652 Patent, '799 Patent, and '758 Publication, were all filed on the same day, claim priority to the same provisional application, feature the same inventor, and were initially prosecuted by the same Tyco in-house patent attorney, Mr. Cona. Moreover, the '652 Patent, '799 Patent, and '758 Publication

all relate to the methods for monitoring "objects of interest" in a field of view of a motion video camera. *Compare, e.g.,* '652 Patent at cl. 1 *with* '799 Patent at cl. 1; '758 Publication at cl. 1.

41.     As detailed further below, the single most reasonable inference to be drawn from the circumstances is that patent applicant deliberately abandoned the '484 Application. The circumstantial evidence strongly suggests that the '484 Application was ***intentionally abandoned*** in favor of one of Mr. Broemmelsiek's related patent applications (the '483 Application, which led to the '799 Patent), which had received a notice of allowance at the time of the '484 Application's abandonment. The circumstantial evidence further suggests that the '484 Application was ***revived*** under false pretenses when yet another of Mr. Broemmelsiek's patent applications (the '441 Application, which led to the '758 Application) encountered difficulty during prosecution. As a result of that difficulty, the '441 Application was ultimately abandoned and never revived, and thus never issued as a U.S. patent.

### *Mr. Cona Abandoned the '484 Application in Favor of the '483 Application*

42.     Unlike the '484 Application, the '483 Application was not abandoned during prosecution and no inventor declaration was required in order to overcome the prior art. The discussion that follows will reference the graphical timeline of pertinent '483 and '484 Application office actions and remarks as provided below.



**'484 Application**
**('652 Patent)**

**'483 Application**
**('799 Patent)**

43.     As noted above, the '483 and '484 Applications were filed at the USPTO on the same day (March 7, 2001) and prosecuted by the same attorney (Mr. Cona). *See generally* Exhibits A, B, D, and E.

44.     During the same timeframe, Mr. Cona was also pursuing prosecution of the '483 Application, but without the difficulties attendant to the '484 Application. As depicted in the timeline above, Examiner Philippe issued a non-final rejection on March 29, 2004, rejecting some claims, but allowing a number of dependent claims subject to the resolution of the rejected independent claims. Exhibit E, Mar. 29, 2004 Non-Final Rejection at pgs. 19-24. In June 21, 2004 Remarks, Mr. Cona argued against Examiner Philippe's rejections. *Id*. at Jun. 21, 2004 Remarks

at pgs. 14-17. Shortly thereafter, on November 3, 2004, Examiner Philippe issued a Notice of Allowance allowing all claims of the '483 Application. *Id.* at Nov. 3, 2004 Notice of Allowance at pg. 5.

45.     Thus, patent applicant and Mr. Cona had knowledge by March 29, 2004 that some claims of the '483 Application were in condition for allowance. And by November 3, 2004, all claims of the '483 Application had been allowed.

46.     Meanwhile, Mr. Cona's prosecution of the related '484 Application was not going as well. In fact, approximately two weeks prior to the '483 Application's November 3rd allowance, the '484 Application and all attempts to predate the Ito reference had been rejected in Examiner Parsons' October 19, 2004 Advisory Action. However, the '484 Application did not become abandoned until weeks later on December 17, 2004. In other words, Mr. Cona could have continued prosecution of the '484 Application after the allowance of the '483 Application but deliberately chose not to. The relative timing of these events is illustrated in the modified timeline below.



47.     On information and belief, the abandonment of the '484 Application that ultimately became the asserted '652 Patent was not "unintentional" within the meaning of 37 C.F.R. § 1.137(b). Rather, on information and belief, the evidence demonstrates that the '484 Application was intentionally abandoned following receipt of the '483 Application's Notice of Allowance.

***Mr. Sotiriou Revived the '484 Application as the '441 Application Began to Fail***

48.     During the '484 Application's eighteen-month abandonment between December 2004 and May 2006, the prosecution of Mr. Broemmelsiek's '483 and '441 Applications continued before the USPTO. As noted above, the '483 Application ultimately issued on March 15, 2005. *See supra* at ¶ 44. In contrast, the '441 Application, went abandoned on October 2, 2008 and never

issued as a U.S. Patent. Exhibit G at Oct. 2, 2008 Abandonment at pgs. 1-2. The discussion that follows will reference the graphical timeline of pertinent '484 and '441 Applications office actions and remarks provided below.





49.     By early 2006, Mr. Sotiriou had taken over prosecution of both the '441 and '484 Applications from Mr. Cona. *See, e.g.,* Exhibit G Apr. 24, 2006 Remarks at pg. 11. Although it is unclear from the file history of the '758 Application why Mr. Cona was not engaged to resume prosecution of the '441 Application, on information and belief Mr. Cona remained in his role as managing IP counsel at Tyco during the entire prosecution of the '441 Application. *See* Exhibit C.

50.     Immediately prior to reviving the '484 Application in May of 2006, Mr. Sotiriou was encountering significant difficulties prosecuting the '441 Application. After nearly five years

of fraught prosecution, the examiner issued a final rejection on January 25, 2006 rejecting all claims of the '441 Application as well as all of patent applicant's extensive arguments and claim amendments. Exhibit G, Jan. 25, 2006 Final Rejection at pgs. 99-107.

51.     Mr. Sotiriou responded with a procedural, rather than a substantive, rebuttal on April 24, 2004 arguing that the examiner's final rejection was not in fact "final" insofar as it included a "new inherency argument" and "respectfully request[ed] removal of the finality of the Office Action." *Id.* at Apr. 24, 2004 Remarks at pg. 7. However, it was clear at the time of Mr. Sotiriou's April 2004 remarks that the examiner's rejection was properly considered "final" and that the last-ditch "new inherency argument" would fail. This was confirmed by the examiner in a June 21, 2006 Advisory Action, as reproduced below.

| Continuation Sheet (PTO-303) | Application No. 09/801,441 |
| --- | --- |
| Continuation of 3. NOTE:  In response to applicant's arguments that the finality of the first action final was improper because of new grounds of rejection. The examiner believes that finality was appropriate because in addressing the added limitations only clarification and explination of previously presented prior art was needed. In addition the amendments to claim 1 filed  4/24/2006 raise new issues. | |

*Id.* at Jun. 21, 2006 Advisory Action at pg. 82.

52.     Accordingly, the most reasonable inference to be drawn from the evidence given the negative trajectory of the '441 Application's prosecution before the USPTO, was that Mr. Sotiriou elected to revive the intentionally-abandoned '484 Application in an effort to reclaim claim scope that would be lost with the impending demise of the '441 Application. As illustrated below, Mr. Sotirou's revival of the '484 Application coincided with the timing of his last-ditch "new inherency argument" in April 2004.





53.  On information and belief, the abandonment of the '484 Application that ultimately became the asserted '652 Patent was not "unintentional" within the meaning of 37 C.F.R. § 1.137(b). Rather, on information and belief, the evidence demonstrates that the '484 Application was intentionally abandoned by Mr. Cona following receipt of the '483 Application's Notice of Allowance and then strategically revived by Mr. Sotirou following notice that the '441 Application would be finally rejected.

### The Revival of the '484 Application was Improper

54.  The USPTO has provided examples of situations where a delay resulting from a deliberately chosen course of action on the part of an applicant is intentional within the meaning of 37 C.F.R. § 1.137(b). These include situations where:

(A) the applicant does not consider the claims to be patentable over the references relied upon in an outstanding Office action;

(B) the applicant does not consider the allowed or patentable claims to be of sufficient breadth or scope to justify the financial expense of obtaining a patent;

(C) the applicant does not consider any patent to be of sufficient value to justify the financial expense of obtaining the patent;

(D) the applicant does not consider any patent to be of sufficient value to maintain an interest in obtaining the patent; or

(E) the applicant remains interested in eventually obtaining a patent, but simply seeks to defer patent fees and patent prosecution expenses.

*See* MPEP 711.03(c)(III)(C)(1).

55.    On information and belief, the most reasonable inference from the evidence demonstrates that patent applicant's abandonment of the '484 Application was intentional, consistent with one or more of the rationales listed above.

56.    For example, on information and belief, the patent applicant and/or Mr. Cona did not consider the claims of the '484 Application to be patentable over the Ito reference relied upon in an outstanding Final Rejection. Therefore, on information and belief, the patent applicant intentionally abandoned prosecution of the '484 Application in favor of continuing the prosecution of the co-pending '483 Application and/or other related applications, with an understanding that at least some of the subject matter that Mr. Broemmelsiek claimed to invent would ultimately be allowed from those other applications.

57.    Patent applicant, through Mr. Cona, continued to prosecute the '483 Application until the '799 Patent was granted on March 15, 2005. *See generally* Exhibit E. And it was not until May 18, 2006 that the '484 Application was revived—517 days after it became abandoned, well after the '484 Application had issued into the '799 Patent, and under the auspices of a different patent attorney, Mr. Sotiriou.

25

58.     At the time of the '484 Application's revival, Mr. Sotirou was prosecuting the struggling '441 Application. On information and belief, Mr. Sotiriou revived the intentionally abandoned '484 Application in an effort to reclaim claim scope that he knew would ultimately be lost with the demise of the '441 Application.

59.     Regardless of Mr. Sotiriou's reasons, the USPTO has issued rules and regulations explaining that the propriety of the applicant's subsequent actions or arguments is irrelevant when delay resulting from a deliberately chosen course of action is intentional:

> Where the applicant deliberately permits an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as "unintentional" within the meaning of § 1.137(b).... ***An intentional delay resulting from a deliberate course of action chosen by the applicant is not affected by***: (1) The correctness of the applicant's (or applicant's representative's) decision to abandon the application or not to seek or persist in seeking revival of the application; (2) the correctness or propriety of a rejection, or other objection, requirement, or decision by the Office; or (3) the discovery of new information or evidence, or other change in circumstances subsequent to the abandonment or decision not to seek or persist in seeking revival.

Changes to Patent Practice and Procedure, 62 Fed. Reg. 53,132, 53,158-59 (Oct. 10, 1997) (to be codified at 37 C.F.R. pt. 1) (emphasis added).

60.     Thus, it is immaterial whether or not Mr. Sotiriou's reasons for reviving the '484 Application were objectively correct—i.e., that Examiner Parsons' various rationales for rejecting Mr. Broemmelsiek § 1.131 Declaration were improper, as Mr. Sotiriou successfully contended in his May 18, 2006 Petition to Revive.[2] *See supra* at ¶¶ 31-37. The most reasonable inference from the evidence suggests that patent applicant made a deliberate decision to abandon the '484

---

[2] Defendants do not concede that Examiner Parsons' rationales were incorrect or that Mr. Sotiriou's contentions opposing those rationales were correct.

Application when faced with Examiner Parsons' rejections rather than engage them in a timely and procedurally proper manner.

61.     On information and belief, one or more individuals associated with filing and the prosecution of the '484 Application—including Mr. Broemmelsiek, Mr. Cona, Mr. Sotiriou, and/or others—in violation of their duty of good faith and candor to the USPTO, caused or assisted in the filing of a false statement. Namely, "that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this section was unintentional", which was required per 37 CFR 1.137(b) to revive the '484 Application.

62.     Moreover, Mr. Sotiriou, in violation of his duty of good faith and candor to the USPTO, failed to adequately "inquire into the underlying facts and circumstances" of the eighteen-month delay as required by M.P.E.P. § 711(c)(II)(C). Had he conducted an adequate investigation, Mr. Sotiriou would have learned that the delay resulted from patent applicant intentionally abandoning prosecution of the '484 Application, at least because the applicant did not consider the claims to be patentable over the references relied upon in an outstanding Final Rejection. At all relevant times, the previous prosecuting attorney with knowledge of the intentional abandonment, Mr. Cona, was employed by Tyco and, on information and belief, was the managing in-house patent attorney supervising Mr. Sotiriou's prosecution of the inventor, Mr. Broemmelsiek's, patent applications. On information and belief, nothing hindered Mr. Sotiriou from interviewing Mr. Cona and/or Mr. Broemmelsiek about the circumstances leading to the abandonment and delay of the '484 Application.

63.     But for Mr. Broemmelsiek's, Mr. Cona's, and/or Mr. Sotiriou's deception, the USPTO, in accordance with its own rules and guidelines, would not have revived the '484

Application and allowed the claims of the '652 Patent to issue. As a result of this inequitable conduct, all claims of the '652 patent are unenforceable.

## COUNT IV: DECLARATORY RELIEF REGARDING NON-INFRINGEMENT OF THE '954 PATENT

64.    Defendants incorporate herein by reference Paragraphs 1-63 above.

65.    Based on the filing of this action and at least Defendants' first affirmative defense, an actual controversy has arisen and now exists between the parties as to whether Defendants infringe U.S. patent number 9,463,954 ("the '954 patent").

66.    Defendants does not infringe at least Claim 15 of the '954 Patent at least because it does not meet the limitations of "an access control system providing a landing matrix application programming interface (API) that accepts landing matrix objects in messages received over a security network", "storing [in the access control system] one or more landing matrices defining access to floors by one or more elevators", "[an] access control system receiving the landing matrix objects from a security network control system, and overriding the stored landing matrices with the landing matrix objects", and/or "providing the landing matrices to an elevator controller of the elevator."

67.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Defendants requests a declaration by the Court that Defendants has not infringed and does not infringe any claim of the '954 Patent.

## COUNT V: DECLARATORY RELIEF REGARDING INVALIDITY OF THE '954 PATENT

68.    Defendants incorporates herein by reference Paragraphs 1-67 above.

69.    Based on the filing of this action and at least Defendants' Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '954 Patent.

70.     One or more of the asserted claims of the '652 Patent are anticipated and/or rendered obvious by, *inter alia*, U.S. Patent No. 8,151,942.

71.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Defendants requests a declaration by the Court that claims of the '954 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## PRAYER FOR RELIEF

WHEREFORE, Defendants asks this Court to enter judgment in Defendants' favor and against Sensormatic by granting the following relief:

a)      a declaration that the asserted claims of the '652 and '954 Patents are invalid;

b)      a declaration that Defendants does not infringe any valid, asserted claim of the '652 and '954 Patents that may be deemed enforceable;

c)      a declaration that the '652 Patent is unenforceable;

d)      a declaration that all U.S. patents and pending U.S. patent applications that are related to the '652 Patent by a shared priority claim are unenforceable due to the doctrine of infectious unenforceability;

e)      a declaration that Sensormatic takes nothing by its Complaint;

f)      judgment against Sensormatic and in favor of Defendants;

g)      dismissal of the claims in Sensormatic's Complaint with prejudice;

h)      a finding that this case is an exceptional case under 35 U.S.C. § 285 and an award to Defendants of its costs and attorneys' fees incurred in this action; and

i)      further relief as the Court may deem just and proper.

## JURY DEMAND

Defendants hereby demands trial by jury on all issues.


Dated:  August 13, 2020                    Respectfully submitted,

**FISH & RICHARDSON P.C.**

/s/ *Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael R. Ellis
Texas Bar No. 24102726
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
njm@fr.com
conrad@fr.com
rbonilla@fr.com
ellis@fr.com

***Attorneys for Defendants***
***Genetec (USA) Inc. and Genetec Inc.***