HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GENETEC (USA) INC. and GENETEC INC.,<br><br>Defendants. | C.A. No. 20-760-MN<br><br>~~FILED UNDER SEAL~~<br>REDACTED VERSION |

# DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF MR. PHILLIP GREEN

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
Janderson@fr.com

Neil J. McNabnay
David B. Conrad
Michael R. Ellis
Sarika Patel
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com; conrad@fr.com;
ellis@fr.com; patel@fr.com

*Counsel for Defendants*
*Genetec (USA) Inc. and Genetec Inc.*

Dated: May 26, 2022

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARDS ....................................................................................................... 1

III. MR. GREEN'S UNRELIABLE DAMAGES OPINIONS SHOULD BE EXCLUDED ... 2

    A. Mr. Green's methodology ........................................................................................ 2

    B. Mr. Green's analysis assumes an inflated "starting point" for his royalty base ....... 3

    C. Mr. Green relies on a market report not tied to the facts of the case ....................... 5

    D. Mr. Green failed to establish the alleged inventions' "footprint in the marketplace" ................................................................................................................. 7

    E. Mr. Green's analysis fails to determine a royalty rate and improperly gives at least 100% of the benefit of the asserted patents to Sensormatic .................................... 9

IV. CONCLUSION ................................................................................................................. 11

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
   430 F. Supp. 2d 346 (D. Del. 2006)......................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..................................................................................................1, 2, 8

*EMC Corp. v. Pure Storage, Inc.*,
   154 F. Supp.3d 81 (D. Del. 2016).........................................................................................2

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
   909 F.3d 398 (Fed. Cir. 2018)...............................................................................................5

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F. 3d 1201 1226 (Fed. Cir. 2014)...................................................................................7

*Gen. Elec. Co. v. Joiner*,
   118 S.Ct. 512 (1997).............................................................................................................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970).......................................................................................9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).............................................................................................................1

*LaserDynamics v. Quanta Computer, Inc.*,
   694 F. 3d 51 (Fed. Cir. 2012)...............................................................................................9

*In re Paoli R.R. Yard PCB Litig. v. Southeastern Penn. Transp. Auth.*,
   35 F.3d 717 (3d Cir. 1994)...................................................................................................2

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)..............................................................................................7

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008)............................................................................................2

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011).......................................................................................7, 11

*VirnetX, Inc. v. Cisco Systems, Inc.*,
   767 F. 3d 1308 (Fed. Cir. 2014)...........................................................................................7

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) ................................................................................................ 1, 4

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................................................ 1

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## TABLE OF EXHIBITS

| Exhibit No. | Exhibit Title |
|---|---|
| 1 | Expert Report of Philip Green |
| 2 | Excerpts from Deposition of Philip Green |
| 3 | Excerpts from Deposition of Florian Matusek |
| 4 | Rebuttal Report of Dr. Nisha Marie Mody |
| 5 | Reply Expert Report of Philip Green |
| 6 | Industry Report 51121 Software Publishing in the US (GENETEC_0171249-90) |
| 7 | Excerpts from Deposition of Alan Conrad Bovik |
| 8 | Excerpts from Deposition of Jon van der Weide |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

# TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| "Sensormatic" or "Plaintiff" | Sensormatic Electronics, LLC |
| "Genetec" or "Defendants" | Genetec (USA) Inc. and Genetec Inc., |
| Asserted Patents | U.S. Patent No. 7,307,652 and U.S. Patent No. 9,463,954 |
| '652 Patent | U.S. Patent No. 7,307,652 |
| '652 Patent Asserted Claims | Claims 1-19 and 25-28 of U.S. Patent No. 7,307,652 |
| '954 Patent | U.S. Patent No. 9,463,954 |
| '954 Patent Asserted Claims | Claims 1-13, 15-22, and 24-26 of U.S. Patent No. 9,463,954 |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## I.   INTRODUCTION

Sensormatic's damages expert, Philip Green, submitted expert reports presenting unreliable economic opinions that violate established patent damages law. Mr. Green's analysis is flawed at every step. He included revenue from non-infringing activity in his royalty base, used an industry report ill-fitted to this case as a proxy for gross profits, failed to apportion entire market value down to the patented features' footprint in the marketplace, and arbitrarily left Genetec no reasonable profit from his hypothetical negotiation. Sensormatic cannot demonstrate the admissibility of this testimony, and any one of these flaws is fatal. This Court should exercise its gatekeeping obligation, set forth in *Daubert* and Federal Rule of Evidence 702, and bar Mr. Green's expert opinions from the jury's consideration.

## II.  LEGAL STANDARDS

*Daubert* and Rule 702 of the Federal Rules of Evidence assign the trial judge the role of "gatekeep[er]" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 & n.7 (1993) . The purpose of the gatekeeping role "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Expert testimony is only admissible under Rule 702 if it is the "product of reliable principles and methods . . . reliably applied . . . to the facts of the case." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012).

The proponent of expert testimony bears the burden of proof on admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.  Specifically, the proponent must prove that testimony is "reliable; it 'must be based on the methods and procedures of science; the

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

expert must have good grounds for his or her belief.'" *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp.3d 81, 91 (D. Del. 2016). Indeed, "[t]he expert must explain how and why he or she has reached the conclusion being proffered and must have as a basis more than a subjective belief or speculation." *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 362 (D. Del. 2006). Accordingly, the Court must exclude expert testimony that is unreliable, speculative, unhelpful, or that invades the province of the jury to find facts. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008).

### III. MR. GREEN'S UNRELIABLE DAMAGES OPINIONS SHOULD BE EXCLUDED

Expert testimony is "reliable when 'grounded in the methods and procedures of science and . . . more than unsupported speculation or subjective belief." *Daubert*, 509 U.S. at 590. Any step that renders the analysis unreliable renders the expert's testimony inadmissible. *See In re Paoli R.R. Yard PCB Litig. v. Southeastern Penn. Transp. Auth.*, 35 F.3d 717, 745 (3d Cir. 1994). 745. The Court should exclude Mr. Green's testimony at trial because his damages analyses and opinions are overstated, improperly apportioned, and would not assist a trier of fact.

#### A. Mr. Green's methodology

Mr. Green presents a damages opinion of a reasonable royalty per unit, where each unit is a sale of a license for the Accused Products. He assumes that the hypothetical negotiation would have occurred between the parties on the date of ███████████████████████████████.

For the products alleged to infringe the '652 Patent, he starts with an opinion that the parties would begin negotiations at ███████████████. (Ex. 1 ¶ 125.) Each unit is, in theory, ███████████████████████████████████████████████████████████████ ███. (Ex. 2 at 69:15–70:23; Ex. 1 ¶ 144). He then assumes gross profit of ███████ ████████████████████████████ (Ex. 1 ¶ 127.) He multiplies this gross profit

2

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

by ▮▮▮ to yield "apportioned profits of at least ▮▮▮" (*Id.* ¶ 130.) Mr. Green stops there and concludes that a reasonable royalty is the entire ▮ "apportioned profits" per perpetual license. (*Id.* ¶ 133.)[1]

His analysis for the '954 Patent follows an identical methodology: (1) ▮▮▮; (2) ▮▮▮; (3) ▮▮▮; and (4) ▮▮▮)[2]

### B. Mr. Green's analysis assumes an inflated "starting point" for his royalty base

Mr. Green's first error is that he inflates the starting point of his reasonable royalty damages calculation, well above the actual revenue that Genetec received for the Accused Products.

With respect to the '652 Patent, Genetec's actual selling price ▮▮▮ Mr. Green sets aside this discounted revenue and concludes that ▮▮▮ around the time of the hypothetical negotiation provides the most reliable indication of the value. (Ex. 1 ¶ 124.) ▮▮▮

There are several problems with Mr. Green's assumption. First, by ignoring actual revenue (▮▮▮) and assuming that Genetec received the value of

---

[1] Mr. Green also opines that a reasonable royalty for the '652 Patent would be ▮▮▮, because ▮▮▮ Ex. 1 ¶ 131. This motion focuses on the perpetual license unit a▮▮▮ the '652 Patent, but the motion applies equally to annual licenses.

[2] Genetec's Motion focuses mostly on the Mr. Green's analysis for the '652 Patent. Because Mr. Green's methodology was identical for the '942 Patent, the motion applies equally to Mr. Green's opinions with respect to the '954 Patent.

3

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

███████████████████████████████████████, Mr. Green does not tie his calculations to the facts in this case. *See ZF Meritor*, 696 F.3d at 291 (expert testimony is only admissible if it is the "product of reliable principles and methods . . . reliably applied . . . to the facts of the case."). As Genetec's damages expert pointed out, Mr. Green calculated that the actual selling price per unit used in his royalty base was ███████████████████████████ ████████████████ By arbitrarily using ██████████████████ for the accused products as his royalty base—instead of the actual revenue from which these products were sold—Mr. Green grossly inflates the amount of value Genetec received from the Accused Products beyond what the facts permit. In fact, he includes ████████████████ in the royalty base, when he calculated that Genetec received ██████████ from the Accused Products.³ He nearly doubles the royalty base.

Mr. Green justifies starting negotiations at an amount substantially higher than actual revenue because █████████████████████████████████████████████████████████████████████████████████████████████████ and he assumes (without evidence) that █████████████████████████████████████████████████ █████████████████████████████████████████████ In plain terms, Mr. Green's inflation of the starting point is an attempt to include unpatented product revenue in the royalty base. There is no reliable economic basis that Mr. Green cites for this methodology. By including revenue greater than that actually received from ██████████████████████, Mr. Green necessarily includes revenue from sales of unpatented products into his per-unit royalty

---

³ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

base, which he cannot do. *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 412 (Fed. Cir. 2018) ("it [is] improper to award a reasonable royalty damages for the defendant's sale of the prohibited non-infringing products"). Mr. Green's assumption that Genetec discounts the price of its Accused Products specifically to sell more unaccused products is also contradicted by the facts of the case. At no point are the Accused Products discounted to drive other revenue. (*See* Ex. 3 at 192:18–193:9; 204:18–205:7; 220:10–19).

Mr. Green also contends that later pricing structures that ceased individual pricing the accused modules "obscures" their value. (Ex. 1 ¶ 123.) This too does not allow him to include revenue from unpatented sales in his royalty base. What Mr. Green points to is that, as of ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even though some ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That is, Mr. Green's ▮▮▮▮▮▮▮▮ is substantially higher than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which in turn is higher than the actual revenue from the Accused Products.

Mr. Green's per-unit royalty base necessarily include revenue from unpatented products and services contrary to Federal Circuit law.

### C. Mr. Green relies on a market report not tied to the facts of the case

Mr. Green's next error occurs when he multiples ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a 2021

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

industry report purporting to identify a gross profit margin for software publishers. (*See id.*) This industry report cannot be used in this manner because it is not tied to the facts in this case.

Specifically, the 2021 industry report discusses profit margins of major "software publishers" (such as "major players" Microsoft, IBM, and Apple). (Ex. 6 at GENETEC_0171253.) Software publishers are defined as players who "disseminate licenses to customers for the right to execute software on their own computers" and "may also design the software, product support materials, and provide support services. (Ex. 1 ¶ 127 n.180.) It explains: "Large, established companies with high profiles . . . tend to have higher profit. . . Conversely, new entrants may operate at an initial loss as they attempt to gain traction for their software." (*See generally* Ex. 2 at 31:5-25.) Despite this explicit caveat, Mr. Green makes no adjustment to account for the facts of the case. He does not identify that any "players" in the study include Genetec, Sensormatic, or any of their competitors. (Ex. 2 at 27:21–28:12 ("So I can't tell whether they were specifically part of the industry")). The only named parties are Apple, Microsoft, Oracle and Google, which are "large, established companies." Even though the study cautions companies that are not "large" and "established" may operate initially at a loss, Mr. Green does not consider whether a smaller company like Genetec may be differently situated and have smaller gross profits. *See id.*

Compounding the problem for his '652 Patent analysis, Mr. Green wrongly assumes ▮▮▮▮▮. At the time of his hypothetical negotiation ▮▮▮▮▮ ▮▮▮▮▮ Because ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮. Yet that is exactly what he did. Mr. Green cites to one slide of a Genetec

6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

presentation to imply █████████████████████████████

███████████████████████████████████████████████████

███████████████████████. ██████████████████████████

███████████████████████████████████████████████████

███

### D. Mr. Green failed to establish the alleged inventions' "footprint in the marketplace"

Mr. Green's next error is that he fails to apportion gross profits down to the value of the patented features. This is a violation of the entire market value rule. "The entire market value rule allows a patentee to assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially create[s] the value of the component parts." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). "[W]here multi-component products are involved, . . . the ultimate combination of royalty base and royalty rate must reflect the ***value*** attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F. 3d 1201 1226 (Fed. Cir. 2014) (emphasis added) That is, the expert must "carefully tie proof of damages to the claimed invention's footprint ***in the market place***." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis added). Where the patented feature does not create the basis for demand of the entire product, "principles of apportionment apply." *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F. 3d 1308, 1326 (Fed. Cir. 2014).

Mr. Green failed to consider the value of the patented features in the marketplace in his apportionment. Mr. Green did not review or conduct any market surveys or conjoint analysis that may inform him of customer demand for the patented features relative to the unpatented features. (Ex. 2 at 88:5-16; 89:15-90:20.) Instead, he simply asked for what he calls a "technical

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

apportionment" from Sensormatic's technical experts. This "technical apportionment" does not accomplish what the law requires, which is to find the *value* of the patented features. For example, Mr. Green would not testify that the percentage these experts provided reflected "customer demand." (*Id.* at 83:9–18.) He also acknowledged that they do not represent a "measure of sales." (*Id.* at 85:2–12.) Above all, he admitted that this "technical apportionment" was *not* an attempt to "identify the value that the accused features add to each [] analytics module compared to . . . how [each] module[] would operate without those features." (*Id.* at 85:14–21 ("I don't think that's the comparison being done here.").)

It is not clear what exactly this "technical apportionment" was intended to be, but it is admittedly not the alleged patented features' "footprint in the market place." (*Id.*) For the '652 Patent, Dr. Bovik's opinion was ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ When asked if the accused features "drive customer demand," Dr. Bovik answered, "I don't have any measurement of that." (Ex. 7 at 250:15–251:2.) When asked if he has *any* "evidence that it drives customer demand" he replied, "You know what? I – I mean, *I'm* the evidence." (*Id.* at 251:10–22 (emphasis added).) Not only are these opinions that Mr. Green relies for apportionment not a measure of the "value" of the '652 Patent, they are pure *ipse dixit* of an expert. *See Gen. Elec. Co. v. Joiner*, 118 S.Ct. 512, 519 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert.") For the '954 Patent, Dr. Van Der Weide's opinion was nothing more than the prevalence of certain key words in the source code. (Ex. 2 at 126:10–23.) He, too, conceded that he was not measuring customer demand for these features. (Ex. 8 at 22:16-23:19.)

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Mr. Green tries to justify his reliance on these experts by suggesting that internal Genetec documents are consistent with their conclusions. But he admits that he did not rely on any of these Genetec documents for a quantitative analysis of customer demand. (Ex. 2 at 76:9-18; 79:8-80:3 ("I agree with you I don't see a demand curve here.")) He admits he only "*qualitatively* considered the importance of these functionalities by looking at documents provided by Genetec." (*Id.* at 87:14–88:3 (emphasis added).) At bottom, the conclusions Mr. Green reaches to calculate an apportionment appears to be "plucked out of thin air based on vague qualitative notions of the relative importance" of the alleged patented features. *LaserDynamics v. Quanta Computer, Inc.*, 694 F. 3d 51, 69 (Fed. Cir. 2012). This "echoes the kind of arbitrariness of the '25% Rule' … and would alone justify excluding" Mr. Green's opinions. *Id.*

### E. Mr. Green's analysis fails to determine a royalty rate and improperly gives at least 100% of the benefit of the asserted patents to Sensormatic

The final step of Mr. Green's royalty rate methodology is incomplete. After he determined the profit allegedly apportioned to the patented invention, he needed to consider how Sensormatic and Genetec would have agreed that to split the profit for alleged infringement amongst themselves in a hypothetical negotiation. *Georgia-Pacific* Factor 15 asks the expert to consider:

> The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; *that is, the amount which a prudent licensee* —who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty *and yet be able to make a reasonable profit* and which amount would have been acceptable by a prudent patentee . . .

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). But Mr. Green stops before he finishes this step and concludes that the reasonable royalty would be the "apportioned profit." The implication of his abrupt halt is that Genetec would have agreed to give

9

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Sensormatic *all* of its expected profit from using allegedly infringement features. Mr. Green provides no economic or legal basis for why a licensee would willingly agree to give up all the profit from such a business endeavor to a competitor.

Mr. Green suggests, without qualitative analysis, that the parties would have also considered ███████████████████████████████████████████████████████

███████████████████████████████████████████ He seems to suggest that Genetec may agree to not make a reasonable profit from using the allegedly patented features because ███████████████████████████████████████████

███████████████████████████    ███████████████

████████████████████████████████████████████████

███████████████████████████████████ There are several flaws in this analysis.

First, Mr. Green never calculates what he suggests he is accounting for: █████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████ Furthermore, Mr. Green never takes this into account █████

████████ Consequently, Mr. Green provides no qualitative analysis to ensure that Genetec would have still made a reasonable profit from the alleged infringement.

Second, Mr. Green never considered whether the patented features of the Accused Products drove demand for these unpatented ████████. By allowing Genetec to forego making a reasonable profit for using the allegedly patented invention because of these unpatented sales, even if the patented features had nothing to do with these "related products and services," Mr. Green

10

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

violates the entire market value rule. *See Uniloc*, 632 F.3d at 1318 (finding a violation of the entire market value rule when the patented features do not drive demand for the accused product.)

<u>Finally</u>, Mr. Green ***already took into account*** the sales of unpatented products and services when subjectively choosing a starting point for his royalty base substantially higher than the actual revenue Genetec received from the Accused Products. *See,* Section C(1), *supra*. By also including unpatented products and services in his calculation at the end of the hypothetical negotiation to subjectively choose his ending point of a reasonable royalty, Mr. Green's analysis becomes even more untethered to any economic principles. At bottom, his reports provide no qualitative analysis demonstrating that he reliably considered whether his inclusion of unpatented sales in his reasonable royalty calculation leaves Genetec with a reasonable profit from including the alleged infringing features.

**IV.     CONCLUSION**

For the foregoing reasons, the opinions of Sensormatic's damages expert should be excluded. Genetec respectfully requests the Court grant this motion.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

|  |  |
|---|---|
| Dated: May 26, 2022 | FISH & RICHARDSON P.C.<br><br>By: */s/ Jeremy D. Anderson*<br>Jeremy D. Anderson (#4515)<br>222 Delaware Ave., 17th Floor<br>Wilmington, DE 19801<br>(302) 652-5070 (Telephone)<br>(302) 652-0607 (Facsimile)<br>janderson@fr.com<br><br>Neil J. McNabnay<br>David B. Conrad<br>Michael R. Ellis<br>Sarika Patel<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>(214) 747-5070 (Telephone)<br>(214) 747-2091 (Facsimile)<br>mcnabnay@fr.com; conrad@fr.com ;<br>ellis@fr.com; patel@fr.com<br><br>***Counsel for Defendants***<br>***Genetec (USA) Inc. and Genetec Inc.*** |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 26, 2022, the foregoing SEALED document was served electronically on all counsel of record in this case.

*/s/ Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
