HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GENETEC (USA) INC. and GENETEC INC.,<br><br>Defendants. | C.A. No. 20-760-MN<br><br>~~FILED UNDER SEAL~~<br><br>**REDACTED VERSION** |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND
NONINFRINGEMENT OF U.S. PATENT NO. 9,463,954**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Michael R. Ellis
Sarika Patel
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com; conrad@fr.com;
ellis@fr.com; patel@fr.com

*Counsel for Defendants
Genetec (USA) Inc. and Genetec Inc.*

Dated:  May 26, 2022

i

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 1

III. STATEMENT OF LAW ................................................................................................ 1

IV. THE ACCUSED PRODUCTS DO NOT INFRINGE THE '954 PATENT ..................... 2

    A. Legal Standard ................................................................................................. 2

    B. The Accused Products do not store landing matrices that can be overridden ....... 2

    C. Sensormatic's infringement theory does not satisfy the Court's claim construction because the landing matrix data structures Sensormatic identifies are not provided to the elevator controller ........................................................................................ 3

    D. Sensormatic relies on a new and improper proposed claim construction disclosed for the first time in a reply expert report ................................................................ 4

V. THE '954 PATENT IS INVALID UNDER 35 U.S.C. 112(B) ......................................... 7

    A. Legal Standard ................................................................................................. 7

    B. The '954 Patent is an alleged improvement to handling exceptions to ordinary behavior in an earlier version of Sensormatic's C-Cure 9000 elevator integration products ............................................................................................................ 8

    C. "Landing matrix object" is a coined term given no concrete definition ............... 10

    D. "Landing matrix API overriding the landing matrices with the landing matrix objects" relies on a coined term given no concrete definition ............................. 11

    E. The '954 Patent does not define a "landing matrix API overriding the landing matrices with the landing matrix objects" with reasonable certainty ................. 12

VI. CONCLUSION ............................................................................................................ 13

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bayer AG v. Elan Pharm. Research Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000) ................................................................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................................2

*EF Operating Corp. v. Am. Buildings*,
    993 F.2d 1046 (3d Cir. 1993) ..................................................................................................5

*Gen. Elec. Co. v. Wabash Appliance Corp.*,
    304 U.S. 364 (1938) ...............................................................................................................12

*General Electric Co. v. Joiner*,
    522 US 136 (1997) .................................................................................................................13

*Halliburton Energy Servs., Inc. v. MI LLC*,
    514 F. 3d 1244 (Fed. Cir. 2014) ...............................................................................7, 8, 12, 13

*Jacobellis v. Ohio*,
    378 U.S. 184 (1964) (Stewart, J., concurring) ......................................................................12

*McNemar v. The Disney Store, Inc.*,
    91 F. 3d 610 (3d Cir. 1996) ......................................................................................................5

*Medgraph, Inc. v. Medtronic, Inc.*,
    843 F.3d 942 (Fed. Cir. 2016) ..................................................................................................2

*Nautilus, Inc. v. BioSig Instruments, Inc.*,
    572 U.S. 898 (2014) .............................................................................................................7, 8

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1996) .......................................................................................................5

*TQ Delta, LLC v. Adtran, Inc.*,
    2020 U.S. Dist. LEXIS 136536, 2020 WL 4529865 (D. Del. Jul. 31, 2020) ...........................4

*United Carbon Co. v. Binney & Smith Co.*,
    317 U.S. 228 (1942) .................................................................................................................8

*United Carbon Co. v. Binney & Smith Co.*,
    317 US 228 (1942) .................................................................................................................12

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

*White v. Dunbar*,
   119 U.S. 47 (1886)..................................................................................................10

**Statutes**

35 U.S.C. 112(B) ........................................................................................................7, 12

35 U.S.C. § 112 ..............................................................................................................13

35 U.S.C. § 112(b) ...........................................................................................................7

35 U.S.C. § 282 ................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 56 .............................................................................................................2

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

## TABLE OF EXHIBITS

| Exhibit No. | Exhibit Title |
|---|---|
| 1 | U.S. Patent No. 9,463,954 |
| 2 | Opening Expert Report of Jon B. Halpern, P. E. regarding the Invalidity of U.S. Patent No. 9,463,954 |
| 3 | Rebuttal Expert Report of Jon B. Halpern, P. E. regarding Non-Infringement of U.S. Patent No. 9,463,954 |
| 4 | Reply Expert Report of Jon B. Halpern, P. E. regarding the Invalidity of U.S. Patent No. 9,463,954 |
| 5 | Excerpts of Opening Expert Report of Daniel van der Weide, Ph.D. |
| 6 | Excerpts of Rebuttal Expert Report of Daniel van der Weide, Ph.D. |
| 7 | Excerpts of Reply Expert Report of Daniel van der Weide, Ph.D. |
| 8 | Excerpts from Deposition of Daniel van der Weide (May 6, 2022) |
| 9 | Excerpts from 30(b)(6) Deposition of Jason Ouellette (Nov. 30, 2021) |
| 10 | Excerpts from 30(b)(6) Deposition of Jason Ouellette (Dec. 1, 2021) |
| 11 | Excerpts from 30(b)(6) Deposition of Scott Stout (Dec. 2, 2021) |
| 12 | Excerpts from 30(b)(6) Deposition of Mortimer Hubin (Jan. 19, 2022) |
| 13 | Sensormatic's Objections and Responses to Genetec's Fourth Set of Interrogatories (Nos. 19-22) dated December 9, 2021 |
| 14 | Sensormatic's Second Supplemental and Amended Objections and Responses To Genetec's First Set Of Interrogatories (Nos. 1, 2) dated December 9, 2021 |
| 15 | Excerpts from '954 Patent describing "selecting" or "configuring" and then "sending" landing matrices to elevator controller |
| 16 | SENSOR0242470-0242617 (Ouellete Ex. 3) at 133 [Otis 1.92 B0] |
| 17 | Email correspondence between Genetec's counsel and Sensormatic's counsel proposing a schedule for reducing the asserted claims and prior art dated September 3, 2021 |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| "Sensormatic" or "Plaintiff" | Sensormatic Electronics, LLC |
| "Genetec" or "Defendants" | Genetec (USA) Inc. and Genetec Inc. |
| Asserted Patent or '954 Patent | U.S. Patent No. 9,463,954 |
| Asserted Claims | Claims 1-13, 15-22, and 24-26 of U.S. Patent No. 9,463,954 |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## I.      INTRODUCTION

Sensormatic presently alleges infringement of 24 of the 26 claims in the '954 Patent: claims

1–13, 15–22, 24–26.[1] This motion presents two issues for summary judgment as to the '954 Patent.

First, there is no genuine issue of fact that the Accused Products do not override "landing

matrices." Under the Court's claim construction, landing matrices are data structures provided to

the elevator controller. Sensormatic's expert concedes that what he calls "landing matrices" are

not sent to the elevator controller. To try get around this, Sensormatic's expert contradicts

representations it made to this Court at the Markman hearing. The Court should grant summary

judgment of non-infringement.

Second, discovery has demonstrated that the '954 Patent uses coined words to describe

what its invention is right at the point of novelty over the prior art. The '954 Patent provides a

definition for these terms to distinguish them from the prior art Sensormatic product the inventors

sought to improve. Sensormatic's expert relies only on subjective explanations with no basis in

'954 Patent or the relevant art, ultimately concluding that the '954 Patent's features are just

"different in kind." The Court denied this issue without prejudice at claim construction, D.I. 68 at

1 n.1, but the complete record—with Sensormatic's expert's failure to distinguish the coined terms

from the prior art—clearly and convincingly establishes that the Asserted Claims are indefinite.

## II.     STATEMENT OF FACTS

The relevant facts are set forth in Defendants' accompanying Concise Statement of

Undisputed Material Facts ("SOF") filed concurrently herewith, and in Defendants' brief below.

## III.    STATEMENT OF LAW

---

[1] On September 3, 2021, Genetec's counsel proposed a draft schedule for the mutual reduction of asserted claims and prior art. Ex. 17. On September 21, Sensormatic's counsel refused. *Id*.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

The Rule 56 summary judgment standard applies. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). An absence of a genuine dispute over any material fact shifts the burden to the non-movant to show that there is a genuine factual issue for trial. *Id*.

## IV.   THE ACCUSED PRODUCTS DO NOT INFRINGE THE '954 PATENT

Summary judgment of non-infringement is appropriate. It is undisputed the Accused Products do not override any landing matrix data structures stored by the access control system.

### A.   Legal Standard

"Evaluation of summary judgment of noninfringement" requires the Court to compare "the construed claims to the accused product or process." *Medgraph, Inc. v. Medtronic, Inc*., 843 F.3d 942, 949 (Fed. Cir. 2016) (internal citations omitted). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp*., 212 F.3d 1241, 1247 (Fed. Cir. 2000).

### B.   The Accused Products do not store landing matrices that can be overridden

All Asserted Claims require "overriding" "landing matrices" stored by the access control system. ('954 Pat., Claims 1, 15.) The Court construed these "landing matrices" as the data structures provided to an elevator controller that define access to the floors of a building. (D.I. 68 at 6.) A "data structure" is a particular organization or arrangement of data a way that is meaningful to sender and receiver. (Ex. 3 ¶ 70; Ex. 8 at 35:17–25.) Each elevator vendor uses a specific data structure for its landing matrix, which typically comprises a sequence of 0s and 1s where the 0 or 1 for a particular location defines whether that floor is locked or unlocked. (Ex. 3 ¶¶ 70-74.) The elevator controller typically accepts one landing matrix at a time, which must be a properly formatted data structure. (*Id*.) In the patented embodiment, the access control system selects one of these landing matrices as the active matrix and sends it to the elevator controller. ('954 Pat., 1:28-32.) For example, when a user swipes his or her badge at a card reader, the access control

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

system selects the appropriate landing matrix for that user at that time and sends it to the elevator controller. ('954 Pat., 1:40-47.)

Although a prior art version of the Genetec's elevator plug-in ██████████████ ███████████████████████████ (Ex. 2 at Ex. A2 pp. 14, 18), it is undisputed, that all Genetec's Accused Products **do not** ███████████████████████████ ███████████████ (Ex. 7 ¶¶ 52–53.) The Accused Products take a different approach from the prior art: ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

Sensormatic only alleges literal infringement and has not alleged or presented any expert opinions alleging infringement by equivalents. Because the Accused Products do not literally "override the landing matrices" stored by the access control system, the Court should grant summary judgment of non-infringement.

### C.   Sensormatic's infringement theory does not satisfy the Court's claim construction because the landing matrix data structures Sensormatic identifies are not provided to the elevator controller

Rather than identifying the data structures provided to the elevator controller as the claimed "landing matrices" that are overridden, Sensormatic advances an infringement theory that identifies ████████████████████ as the claimed "landing matrix" (Ex. 7 ¶ 49.) Sensormatic's expert never opines that these ████████████████████████████████, because they are not. He admits that the ██████████████████████████████████████ ███████████████████████████████████. (*Id.* ¶¶ 52–53.) They are not literally the same data structures. (Ex. 3 ¶¶ 70–74; Ex. 8 at 102:15–107:8.)

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Sensormatic's infringement theory therefore does not satisfy this Court's claim construction for "landing matrices": the data structures it identifies as "landing matrices" are never provided to an elevator controller as required by all Asserted Claims.

### D. Sensormatic relies on a new and improper proposed claim construction disclosed for the first time in a reply expert report

Sensormatic justifies its theory with a new claim construction disclosed for the first time in its expert's reply report. It attempts to modify the Court's construction by changing the meaning of "providing the landing matrices" such that it does not require literally conveying the landing matrix data structure to the elevator controller. (Ex. 7 ¶ 50.) This new claim construction opinion is improper because (1) it was untimely disclosed; (2) attempts to take back what Sensormatic represented to the Court during the Markman hearing; and (3) is simply wrong and unsupported by the intrinsic record.

First, this claim construction opinion was not disclosed in Sensormatic's expert opening report and is untimely. *TQ Delta, LLC v. Adtran, Inc.*, 2020 U.S. Dist. LEXIS 136536, 2020 WL 4529865 (D. Del. Jul. 31, 2020) (excluding new infringement theories from expert reply report because they were untimely and prejudicial to defendant)

Second, it directly contradicts this Court's claim construction **proposed by Sensormatic itself,** which required that the a "landing matrices" are literally "data structure(s) provided to an elevator controller that define(s) access to the floors of a building." (D.I. 68 at 6.) During the Markman hearing, Sensormatic proposed that the plain and ordinary meaning of "landing matrix" is "a data structure that is provided to an elevator controller" (D.I. 60 at 8:20-9:5.) Sensormatic disputed the addition Genetec sought of "capable of being accepted by the elevator controller" because, Sensormatic said, this language was already captured by its proposal. It told this Court: "The claim already requires, both claims **already** require that the landing matrices be **provided** to

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

the elevator controller, so I don't understand what the additional purpose of capable of being accepted by the elevator controller is." (D.I. 60 at 9:6-10:1.)

Still fearing a latent dispute, Genetec suggested adding that landing matrices must be "proprietary" to an elevator vendor, as they would be "sent" to a particular vendor's elevator controller. (*Id.* at 11:4-12:4.) In practice, this would always be the case. But the Court concluded that went too far and did not require it to be "proprietary" in all cases. (D.I. 68 at 6.)

But, "proprietary" or not, the unambiguous consequence of Sensormatic's proposal and representation to this Court, and the Court's adoption of that proposal, is that a landing matrix is ***the*** data structure ***literally sent*** to the elevator controller. Now, however, Sensormatic has done an about-face. Sensormatic's expert opines that "providing" the landing matrix "data structure . . . to an elevator controller ***does not require*** "***literally*** copying the claimed landing matrices verbatim into the elevator controller." (Ex. 6 ¶ 50 (emphasis added).) Simply put, Sensormatic's expert now opines that the claimed "landing matrix" can be anything that defines access to the elevator floors and does not need to be the same data structure provided to the elevator controller.

Sensormatic was apparently "playing fast and loose" with this Court's questions during claim construction and is estopped from taking back its representations to this Court. *McNemar v. The Disney Store, Inc.*, 91 F. 3d 610 (3d Cir. 1996); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996) ("[j]udicial estoppel is intended to prevent parties from playing fast and loose with the courts by asserting inconsistent positions"); *EF Operating Corp. v. Am. Buildings*, 993 F.2d 1046, 1050 (3d Cir. 1993) ("It goes without saying that one cannot casually cast aside representations, oral or written, in the course of litigation simply because it is convenient to do so."). Sensormatic represented that its proposed construction did not need "capable of being accepted by an elevator controller" because the claims already require that the

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

"data structure" be "provided to the elevator controller." (D.I. 60 at  9:6-10:1.) Its new claim construction position, in which the "landing matrix" data structure is never given to the elevator controller, is inconsistent with this representation, and should be rejected.

Finally, Sensormatic's new claim construction is simply wrong. It is undisputed that a "data structure" is a particular way of organizing information. (Ex. 6 ¶ 70; Ex. 8 at 35:17–25.) It is not something abstract. "Providing a data structure" therefore means conveying the literal "data structure." One cannot literally "provide" a data structure to an elevator control by providing something other than the data structure itself.

A simple analogy helps. Compare a person's identity—something abstract—with a person's name, which is a specific way of organizing information to define an identity. Although you can literally provide your identity in a number of forms, there is only one way to literally provide your name: by giving someone the sequence of letters defining your name. The same is true with the claimed invention here—although you can define access the floors of a building in a number of ways, a landing matrix provides just one way of organizing that information for the elevator controller in a specific arrangement of 0s and 1s. "Providing" a "landing matrix" "data structure" means conveying *that* data structure, and not doing something else abstract. Sensormatic would now prefer to take back what it proposed to the Court, to remove "data structure" entirely so that a landing matrix can be something abstract.

Besides contradicting its prior position, Sensormatic's proposed construction is also not supported by the intrinsic record. In every instance in which the patent describes providing a landing matrix to an elevator controller, it describes literally "configuring" or "selecting," and then "sending," a specific "landing matrix" to the elevator controller, which receives it. (Ex. 15.) The patent never describes the landing matrix as something abstract. To the contrary, it is always used

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

consistent with its ordinary meaning: a specific data structure that can be "selected" and "sent." (Ex. 3 ¶¶ 70-74.)

Sensormatic's expert tries to support his abstract definition for "providing" by suggesting it is consistent with the goal of the invention: implementing an abstract way to override elevator landing matrices, which are often vendor-specific data structure formats. His contention is misplaced. The vendor-neutral abstraction for managing landing matrices are the claimed "landing matrix **objects**" (*See* '954 Pat., Abstract ("vendor-neutral landing matrix **objects**"); 2:13-16 ("The present invention also provides a vendor-neutral format for defining and overriding the access to the floors **via landing matrix objects**."); 3:36-38 ("the landing matrix **objects** provide a vendor-neutral format for overriding the landing matrices sent to the elevator controller."), *see also* Claims 13, 22. Nothing in the patent suggests that "landing matrices" themselves are anything other than the specific data structures sent to the elevator controller to define access to the floors.

## V.    THE '954 PATENT IS INVALID UNDER 35 U.S.C. 112(B)

### A.    Legal Standard

A patent shall be presumed valid. 35 U.S.C. § 282. The alleged infringer bears "the burden of proving invalidity by clear and convincing evidence." *Central Admixture Pharmacy Servs., Inc.*, 482 F.3d at 1357-58 (internal quotations omitted). Although the alleged infringer bears the ultimate burden of proving invalidity of an issued patent, it is originally the patentee's burden to particularly point out and distinctly claim the invention during prosecution. 35 U.S.C. § 112(b). *Cf. Halliburton Energy Servs., Inc. v. MI LLC*, 514 F. 3d 1244 (Fed. Cir. 2014) (The "patent drafter is in the best position to resolve the ambiguity in the patent claims.") Thus, when read in light of the intrinsic evidence, the claims must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. BioSig Instruments, Inc.*, 572 U.S. 898, 909-10 (2014). "[The] patent must be precise enough to afford clear notice of what is claimed, thereby appris[ing]

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

the public of what is still open to them." *Id.* at 909 (quotation removed). "Otherwise there would be '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'" *Id.* at 909-10 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). If the claim fails to provide such precision and certainty, the claim is invalid and indefinite. *Id.* at 901. "The evaluation of a claim's definiteness [includes] whether the patent expressly or at least clearly differentiates itself from specific prior art." *Halliburton*, 514 F. 3d at 1252. "Such differentiation is an important consideration in the definiteness inquiry because in attempting to define a claim term, a person of ordinary skill is likely to conclude that the definition does not encompass that which is expressly distinguished as prior art." *Id.*

### B. The '954 Patent is an alleged improvement to handling exceptions to ordinary behavior in an earlier version of Sensormatic's C-Cure 9000 elevator integration products

By 2007, Sensormatic was selling a prior art product for its the C-Cure 9000 access control system that provided an integration with the Otis Compass elevator system. It stored landing matrices that defined access to elevator floors. (Halpern Opening ¶¶ 101–109; '954 Pat., 1–15:25.) In 2012, the inventors of the '954 Patent began developing the next version of Sensormatic's C-Cure 9000 elevator integration products to support multiple elevator vendors. (Ex. 9 at 177:18–178:9.) During the ensuing development, the inventors also sought to improve the prior art's ability to handle exceptions to ordinary behavior, which led to the '954 Patent. ('954 Pat., 1:51–54.)

Despite their criticisms of the prior art, the earlier C-Cure 9000 elevator integration did in fact provided ███████████████████████████████████████████████

█████████████████████. These actions included: ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. █████████

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

███████████████████████████████████████████

██████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Sensormatic contends that these mechanisms—███████████████████████████████

███████████████████████████"—do not practice the '954 patent.

The inventors released their improvements in later versions of C-Cure for the Otis, ThyssenKrupp, and KONE elevator systems. Sensormatic contends these later C-Cure 9000 elevator integrations do practice the claims of the '954 Patent. (Ex. 6 ¶ 49; Ex. 14 at 4–15. ) When it came time to filing for a patent to protect their improvements, however, the patentees chose to coin new, undefined terms and use functional language to claim their invention rather than providing meaningfully precise claim scope. As has become evident from discovery, the claim language the patentees chose failed to unambiguously distinguish their claimed invention from the prior art mechanisms of handling exceptions to ordinary behavior that they allegedly improved. Specifically, the alleged point of novelty of the '954 Patent over the prior art version of C-Cure 9000 is the claimed function of a "landing matrix API overriding the landing matrices with the landing matrix objects." The patentee did not define what these terms or their functions require that clearly delineate them from the prior art mechanisms for handling exceptions to ordinary behavior of landing matrices.

Sensormatic's expert opines simply that the prior art mechanisms are not a "landing matrix API overriding the landing matrices with the landing matrix objects." But, as explained below, his

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

denials treat this claim language as a "nose of wax," introducing arbitrary requirements for coined terms without any basis in the '954 patent. *Cf. White v. Dunbar*, 119 U.S. 47, 51 (1886).

### C. "Landing matrix object" is a coined term given no concrete definition

The '954 Patent did not supply an express definition of the coined "landing matrix object" to differentiate it from other prior art "objects." Although it supplies exemplary contents of a "landing matrix object" in Figure 2, Sensormatic contends that the term is not limited to those contents. (Ex. 8 at 48:8–49:6.) And although a POSITA would understand that "object" typically has methods (*i.e.*, functions) associated with it, the '954 Patent does not teach a specific set of methods that are required for an object to be a landing matrix object. (*Id.*)

Sensormatic's expert failed to distinguish the "objects" in the prior art C-Cure 9000 product from "landing matrix objects" with any reasonable certainty. First, he opined that ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ This requirement is arbitrary, and contradicts the specification which expressly describes the claimed invention's "ability to secure or unsecure a given elevator floor … to provide temporary access through a manual action for visitors not having routine access." ('954 Patent, 2:36-41.) Moreover, Sensormatic alleges that ████████████████████████████████████████████████████████ ████████. ████████████████████████████.

Sensormatic's expert also opined that ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

███████████████████████████████████████████████████

████ ███████████████████████████████████████████████

███████████████████████████████████████

Finally, Sensormatic's expert opined that ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████.."████████

███████████████████████████████████████████████████

████████████████████████████████

### D.   "Landing matrix API overriding the landing matrices with the landing matrix objects" relies on a coined term given no concrete definition

The '954 Patent did not supply an express definition of the coined "landing matrix API."

Although APIs were known, the '954 patent did not supply defined scope for an API with the

claimed function of "overriding" landing matrices with "landing matrix objects." "Overriding" is

used in its plain and ordinary sense and was not redefined. (Ex. 4 ¶ 41; Ex. 8 at 53:3–18.) But

Sensormatic's expert opines ████████████████████████████████████████

████████████████ (Ex. 8 at ██████████) ██████████████████████████

████████████████████

Here is where Sensormatic's expert's failure to articulate a definition is the most egregious.

Sensormatic's expert contends that ████████████████████████████████████

█████████████████████████████████████████████." (Ex. 6 ¶¶

████████████████.) He provides no concrete basis for █████████████████████████

██████████████████████████. For example, he opines that █████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████" (*Id.* ¶ ███) ████████████████████,

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~



." (*Id.* ¶ ██.) He provides no disclosure in the '954 Patent to demonstrate how this ███████████████████████████ test is anything but a subjective, "I-know-it-when-I-see-it" test. *Cf. Jacobellis v. Ohio*, 378 U.S. 184 (1964) (Stewart, J., concurring). Instead, he contends that the Asserted Claims are not limited to the embodiments in the '954 Patent. (Ex. 8 at 48:8–6.)

How does a POSITA know when an API "overriding" with an object ████████

████████████████████████████████████████████████████████

████████████ The '954 Patent does not tell, and Sensormatic's expert does no better than to say the prior art "is not that." *Jacobellis*, 378 U.S. at 197.

### E.     The '954 Patent does not define a "landing matrix API overriding the landing matrices with the landing matrix objects" with reasonable certainty

Functional claiming like this, "when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty" without defining it with reasonable certainty, renders the Asserted Claims invalid under 35 U.S.C. 112(b). *Halliburton*, 514 F. 3d at 1255 (Fed. Cir. 2014) (quoting *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938)); *see also United Carbon Co. v. Binney & Smith Co.*, 317 US 228, 236-237 (1942) ("The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise.").

*Halliburton* provides a guide for analyzing the '954 Patent's failure to recite claim scope with reasonable certainty in view of prior art. The point of novelty in Halliburton was the inclusion of a "fragile gel." *Id.* at 1246. Halliburton argued that a "fragile gel" was "a gel that easily transitions from gel to liquid and back again." *Id.* at 1251–52. To demonstrate that the specification

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

taught an objective test for this, Halliburton primarily relied upon whether the gel exhibited an "L-shaped curve" shown in a patent figure. The problem with this relying on this test was that a prior art fluid (12.1 SF) exhibited this very same feature.  *Id.* at 1252. Halliburton further argued that a "fragile gel" was also "capable of suspending [i.e., holding] drill cuttings and weighting materials at rest." The problem with this was the extent of this functionality: "what quantity, weight, size and/or volume of cuttings must be suspended?" *Id.* at 1254. There was no better answer to this question than "adequate for the circumstances." *Id.*

During deposition, Sensormatic's expert was confronted with the very question posed by this motion: ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████ (Ex. 8 at ██████). His answer is boils down to this: ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (*Id.* ██████████.) It was ███████████████████████████████████████ ██████ (*Id.* ██████████████████) His argument is circular, no better than Halliburton's "adequate for the circumstances." His opinions are *ipse dixit* that do not defeat summary judgment of indefiniteness under 35 U.S.C. § 112. *See General Electric Co. v. Joiner*, 522 US 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected … only by the *ipse dixit* of the expert.")

## VI.    CONCLUSION

For the foregoing reasons, Genetec respectfully requests the Court grant this motion.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Dated: May 26, 2022

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    222 Delaware Ave., 17th Floor
    Wilmington, DE 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay
    David B. Conrad
    Michael R. Ellis
    Sarika Patel
    FISH & RICHARDSON P.C.
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com;conrad@fr.com;
    ellis@fr.com; patel@fr.com

    ***Counsel for Defendants***
    ***Genetec (USA) Inc. and Genetec Inc.***

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 26, 2022, the foregoing SEALED

document was served electronically on all counsel of record in this case.


*/s/ Jeremy D. Anderson*
Jeremy D. Anderson (#4515)