~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>GENETEC (USA) INC. and GENETEC INC.,<br><br>                    Defendants. | C.A. No. 20-760-MN<br><br>~~**FILED UNDER SEAL**~~<br><br>**REDACTED VERSION** |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND
<u>NONINFRINGEMENT OF U.S. PATENT NO. 7,307,652</u>**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Michael R. Ellis
Sarika Patel
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com; conrad@fr.com;
ellis@fr.com; patel@fr.com

***Counsel for Defendants
Genetec (USA) Inc. and Genetec Inc.***

Dated:  May 26, 2022

i

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 1

III.    STATEMENT OF LAW...................................................................................... 1

        A.     Summary Judgement of Invalidity.............................................................2

        B.     Summary Judgment of Non-infringement .................................................2

IV.     THE '652 PATENT IS INVALID DUE TO THE ON-SALE BAR .................................. 3

        A.     The Asserted Claims were ready for patenting prior to March 10, 1999 ...............3

               1.     Sensormatic admitted the Asserted Claims were ready for patenting
                      before the Critical Date.................................................................3

               2.     The named inventor admitted the Asserted Claims were ready for
                      patenting before the Critical Date .................................................5

               3.     Other undisputed evidence confirms that the Asserted Claims were
                      ready for patenting prior to the Critical Date.................................6

        B.     The Phase 1 and 2 Agreements were commercial offers for sale ...........................9

        C.     The Phase 1 and 2 Agreements were promises to build and use the claimed
               invention in exchange for payment.......................................................10

        D.     The Phase 1 and 2 Agreements were entered into prior to the Critical Date........11

V.      THERE IS NO INFRINGEMENT OF INDEPENDENT CLAIMS 1 AND 3 OR THEIR
        DEPENDENTS............................................................................................... 12

VI.     CONCLUSION................................................................................................. 15

i

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airco Indus. Gases, Inc. Div. of BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund*,
   850 F.2d 1028 (3d Cir. 1988) ................................................................................................ 4

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002) ............................................................................................. 9

*Bayer AG v. Elan Pharm. Research Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000) ....................................................................................... 3, 15

*Bernhard v. Kull (In re Bernhard)*,
   2022 WL 532737 (Bankr. E.D. Pa. Feb. 22, 2022) ............................................................. 4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................................. 2

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
   123 F.R.D. 97 (D. Del. 1988) ............................................................................................... 7

*Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.*,
   141 F.3d 1073 (Fed. Cir. 1998) ........................................................................................... 12

*In re Cygnus Telecommunications Tech., LLC. Pat. Litig.*,
   536 F.3d 1343 (Fed. Cir. 2008) ........................................................................................... 12

*D Three Enterprises, LLC v. SunModo Corp.*,
   890 F.3d 1042 (Fed. Cir. 2018) ............................................................................................. 6

*Grp. One, Ltd. V. Hallmark Cards, Inc.*,
   254 F.3d 1041 (Fed. Cir. 2001) ......................................................................................... 2, 9

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*,
   139 S. Ct. 628 (2019) ............................................................................................................ 2

*Hernandez v. Parry*,
   2013 WL 4827953 (D. Ariz. Sept. 9, 2013) ......................................................................... 4

*Honeywell Inc. v. Victor Co. of Japan*,
   298 F.3d 1317 (Fed. Cir. 2002) ............................................................................................. 6

*Kenexa Brassring, Inc. v. Taleo Corp.*,
   751 F. Supp. 2d 735 (D. Del. 2010) ..................................................................................... 4

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

*In re Kollar*,
    286 F.3d 1326 (Fed. Cir. 2002)...........................................................................11

*Medgraph, Inc. v. Medtronic, Inc.*,
    843 F.3d 942 (Fed. Cir. 2016).............................................................................2

*Merck & Cie v. Watson Lab'ys, Inc.*,
    822 F.3d 1347 (Fed. Cir. 2016).............................................................................9

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998)...................................................................................2, 3, 11

*Plumtree Software, Inc. v. Datamize, LLC*,
    473 F.3d 1152 (Fed. Cir. 2006)...........................................................................11

*Praetorian Ins. Co. v. Site Inspection, LLC*,
    604 F.3d 509 (8th Cir. 2010)...............................................................................4

*Scaltech, Inc. v. Retec/Tetra, LLC*,
    269 F.3d 1321 (Fed. Cir. 2001)........................................................................9, 11

*Sec'y United States Dep't of Lab. v. Kwasny*,
    853 F.3d 87 (3d Cir. 2017)...................................................................................4

*Special Devices, Inc. v. OEA, Inc.*,
    270 F. 3d 1353 (Fed. Cir. 2001)...........................................................................2

**Statutes**

35 U.S.C. § 102(b) .................................................................................2, 5, 9

35 U.S.C. § 282 ......................................................................................2

**Other Authorities**

37 CFR § 1.131 ......................................................................................5

MPEP § 715.10 ......................................................................................5

Fed. R. Civ. P. 36(b) .............................................................................4, 7

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

## TABLE OF EXHIBITS

| Exhibit No. | Exhibit Title |
|---|---|
| 1 | Email correspondence between Genetec's counsel and Sensormatic's counsel proposing a scheduled for reducing the asserted claims and prior art dated September 3, 2021 |
| 2 | U.S. Patent No. 7,307,652 |
| 3 | Sensormatic's Supplemental and Amended Objections and Responses to Genetec's First Set of Interrogatories (Nos. 1, 2) dated November 12, 2021 |
| 4 | Sensormatic's Second Supplemental and Amended Objections and Responses to Genetec's First Set of Interrogatories (Nos. 1, 2) dated November 24, 2021 |
| 5 | Sensormatic's Objections and Responses to Genetec's First Set of Requests for Admission (Nos. 1-21) dated December 9, 2021 |
| 6 | Excerpts of the 30(b)(6) deposition transcript of Mr. Jason Ouellette dated December 1, 2021 |
| 7 | Excerpts of the deposition transcript of Mr. Raymond Broemmelsiek dated December 9, 2021 |
| 8 | Emails from Sensormatic requesting to amend RFA Nos. 16, 17, 20, and 21 (May 13, 2022 to May 19, 2022). |
| 9 | Mr. Broemmelsiek's March 14, 2004 Declaration under 37 C.F.R. § 1.131 submitted during prosecution of the '652 Patent application (SENSOR0000086-SENSOR0000105) |
| 10 | The Rebuttal Invalidity Expert Report of Alan Bovik, Ph.D., served on March 29, 2022 |
| 11 | Excerpts of the deposition transcript of Dr. Alan Bovik dated April 29, 2022 |
| 12 | Comparison between the claims at the time of the Broemmelsiek Declaration, after the Broemmelsiek Declaration, and the admitted '652 Patent claims |
| 13 | The Corrected Opening Invalidity Expert Report of Eli Saber, Ph.D., served on February 18, 2022 |
| 14 | Sensormatic's Objections and Responses to Genetec's Fourth Set of Interrogatories (Nos. 19-22) dated December 9, 2021 |
| 15 | Excerpts of the deposition transcript of Mr. Frank Cona dated October 27, 2021 |
| 16 | KiwiVision™ Video Analytics Guide 4.2 GA (GENETEC 0169940-GENETEC_0170059) |
| 17 | The Opening Infringement Expert Report of Alan Bovik, Ph.D., served on February 17, 2022 |
| 18 | The Reply Infringement Expert Report of Alan Bovik, Ph.D., served on April 18, 2022 |
| 19 | The Rebuttal Non-Infringement Expert Report of Eli Saber, Ph.D., served on March 29, 2022 |
| 20 | Exhibit 9 from Dr. Alan Bovik Deposition taken on April 29, 2022 |
| 21 | Sensormatic Markman slides 15 and 17 from the August 10, 2021 Markman hearing |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

| 22 | Genetec's First Set of Interrogatories to Plaintiff (Nos. 1-6) dated November 13, 2020 |
|----|------|
| 23 | Sensormatic's Objections and Responses to Genetec's First Set of Interrogatories (Nos. 1-6) dated December 14, 2020 |
| 24 | Genetec's Fourth Set of Interrogatories to Plaintiff (Nos. 19-22) dated November 9, 2021 |
| 25 | Genetec's First Set of Requests for Admission to Plaintiff (Nos. 1-21) dated November 9, 2021 |
| 26 | Sensormatic's Verification of Interrogatories dated December 1, 2021 |
| 27 | Examiner Advisory Action dated October 19, 2004 from the prosecution history of the '652 Patent application (SENSOR0000119-SENSOR0000121) |
| 28 | Applicant amendments and remarks dated February 13, 2004 from the prosecution history of the '652 Patent application (SENSOR0000072-SENSOR0000082) |
| 29 | Applicant amendments and remarks dated June 14, 2007 from the prosecution history of the '652 Patent application (SENSOR0000158-SENSOR0000175) |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| "Sensormatic" or "Plaintiff" | Sensormatic Electronics, LLC |
| "Genetec" or "Defendants" | Genetec (USA) Inc. and Genetec Inc., |
| Asserted Patents | U.S. Patent No. 7,307,652 and U.S. Patent No. 9,463,954 |
| '652 Patent | U.S. Patent No. 7,307,652 |
| Asserted Claims | Claims 1-19 and 25-28 of U.S. Patent No. 7,307,652 |
| Provisional Application | Provisional Application 60/188,171 |
| Broemmelsiek Declaration | Mr. Broemmelsiek's March 14, 2004 Declaration under 37 C.F.R. § 1.131 submitted during prosecution of the '652 Patent application |
| Phase 1 and 2 Agreements | The Phase 1 Contract Engineering Agreement and Phase 1 Statement of Work, both dated August 7, 1998; and the Phase 2 Contract Engineering Agreement and Phase 2 Statement of Work, both dated December 3, 1998 attached to the Broemmelsiek Declaration |
| Critical Date | March 10, 1999 |
| "The Bovik Opening Report," "Dr. Bovik's Opening Report," or "Bovik Opening Rpt." | The Opening Infringement Expert Report of Alan Bovik, Ph.D., served on February 17, 2022 |
| "The Saber Opening Report," "Dr. Saber's Opening Report," or "Saber Opening Rpt." | The Opening Invalidity Expert Report of Eli Saber, Ph.D., served on February 17, 2022 |
| "The Bovik Rebuttal Report," "Dr. Bovik's Rebuttal Report," or "Bovik Rebuttal Rpt." | The Rebuttal Invalidity Expert Report of Alan Bovik, Ph.D., served on March 29, 2022 |
| "The Saber Rebuttal Report," "Dr. Saber's Rebuttal Report," or "Saber Rebuttal Rpt." | The Rebuttal Non-Infringement Expert Report of Eli Saber, Ph.D., served on March 29, 2022 |
| "The Bovik Reply Report," "Dr. Bovik's Reply Report," or "Bovik Reply Rpt." | The Reply Infringement Expert Report of Alan Bovik, Ph.D., served on April 18, 2022 |
| "The Saber Reply Report," "Dr. Saber's Reply Report," or "Saber Reply Rpt." | The Reply Invalidity Expert Report of Eli Saber, Ph.D., served on April 18, 2022 |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## I.      INTRODUCTION

Sensormatic presently alleges infringement of 24 of the 28 claims in the '652 Patent: claims 1-19 and 25-28.[1] This motion presents two issues for summary judgment as to the '652 Patent.

First, the '652 Patent is invalid due to the on-sale bar. There is no genuine material dispute that the '652 Patent was (1) ready for patenting and (2) subject to a commercial offer for sale more than one year before the filing of the provisional application (the "Critical Date"). Sensormatic admitted ██████████████████████████████████████████████████████████ ███████████. The '652 Patent inventor attested to it in sworn testimony to the USPTO. A variety of documentary and testimonial evidence corroborate this testimony. Moreover, the '652 Patent was subject to not one, but two, commercial offers for sale prior to the Critical Date. The authenticity of these sales cannot be disputed: Sensormatic relied upon the operative agreements to convince the USPTO that the invention occurred before prior art raised by the examiner.

Second, the Accused Products cannot infringe independent claims 1 and 3 of the '652 Patent, or their dependents, for a simple reason: Sensormatic's infringement allegations violate this Court's claim construction order and accuse functionality that the Court already determined was disclaimed during prosecution. Not content with the Court's ruling, Sensormatic's expert recycles attorney argument explicitly rejected during the parties' claim construction hearing.

## II.     STATEMENT OF FACTS

The relevant facts are set forth in Defendants' accompanying Concise Statement of Undisputed Material Facts ("SOF") filed concurrently herewith, and in Defendants' brief below.

## III.    STATEMENT OF LAW

---

[1] On September 3, 2021, Genetec's counsel proposed a draft schedule for the mutual reduction of asserted claims and prior art. Ex. 1. On September 21, Sensormatic's counsel refused. *Id.*

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

The Rule 56 summary judgment standard applies. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). An absence of a genuine dispute over any material fact shifts the burden to the non-movant to show that there is a genuine factual issue for trial. *Id*.

### A.     Summary Judgement of Invalidity

A patent shall be presumed valid. 35 U.S.C. § 282. The alleged infringer bears "the burden of proving invalidity by clear and convincing evidence." *Centr. Admixture Pharmacy Servs., Inc.*, 482 F.3d 1347, 1357 (Fed. Cir. 2007). A patent is invalid when the claimed invention was "on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b). "[T]he on-sale bar applies when two conditions are satisfied before the critical date. First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting[, which] may be satisfied . . . by proof of reduction to practice before the critical date[.]" *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).

Offers for sale are "without regard to whether the offer discloses each detail of the invention." *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 633 (2019). The sale by the inventor does not need to be public in order for the on-sale bar to apply. *See id.* ("Other cases focus on whether the invention had been sold, not whether the details of the invention had been made available to the public or whether the sale itself had been publicly disclosed." (citations omitted)); *Special Devices, Inc. v. OEA, Inc.*, 270 F. 3d 1353, 1357 (Fed. Cir. 2001). An offer for sale is "one which the other party could make into a binding contract by simple acceptance." *Grp. One, Ltd. V. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001).

### B.     Summary Judgment of Non-infringement

"Evaluation of summary judgment of noninfringement" requires the Court to compare "the construed claims to the accused product or process." *Medgraph, Inc. v. Medtronic, Inc*., 843 F.3d

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

942, 949 (Fed. Cir. 2016) (internal citations omitted). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

## IV.   THE '652 PATENT IS INVALID DUE TO THE ON-SALE BAR

The Provisional Application that led to the '652 Patent was filed on March 10, 2000. Ex. 2. Prior to the '652 Patent's March 10, 1999, Critical Date, however, it was (1) ready for patenting and (2) the subject of a commercial offer for sale by Spin Logic—the company of the named inventor, Raymond Broemmelsiek—to Sensormatic.[2] *See Pfaff,* 525 U.S. at 67. The '652 Patent is thus invalid due to the on-sale bar.

### A.   The Asserted Claims were ready for patenting prior to March 10, 1999

#### 1.   Sensormatic admitted the Asserted Claims were ready for patenting before the Critical Date

There is no genuine factual dispute that the '652 Patent was ready for patenting prior to the Critical Date of March 10, 1999. Sensormatic admitted ███████████████████████ ████████████████████████████████████████████ Sensormatic admitted in response to Genetec's Interrogatories Nos. 1 (*see* Exs. 3, 4) and 21 (*see* Ex. 14) that the '652 Patent was reduced to practice by August or December 1998. Sensormatic's 30(b)(6) designee ████ ███████████████████████████████████████████████████ ████████████████████ Sensormatic then admitted it four more times in response to Genetec's Requests for Admissions Nos. 16, 17, 20, and 21.[3] Ex. 5.

---

[2] *See* Ex. 7 at ███████████████████████████████████████

[3] On May 23, Sensormatic filed a discovery letter requesting to amend its responses to Requests for Admissions Nos. 16, 17, 20, and 21 to now deny that some of the claims were reduced to practice by August or December 1998. (D.I. 106.) Sensormatic first announced its intention to do

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

These admissions are binding. For example, its interrogatory responses, confirmed during a 30(b)(6) deposition, are binding. *Kenexa Brassring, Inc. v. Taleo Corp*., 751 F. Supp. 2d 735, 746-48 (D. Del. 2010) (finding that defendant's interrogatory admissions in conjunction with its confirmation during deposition constituted binding admissions). Similarly, Sensormatic's unambiguous responses to Genetec's Requests for Admissions Nos. 16, 17, 20, and 21 are binding. *Sec'y United States Dep't of Lab. v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017) ("Rule 36(b) is intended to narrow the triable issues in the case [thus a]n admission is therefore an 'unassailable statement of fact'"); *Praetorian Ins. Co. v. Site Inspection, LLC*, 604 F.3d 509, 514 (8th Cir. 2010) ("admissions made in response to a Rule 36 request for admission are binding on that party.").

Once a party "makes an admission in response to a request for admission, it is 'conclusively established'" and the party may not later "contradict his earlier admissions in an attempt to create an issue of fact solely to avoid summary judgment." *Hernandez v. Parry*, 2013 WL 4827953, *9 (D. Ariz. Sept. 9, 2013) (citing Fed. R. Civ. P. 36); *Airco Indus. Gases, Inc. Div. of BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1037 (3d Cir. 1988) ("[An] admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case."). Sensormatic's admissions cannot be rebutted by contrary testimony or ignored by a court because it finds other evidence more credible. *See Airco*, 850 F.2d at 1036-37 (3d Cir. 1988); *Bernhard v. Kull (In re Bernhard)*, 2022 WL 532737, *14 n.21 (Bankr. E.D. Pa. Feb. 22, 2022).

---

so on May 13—five months after the close of fact discovery, one week after the close of expert discovery, and 13 days before the dispositive motion deadline. Ex. 8. Genetec will further elaborate on the prejudice resulting from Sensormatic's extremely belated request in its opposition to Sensormatic's request, which Judge Burke has scheduled for June 14, 2022. (D.I. 108.)

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

### 2. The named inventor admitted the Asserted Claims were ready for patenting before the Critical Date

During prosecution of the '652 Patent application, Mr. Broemmelsiek admitted that he "actually reduced to practice" the subject matter claimed in the '652 Patent prior to the Critical Date in a sworn declaration under 37 CFR § 1.131 to defeat a prior art rejection:



Ex. 9 at SENSOR0000086, ¶ 2; *see also* Ex. 15 at 63:17-65:2. ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

Declarations created to swear behind prior art can be an admission that an invention was "complete" and thus ready for patenting more than one year before the filing of an application, and therefore could be subject to a commercial sale.[4]

███████████████████████████████████████████████████████████████████

---

[4] The MPEP reinforces the notion that § 1.131 declarations, like the Broemmelsiek Declaration, are a double-edged sword. Though effective in swearing behind prior art, they invoke inquiry into whether a prior public use or sale of the patented invention has occurred. *See* MPEP § 715.10 ("Any affidavits or declarations submitted under 37 CFR 1.131(a) and the accompanying evidence must be reviewed carefully by the examiner in order to determine whether they show that the claimed invention was 'in public use' or 'on sale' in this country more than one year prior to the effective filing date of the application, which acts constitute a statutory bar under pre-AIA 35 U.S.C. 102(b)."). The first examiner of the '652 Patent failed to properly follow MPEP § 715.10 because he inadvertently reversed the roles of the parties. Ex. 27 at SENSOR0000121 (wrongly arguing the contracts show Sensormatic was the inventor, not Mr. Broemmelsiek).

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

███████████████████████████████████████████████

█████████████████████████████████

### 3.   Other undisputed evidence confirms that the Asserted Claims were ready for patenting prior to the Critical Date

There are no facts in the record that genuinely dispute that the '652 Patent was ready for patenting by August or December 1998. Sensormatic's only vehicle for contradicting its prior admissions and the inventor's testimony are Dr. Bovik's opinions presented for the first time in his Rebuttal Invalidity Report. As an initial matter, these belated opinions are both improper and prejudicial. In any event, Dr. Bovik's opinions are not supported by the evidence. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

On the first point, minor changes to claim language are legally irrelevant. Mr. Broemmelsiek's attestation regarding reduction to practice not limited to the exact claim language before the examiner when it was made. *Cf. Honeywell Inc. v. Victor Co. of Japan*, 298 F.3d 1317, 1328 (Fed. Cir. 2002) (holding that an inventor "arguing that he had reduced to practice an embodiment of his [claimed] invention" does not limit the scope of the claim to that embodiment).

Even if that were not the case, Dr. Bovik's "conclusory expert assertions do not give rise to a genuine issue of material fact." *D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) (internal citations omitted). ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████. *Id.* at ¶ 286 ████████████████

6

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████.") (emphasis added); *see also id.* at ¶¶ ███████████

████████████.[5]

Beyond that, it is self-evident that none of changes in the Asserted Claims materially impact Mr. Broemmelsiek's admission of reduction to practice. While some '652 Patent claims were amended once after the Broemmelsiek Declaration in view of U.S. Pat. No. 6,263,088 to Crabtree, most were not. *Compare* Ex. 28 *with* Ex. 29. Those that were, merely incorporated previously-existing claim language. For example, as is clear from Exhibit 22 contrasting the claim language, the changes to independent claims 1 and 3 were simply the incorporation of the limitations in dependent claim 2, which was subject to the Broemmelsiek Declaration.



---

[5] Dr. Bovik's belated opinions are also inconsistent with Sensormatic's proposed amendments to Requests for Admission 16, 17, 20, and 21, which seek to admit that claims 13, 16, and 25 were reduced to practice as of August or December 1998. Ex. 8. This inconsistency undermines the contention that Sensormatic's proposed amendments promote presentation of the issue on the "merits" pursuant to F.R.C.P. 36(b). *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 123 F.R.D. 97, 108 (D. Del. 1988) ("In considering whether the presentation of the merits will be improved by permitting an admission to be revised, courts have generally sought to determine whether the admission is contrary to the record of the case.").

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Ex. 12 (annotation added). Similarly, the changes to independent claims 9 and 12 narrowed the generic object selection claim language to recite object selection received "from a user." *Id.* █

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. New dependent Claims 26-28 simply required that the data created include a statistical representation based upon movement and position information that could be, for example, "current, predicted and past position [or velocity] information." *Id.* But this feature, too, was already in original claim 10 at the time of the Broemmelsiek Declaration. *Id.* Finally, all of these features are described in Exhibit A5 to Dr. Saber's Opening Report, to which Dr. Bovik offered no rebuttal opinions. Ex. 13 at ¶ 140 (noting Dr. Bovik's lack of specific rebuttal opinions); *id.* at Ex. A5.

<u>On the second point,</u> ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████ ████████████████████████████████████████████████

███████████████████████████████████████████ ███████████████████████████

███████████████████████████████████.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

**B.      The Phase 1 and 2 Agreements were commercial offers for sale**

The invention claimed in the '652 Patent was the subject of commercial offers for sale at least on August 7, 1998 and on December 3, 1998, when Mr. Broemmelsiek and Sensormatic entered into two development agreements to build and use a prototype embodying the claimed invention specifically for Sensormatic's SpeedDome and Ultradome video cameras. *See* Ex. 9 at SENSOR0000086, ¶¶ 3, 4 ("These documents set forth the claimed invention."); SENSOR0000095, ¶ 3.0 ("integration of proprietary Spin Logic Technology with the Sensormatic SpeedDome"); SENSOR0000099, ¶ 3.0 ("integration of proprietary Spin Logic Technology with the Sensormatic UltraDome"). There is no factual dispute about what the Agreements say. All that remains is a question of law for this Court to decide: Were either of these agreements a "commercial offer for sale"? *See Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001) (affirming summary judgment of invalidity in view of prior sale). The answer is unequivocally "yes." Each of the Phase 1 and Phase 2 Agreements are separate, binding contracts to build the claimed apparatus and to perform the claimed method prior to the Critical Date, in exchange for which Mr. Broemmelsiek's company was paid and Sensormatic retained title of the resulting prototypes.

In determining whether there was an offer for sale, courts look to the specific facts and circumstances, "apply[ing] traditional contract law principles" along the way. *Merck & Cie v. Watson Lab'ys, Inc.*, 822 F.3d 1347, 1351 (Fed. Cir. 2016) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002)). "Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Id.* at 1351 (quoting *Grp. One*, 254 F.3d at 1048). The Phase 1 and Phase 2 Agreements each satisfy these

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

criteria. The Phase 1 and Phase 2 Agreements are each styled as binding "Contracts" and "Statements of Work" signed by the '652 Patent inventor and Sensormatic. The Agreements contain abundant technical information disclosing the details of the invention claimed in the '652 Patent. In fact, the Agreements are sufficiently technically detailed that they were attached to the Broemmelsiek Declaration for the express purpose of overcoming the examiner's prior art rejection and to support the patentee's claims for an earlier reduction practice date. *See* Ex. 9 at SENSOR0000086, ¶ 2; Ex. 15 at 63:17-65:2. They are the same documents Sensormatic relied upon in admitting an August or December 1998 reduction to practice date. *See* Exs. 3, 4, 14; Ex. 6 at 15:4-24. And Dr. Saber's invalidity analysis illustrates how they disclose every limitation of the Asserted Claims. *See* Ex. 13 at Exhibit A5.

### C.     The Phase 1 and 2 Agreements were promises to build and use the claimed invention in exchange for payment

First, the Phase 1 and Phase 2 Agreements are each independent promises to make the claimed apparatus prior to the Critical Date in exchange for payment, resulting in tangible items in which Sensormatic retained title. For example, the August 7, 1998 Phase 1 Contract Engineering Agreement contains promises to pay Mr. Broemmelsiek's Company a first installment of $25,000; a second installment of $25,000 on September 3, 1998; and a third installment of $30,000 at the completion of Phase 1 planned for November 2, 1998. Ex. 9 at SENSOR0000093. In exchange, the Phase 1 Statement of Work confirms that Sensormatic retained title in the resulting apparatus. *Id.* at SENSOR0000096, ¶ 5.0. ("The demonstration hardware and software/firmware shall be retained by Sensormatic."). The Phase 2 Agreements contain similar promises to make the claimed apparatus, which Sensormatic kept, in exchange for payment. *Id.* at SENSOR0000097; SENSOR0000100-101, ¶ 5.0.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Second, the Phase 1 and Phase 2 Agreements are independent promises to use the claimed methods prior to the Critical Date in exchange for money. For example, the Phase 1 Agreements promise to "test" and "demonstrate" the object tracker to be built. *Id.* at SENSOR0000095, ¶ 3.0. A section titled "Requirements Definition for the Technology Demonstration" specified the demonstration will "highlight objects it detects, based upon a sensitivity of detection setting" and "[a] touchscreen shall allow the user to select a highlighted object on the screen for automatic tracking by the system." *Id.* at ¶ 4.2. The "Deliverables" section included a promise to "demonstrate both the Phase 1 system as specified in Section 4.2." *Id.* at SENSOR0000096, ¶ 5.0. The Phase 2 Agreements contain similar promises to use the claimed invention in exchange for money. *Id.* at SENSOR0000099-101, ¶¶ 3.0, 4.2, 5.0.

### D.    The Phase 1 and 2 Agreements were entered into prior to the Critical Date

These Agreements ***occurred before*** the Critical Date with the signing of the Phase 1 and 2 Agreements were ***signed before*** the Critical Date on August 7 and December 3, 1998, respectively. For the '652 Patent's method claims, "the first prong of the *Pfaff* test" is met when "a commercial offer to perform the patented method (even if the performance itself occurred after the critical date)" occurs. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1164 (Fed. Cir. 2006) (citing *Pfaff,* 525 U.S. at 67); *see also Scaltech*, 269 F.3d at 1328-29 (offering to perform the steps of the patented methods for customers in exchange for payment triggers the on-sale bar). The same is true for the '652 Patent's remaining system and computer readable medium claims (*i.e.*, apparatus claims). "When money changes hands as a result of the transfer of title to the tangible item, a sale normally has occurred." *In re Kollar,* 286 F.3d 1326, 1332 (Fed. Cir. 2002).

Lastly, any attempt for Sensormatic to characterize the work set forth in the Broemmelsiek Declaration as experimental is unavailing. The law is well settled that "experimental use cannot

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

occur after a reduction to practice." *In re Cygnus Telecommunications Tech., LLC. Pat. Litig.*, 536

F.3d 1343, 1351 (Fed. Cir. 2008); *see also Cont'l Plastic Containers v. Owens Brockway Plastic*

*Prods., Inc.,* 141 F.3d 1073, 1079 (Fed. Cir. 1998) ("The policy behind experimental use negation

is to give the inventor an opportunity to reduce the invention to practice").

## V.      THERE IS NO INFRINGEMENT OF INDEPENDENT CLAIMS 1 AND 3 OR THEIR DEPENDENTS

Independent claims 1 and 3 recite "detecting moving objects within/in said selected

monitoring area." Ex. 2. The Court previously determined that these claim terms were subject to

prosecution disclaimer and therefore construed them to mean "performing detection of moving

objects *only* within/in said selected monitoring area." (D.I. 68 at 2.) The undisputed facts show

that Defendants' Accused Products ██████████████████████████████████

██ and thus cannot infringe claims 1 and 3 or their dependents of the '652 Patent.

HIGHLY CONFIDENTIAL — OUTSIDE COUNSEL EYES' ONLY



HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

███████████████████████ this Court's claim construction order, which found that

the patentee unequivocally disclaimed detection outside of the selected monitoring area.

> In response to the § 102 rejection, the Applicant amended its claims to recite not only (1) that an indication of a selected monitoring area is required but also (2) that detection of moving objects occurs within that selected monitoring area. . . . Therefore, by adding the step of indicating a selected monitoring area and revising the detecting step to require "detecting moving objects [within said / in the] selected monitoring area" to overcome a prior art rejection, the '652 Patent Applicant disclaimed detection of moving objects outside of that selected monitoring area.

(D.I. 68 at 8-9.)

Worse, it is a repackaged version of the argument that this Court previously rejected during

the parties' Markman hearing. During the hearing, the Court specifically addressed and rejected

the reasoning ████████████. For example, the Court questioned Sensormatic about

Markman slides 15 and 17, which suggested that the prosecution "disclaim[ed], at most, detection

based on the *entire field of view*" but "[d]oes <u>not</u> mean that no detection is performed <u>outside</u> the

area–e.g., a buffer region for use in detecting objects falling partly outside the area."

| D.I. 60 at 44:10-45:2<br>(emphasis added) | Ex. 21 (Sensormatic Markman Slides 15, 17) (highlighting added) |
|---|---|
| THE COURT: Let me ask, then, Mr. Costakos, I did wonder what this buffer zone is, like what are you getting at? How big is a buffer zone?<br><br>MR. COSTAKOS: Your Honor, perhaps that was a poor choice of words. I think the point we were trying to make merely was that we think the claim requires detecting within the selected monitoring area, but it doesn't preclude detection elsewhere. So that was merely the point we were trying to make and that was an example that we came up that maybe there is detection for some other purposes not relating to this claim that would happen within the entire field of view. ***So there is nothing nefarious that we're proposing here where we're claiming there is a buffer area to a selected monitoring area***, that's not what we're | **Term No. 5** - "detecting moving objects [within said / in the] selected monitoring area"<br><span>('652 Claims 1, 3, 22)</span><br>• Parties dispute whether applicant disavowed detection *outside* the "selected monitoring area."<br>• Prosecution history estoppel requires *clear and unmistakable* disavowal of claim scope<br>• Genetec relies on single occurrence of "only" in one office action<br>• Crabtree taught detection based on *entire field of view*; did not teach receiving indication of selected monitoring area *at all* → "Only" was not necessary for distinction<br>• POSITA would read applicant remarks as disclaiming, at most, detection based on *entire field of view*; would not read as strictly limiting detection to the selected monitoring area, e.g., with no buffer zone allowed. |

14

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

saying, the point merely was there could be detection outside of the selected monitoring area for other devices, without conceding whether this claim agreed on that activity.



Despite Sensormatic's assurances that nothing "nefarious" was afoot, the Court was concern that introducing a "buffer zone" or "selected area plus" concept into an otherwise straightforward prosecution disclaimer issue would eviscerate the very distinction that gave rise to the disclaimer in the first instance. (D.I. 60 at 50:22-51:2 ("Oh, my God. I'm saying if you do it in the whole field of view, you are also doing it in the selected area, and your point is it doesn't have to be only the selected area, it could be the selected area plus. And I'm saying how can it not be selected area plus and not include the entire field of view?"); *see also* 49:20-51:13.) Ultimately, the Court's Order explicitly rejected the concept of a buffer zone, noting that "if moving object detection could occur both within and outside of the selected monitoring area, '[within said / in the] selected monitoring area' would no longer have meaning." (D.I. 68 at 9.) In view of these failures of proof, Sensormatic cannot prove infringement of independent claims 1 and 3 or their dependents as a matter of law. *See Bayer AG*, 212 F.3d at 1247 ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.").

## VI.    CONCLUSION

For the foregoing reasons, Genetec respectfully requests the Court grant this motion.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Dated: May 26, 2022                          FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    222 Delaware Ave., 17th Floor
    Wilmington, DE 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay
    mcnabnay@fr.com
    David B. Conrad
    conrad@fr.com
    Michael R. Ellis
    ellis@fr.com
    Sarika Patel
    patel@fr.com
    FISH & RICHARDSON P.C.
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com; conrad@fr.com;
    ellis@fr.com; patel@fr.com

    ***Counsel for Defendants***
    ***Genetec (USA) Inc. and Genetec Inc.***

16

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 26, 2022, the foregoing SEALED

document was  served electronically on all counsel of record in this case.


*/s/ Jeremy D. Anderson*
   Jeremy D. Anderson (#4515)