IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GENETEC (USA) INC. and GENETEC INC.,<br><br>Defendants. | C.A. No. 20-760-MN<br><br>**REDACTED VERSION** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR DAUBERT MOTION
TO EXCLUDE THE TESTIMONY OF MR. PHILLIP GREEN**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
Janderson@fr.com

Neil J. McNabnay
David B. Conrad
Michael R. Ellis
Sarika Patel
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com; conrad@fr.com;
ellis@fr.com; patel@fr.com

***Counsel for Defendants
Genetec (USA) Inc. and Genetec Inc.***

Dated:  June 16, 2022

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

**TABLE OF CONTENTS**

**Page(s)**

A. Mr. Green improperly includes unpatented revenue in the royalty base by moving it to his "starting point" for the royalty rate ..................................1

B. Mr. Green does not determine the marketplace value of the patent ..................................3

C. A hypothetical negotiation between reasonable and prudent parties would not result in the reasonable royalty recommended by Mr. Green ........................................5

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aqua Shield v. Inter Pool Cover Team*,
    774 F.3d 7661 (Fed. Cir. 2014)..................................................................................................6

*ART+COM Innovationpool GmbH v. Google Inc.*,
    155 F. Supp. 3d 489 (D. Del. 2016)...........................................................................................5

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)..................................................................................................1

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
    909 F.3d 398 (Fed. Cir. 2018)....................................................................................................1

*Gen. Elec. Co. v. Joiner*,
    118 S. Ct. 512,519 (1997).........................................................................................................4

*Georgia-Pacific Corp v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970).......................................................................................4, 5

*Gjerlov v. Schuyler Labs., Inc.*,
    131 F.3d 1016 (Fed. Cir. 1997)..................................................................................................1

*LaserDynamics v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012).....................................................................................................3

*Longhorn HD LLC v. NetScout Sys.*,
    No. 2:20-CV-00349-JRG- RSP, 2022 WL 903934 (E.D. Tex. Mar. 27, 2022) .......................4

*Power Integrations v. Fairchild Semiconductor*,
    904 F.3d 965 (Fed. Cir. 2018)...................................................................................................4

*ResQNet.com v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)...................................................................................................3

*SRI Int'l, Inc. v. Cisco Sys.*,
    179 F. Supp. 3d 339 (D. Del. 2016)..........................................................................................4

*TC Tech., LLC v. Sprint Corp.*,
    No. 16-cv-153-RGA, 2019 WL 2515779 (D. Del. June 18, 2019)...........................................4

**Other Authorities**

Fed. R. Evid. 703 .............................................................................................................................4

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Genetec is not challenging the factual conclusions reached by Mr. Green in his methodology—Mr. Green's methodology itself is improper. These violations warrant exclusion.

### A. Mr. Green improperly includes unpatented revenue in the royalty base by moving it to his "starting point" for the royalty rate.

Genetec's complaint is not "that Mr. Green did not choose the best starting point." (D.I. 134 at 4.) It is that Mr. Green's choice of starting point is effectively a methodology that includes revenue from unpatented sales in his royalty base. This violates settled damages law, and his opinion should be excluded. "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015); *see also Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 412 (Fed. Cir. 2018) (reversing award based on a royalty base comprising sales of non-accused products); *Gjerlov v. Schuyler Labs., Inc.*, 131 F.3d 1016 (Fed. Cir. 1997) (reversing reasonable royalty award that included damages for the sale of non-infringing products).

With respect to the '652 Patent,[1] Sensormatic argues that "Genetec confuses royalty base and rate—$[redacted] is not a royalty base; it is a starting point for determining a per-unit royalty rate." (D.I. 134 at 4). This is a distinction without a difference. Mr. Green calls his royalty rate the "apportioned profit." But by starting with a per-unit price substantially higher than the actual sales price because of anticipated sales of unpatented "related products and services," this royalty rate necessarily includes "profit" from activity that is not patent infringement. Because Mr. Green applies this rate to the royalty base of patented product sales *volume*, he hides the fact that he actually is including unpatented *revenue* in his reasonable royalty calculation. The table below

---

[1] Sensormatic wrongly suggests that Genetec did not address Mr. Green's methodology for the '954 Patent. (D.I. 134 at 2.) Not true. Genetec showed how the methodology was the same, (D.I. 118 at 3), and addressed any unique aspects introduced by his '954 Patent discussion where needed (*Id.* at 8). Sensormatic did not identify any material differences that requires a separate analysis.

1

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

demonstrates this. The conclusion reached by Mr. Green's methodology is identical to multiplying the equivalent royalty rate *percentage* to a royalty base that includes unpatented *revenue* (*i.e.*, a royalty based upon his much higher per-unit "starting point" rather than actual per-unit revenue).



Mr. Green admits he relied on revenue from unpatented "related products and services." His analysis shows the weighted average prices for the accused products range are ▮▮▮▮ ▮▮▮▮ (D.I. 117 at Ex. 4 ¶ 43; *see also id.* at Ex. 1, Exhibit F-2.) He used ▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮ (D.I. 117 at Ex. 5 ¶ 14; Ex. 2 at 14:13–16:4; 18:14–19:24.). He simply moved this revenue attributable to unpatented "related products and services" from the royalty base to his "starting point." Using a per-unit royalty rather than a percentage royalty is unreliable: his reasonable royalty damages are directly based upon revenue from activity that is not patent infringement. He is not permitted to present this

---

[2] The highlighted royalty amount for ▮▮▮▮ formed part of the total '652 patent reasonable royalty of ▮▮▮▮. (*See* D.I. 117 Ex.1 at ¶¶ 39, 122–125, 145, and Exhibit E).

2

~~HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY~~

methodology to the jury.

### B. Mr. Green does not determine the marketplace value of the patent.

Sensormatic's response provides only excuses and does not address the fact that Mr. Green's apportionment methodology contains fatal flaws that violate settled patent damages law. Mr. Green does not properly apply the entire market value rule, which is, "by definition" when a royalty is "expressly calculated as a percentage of the entire market value of" the accused product. *LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). First, Mr. Green failed to answer the necessary economic question of apportionment that would allow him to base his damages on the price of a product that contains both patented and unpatented features: what portion of this price represents the ***marketplace value*** that the patented technology adds to the accused products compared to the value of the accused products without this technology? *See ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("expert must carefully tie proof of damages to the claimed invention's footprint ***in the marketplace***.").

When asked directly whether this is what he did, Mr. Green admitted it was not. (*See* D.I. 117, Ex. 2 at 85:14–21 ("I don't think that's the comparison that's being done here.")). Instead, the technical opinions that he relied upon were simply vague notions of "importance" or "prevalence" or "pervasive." *See* D.I. 117, Ex. 2 at 85:14–86:8, 130:11-132:23. "Importance" or "prevalence" or "pervasive" is not the analysis Mr. Green needed to conduct. *See LaserDynamics*, 694 F.3d at 69 ("It is not enough to merely show that the [patented] method is viewed as valuable, important, or even essential…. [P]roof that consumers would choose the [accused product] having the [patented] functionality says nothing as to whether the presence of that functionality is what motivates consumers to buy [the product] in the first place. ***It is this latter and higher degree of proof that must exist to support an entire market value rule theory***."). It does not matter whether the "technical apportionments" are bogus or well-founded. They do not answer the question Mr.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Green must answer to comply with patent damages law: how would a quantitative economic analysis apportion the *marketplace value* of the patent on Genetec's profit so that he may base his royalties on the market value of a multi-component product? *Cf. Power Integrations v. Fairchild Semiconductor*, 904 F.3d 965, 979 (Fed. Cir. 2018) ("When the product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product.") Sensormatic's cases do not help it. The expert in *TS Tech* did in fact "apportion the uplink *value* attributable to the" patent-in-suit. *TC Tech., LLC v. Sprint Corp.*, No. 16-cv-153-RGA, 2019 WL 2515779, *13 (D. Del. June 18, 2019). The defendants in *Longhorn HD* complained only about the reliance on the technical expert, and not the failure of the economic analysis as in Genetec's motion. *Longhorn HD LLC v. NetScout Sys.*, No. 2:20-CV-00349-JRG-RSP, 2022 WL 903934, *7-9 (E.D. Tex. Mar. 27, 2022). Similarly, the defendant in *SRI* only attacked the technical expert. *SRI Int'l, Inc. v. Cisco Sys.*, 179 F. Supp. 3d 339, 369 (D. Del. 2016).

Still, Mr. Bovik's "technical apportionment" is exceptionally improper because it is an arbitrary number plucked out of thin air, *admittedly* based only on his *ipse dixit*. (*See* D.I. 118 at 8; *see also Gen. Elec. Co. v. Joiner*, 118 S. Ct. 512,519 (1997) ("nothing in either Daubert or the [] Rules of Evidence requires a [] court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert").) Sensormatic cannot launder this improper evidence by claiming Mr. Green can rely upon other experts. Mr. Green can only rely on the "opinions of a *qualified* expert." *See Georgia-Pacific Corp v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). He may only rely on information "if experts in the particular field would *reasonably* rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Mr. Bovik's opinion, for which his basis is admittedly "*I'm* the evidence," is not a qualified technical opinion nor a reasonable source of economic data. (D.I. 117 Ex. 7 at 251:18-19).

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

Sensormatic argues that this is all fine because Genetec did not file a *Daubert* motion directed at the technical experts. (*See* D.I 134 at 9). But Genetec's complaint here is primarily directed at Mr. Green, whose methodology was not the kind of apportionment needed comply with the entire market value rule. Moreover, the technical experts' improper opinions are only relevant to Mr. Green's damages opinion. Filing cumulative *Daubert* motions to also exclude their testimony would be unnecessary.

Sensormatic also blames the victim, Genetec, for not providing "data that relates profits to product features nor suggested any alternative apportionment." (D.I. 134 at 9.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is not Genetec's burden to create it. Sensormatic cannot find an excuse in *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 514 (D. Del. 2016). There, the expert found documents that reflected "a range of values for the percentage of … revenues attributable" to the accused feature. (*Id.*) He also analyzed various projected advertising revenue to extrapolate a relative revenue contribution for the accused feature. (*See id.* at 515). None of that existed here. It was Mr. Green's burden to find it or create it, such as by a conjoint analysis, market survey, or other means.

### C. A hypothetical negotiation between reasonable and prudent parties would not result in the reasonable royalty recommended by Mr. Green

Sensormatic's interpretation of *Georgia Pacific* is wrong. Under *Georgia Pacific* Factor 15, a damages expert should consider the actions of "a **prudent** licensee" contemplating whether the infringement would make "a reasonable profit." *See Georgia-Pacific*, 318 F. Supp. at 1120. "In hypothetical-negotiation terms, the core economic question is what the infringer, in a hypothetical infringement negotiation under hypothetical conditions, would have anticipated the profit-making potential of use of the patented technology to be, compared to using noninfringing alternatives. If a potential user of the patented technology would expect to earn X profits in the

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

future without using the patented technology, and X + Y profits by using the patented technology, ***it would seem, as a prima facie matter, economically irrational to pay more than Y as a royalty***—paying more would produce a loss compared to forgoing use of the patented technology." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770–771 (Fed. Cir. 2014) (emphasis added).

Mr. Green never calculates what the additional "profits by using the patented technology" are because his "apportioned profit" was derived from a subjective starting point. *See* Section I(A), *supra*. Thus, he did not answer the "core economic question" he was supposed to when he stopped his hypothetical negotiation analysis after arriving at his improper "apportioned profit." But we can see from simple mathematics and his assumptions that this conclusion is economically irrational. With respect to the '652 Patent, his assumption is that the apportionment due to the patented features is ▓▓▓. Thus, Mr. Green assumes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[3] It would be "prima facie" "economically irrational" for Genetec to pay more than ▓▓▓ as a royalty because doing so would produce a loss compared to foregoing use of the '652 Patent. Yet, Mr. Green's failure to properly complete the hypothetical negotiation analysis as required resulted in a conclusion that Genetec must pay a royalty of ▓▓▓—more than would be rational on its face. *See Aqua Shield*, 774 F.3d at 773 (reversing and directing district court to consider all relevant evidence including … "[defendant's] actual profits to what [defendant's] expectations would have been in a hypothetical negotiation").

---

[3] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* D.I. 117 at Ex. 2 ¶ 103.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY

| | |
|---|---|
| Dated: June 16, 2022 | FISH & RICHARDSON P.C. |
| | By: */s/ Jeremy D. Anderson* |
| | Jeremy D. Anderson (#4515) |
| | 222 Delaware Ave., 17th Floor |
| | Wilmington, DE 19801 |
| | (302) 652-5070 (Telephone) |
| | (302) 652-0607 (Facsimile) |
| | janderson@fr.com |
| | |
| | Neil J. McNabnay |
| | David B. Conrad |
| | Michael R. Ellis |
| | Sarika Patel |
| | 1717 Main Street, Suite 5000 |
| | Dallas, Texas 75201 |
| | (214) 747-5070 (Telephone) |
| | (214) 747-2091 (Facsimile) |
| | mcnabnay@fr.com; conrad@fr.com ; |
| | ellis@fr.com; patel@fr.com |
| | |
| | ***Counsel for Defendants*** |
| | ***Genetec (USA) Inc. and Genetec Inc.*** |

## CERTIFICATE OF SERVICE

PLEASE TAKE NOTICE that on June 16, 2022 counsel for Defendants electronically served the foregoing SEALED document on the following counsel of record:

Steven J. Balick
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashbygeddes.com;
amayo@ashbygeddes.com

Daniel P. Flaherty
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
dflaherty@foley.com;

Jeffrey N. Costakos
Kadie M. Jelenchick
Kevin J. Malaney
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
jcostakos@foley.com;
kjelenchick@foley.com;
kmalaney@foley.com

/s/ Jeremy D. Anderson
    Jeremy D. Anderson (#4515)