IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>GENETEC (USA) INC. and GENETEC INC.,<br><br>        Defendants. | C.A. No. 20-760-MN-CJB<br><br>**JURY TRIAL DEMANDED**<br><br><br><br>**REDACTED VERSION** |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST TO COMPEL
PRODUCTION OF CERTAIN WITHHELD PRIVILGED DOCUMENTS (D.I. 175, 220)**

Dated: August 1, 2022

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael R. Ellis
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
njm@fr.com
conrad@fr.com
rbonilla@fr.com
ellis@fr.com

*Counsel for Defendants
Genetec USA and Genetec Inc.*

Dear Magistrate Judge Burke:

Sensormatic assured this Court that it would rely **only** on non-privileged evidence. *See* Sep. 8, 2021 Hearing Tr. at 18–19 (Ex. A). Its summary judgment motion showed that was not true. As portended by this Court, Sensormatic submitted testimony partially disclosing or based on privileged material to affirmatively disprove inequitable conduct. *See Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 471 (D. Del. 2010) (finding waiver after counsel confirmed at oral argument it would defend using testimony regarding attorney-client communication); *Ironburg Inventions Ltd. v. Valve Corp.*, 2018 WL 4281531, *3–4 (W.D. Wash. Sep. 7, 2018) (Ex. B). ("Although the mere denial of an inequitable conduct claim does not waive the privilege, . . . affirmative testimony plac[ing] mental impressions and intent at issue . . . impliedly [does].")

**Sensormatic Attempts to "Prove" Lack of Intent by Characterizing Withheld Communications.**

Genetec has proven a prima facie case of inequitable conduct by clear and convincing evidence. But the "material facts" that Sensormatic relies on to deny deceptive intent are characterizations of the withheld communications between the prosecuting attorneys during the period of abandonment.

To begin, the USPTO's MPEP advises that even a 3-month delay in reviving an application makes a claim of "unintentional delay" suspect. (D.I. 160 at ¶ 28.) This was an 18-month delay. Sensormatic argues that in-house counsel, Frank Cona's, initial abandonment of the '484 Application in late 2004 was unintentional. (D.I. 124 at ¶¶ 7–10, D.I. 160 at ¶¶ 3–5.) At the same time, however, Mr. Cona was still filing papers for the related '441 Application. (D.I. 160 at ¶ 7.) These cases were on his mind.



(*Id.*, ¶¶ 21, 27.) Mr. Sotiriou therefore could not have truthfully attested that the "entire period" constituted "unintentional delay." Nor could have Mr. Cona approved that statement. The Court can "fairly conclude from this evidence that [any] claim of mistake was a post hoc rationalization." *In re Rembrandt*, 899 F. 3d 1254, 1274 (Fed. Cir. 2019).

The most reasonable inference from the above is that they deliberately deceived the USPTO in the declaration for the petition to revive. *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001)

("facts in inequitable conduct cases rarely include direct evidence of admitted deceitful conduct"); *see also Belcher Pharmaceuticals, LLC v. Hospira, Inc.*, 11 F. 4th 1345, 1353–1354 (Fed. Cir. 2021); *Aventis Pharma SA v. Hospira, Inc.*, 675 F. 3d 1324, 1336 (Fed. Cir. 2012). Sensormatic needed to rebut Genetec's showing with an explanation. *See M. Eagles Tool Warehouse v. Fisher Tooling Co.*, 439 F. 3d 1335, 1341 (Fed. Cir. 2006) (regarding need to offer an explanation after a prima facie case). It attempts do so by telling its side of the story that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 124 at ¶¶ 12–16, 22, 24, 26, 30) and disputing Genetec's contrary interpretation of the record (D.I. 203 at ¶¶ 5–6, 10–13, 16, 21, 22).

**Sensormatic's Alternative Explanation Partially Discloses Privileged Information.**

SOF ¶¶ 13, 14, 15: Sensormatic does not merely assert "the occurrence of a June 10, 2005 communication between Mr. Cona and Mr. Small." It partially discloses it as an instruction to "prepare and file a petition to revive." This instruction is not "evident from the public file history," in which the petition to revive was filed ***almost 12 months later.*** The communication could just as easily been, "can we revive this if you think the examiner got it wrong?" The same is true for the transmission of a "draft" in September 2005. Sensormatic has only partially described the content as a "draft"—again, only the part it deems favorable. Genetec, in contrast, cites no SOF for what was said about ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 129, Ex. 10 at 156:10–158:15.) That's the unfavorable part it hides behind a shield of privilege. In its reply MSJ, Sensormatic disputes Genetec's SOFs asserting ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 203 ¶¶ 12–13.) This denial is also a characterization of the instructions to counsel. Yet it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (D.I. 129, Ex. 10 at 119:2–24, Ex. 12 at 54:5–55:11.)

SOF ¶¶ 16, 22, 24, 26: That the attorneys "worked on preparing the Petition to Revive" is most certainly a characterization of their exchanges. The testimony Sensormatic cites shows a collaborative effort. The truth of Sensormatic's statement necessarily depends upon the substance of the communications. Mr. Cona said that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (D.I. 129, Ex. 10 at 121:15–23.) There was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*, 122:5–25, 123:3–16). Sotiriou said ▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*, Ex. 12 at 53:11–21.) Small said ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ (*Id.*, 48:17–49:15.) Sensormatic disputes that it paints Mr. Cona's state of mind as "unaware," leading to him to "inquir[e]" several months later, but its assertion is that Mr. Cona "***realized*** that no petition to revive had yet been filed" in May 2006. Furthermore, Mr. Cona based his understanding that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*, Ex. 10 at 128:21–4.) Sensormatic blocked further questioning on this. (*Id.* at 157:24–158:15.). Finally, Sensormatic says ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ but his testimony is all it cited. (D.I. 124 at ¶ 26.) Now it says it relies upon the declaration in the petition to revive signed by Mr. Sotiriou, but that is pointing to the deception to claim there was no deception. Repeating a lie does not make it true.

SOF ¶¶ 12, 30: Mr. Cona would not testify that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." (D.I. 165 at ¶ 11.) At best, he simply ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*) Nevertheless, Sensormatic did speculate ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 124 at ¶¶ 30–31.) If Mr. Cona could not explain what the "patent database" entries in the privilege log were, Sensormatic failed to properly disclose the nature of the document sufficient to protect the

2

privilege. Fed. R. Civ. P. 26(b)(5). At minimum, the Court should examine those patent database screenshots *in camera*. (*See* Priv. Nos. 138, 198, 340, 348.) If they tend to prove or disprove Mr. Cona's assertion that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ or otherwise bear on the issues in this motion that warrant waiver, it can order production.

Finally, Genetec is not asserting a new theory. It pleaded this exact theory in its counterclaim two years ago: that Sensormatic deliberately delayed reviving the '484 Application to see how the '441 Application played out. (D.I. 8 at ¶¶ 50–53, 58.)

**Sensormatic Does Not Provide Contrary Authority.**

The facts are unusual. Reviving a patent application 18 months after abandonment is rare. (D.I. 160 at ¶ 21.) But the underlying legal analysis—whether one-sided characterizations of privileged communications and partial disclosures of privileged information constitutes waiver—is not.

In analyzing waiver, the Third Circuit ultimately looks at the "fairness" of an affirmative act of partial disclosure in litigation. *Glenmede*, 56 F.3d at 486. The Federal Circuit has not yet explicitly held that its law applies here, but it has been applied to implied waiver for "advice of counsel" rebuttals to inequitable conduct. *Brigham*, 707 F. Supp. 2d at 469–471. On the question of waiver, the Federal Circuit does not differ in that it "is grounded in principles of fairness." *In re Seagate Tech., LLC*, 497 F. 3d 1360, 1372 (Fed. Cir. 2007). Waiver extends to all subject matter referring to or describing the communication forming the alleged state of mind, but not internal attorney deliberations that do not reflect the communication to the client when the issue is "advice of counsel." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303–1304 (Fed. Cir. 2006). Other than "patent database" screenshots, Genetec seeks production of only communications.

Here, it is not advice to a client that forms the alleged lack of deceptive intent, but the client's instructions to outside counsel and the substance of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The truthfulness of outside counsel's belief that the initial abandonment and subsequent delay were unintentional depends upon the substance of those exchanges. Waiver is not limited to when a party relies on "advice of counsel." *Ironburg*, 2018 WL 4281531, *3. Rather, an analogous scenario would be where courts find express or implied waiver when litigants submit testimony of "good faith" based upon attorney communications or mental impressions.[1] In *Barry*, the court found waiver when a lawyer asserted compliance with the duty to investigate. *Barry*, 2016 WL 3583620, *8–9. In *Pall,* waiver resulted from a good faith defense reliant upon the lawyer's "thoughts and mental impressions." *Pall*, 268 F.R.D. at 169–170. In *Server Tech.*, a lawyer's testimony about receiving "great assurances" that the client complied with the duty of candor waived privilege. *Server Tech.*, 2011 WL 1447620, *8. In *Mylan*, a lawyer's reliance on the client's representations to counsel about the materiality of prior art constituted implied waiver. *Mylan*, 936 F.Supp.2d at 905–906. These cases compel production.

---

[1] *Barry v. Medtronic, Inc.*, 2016 WL 3583620 (E.D. Tex. May 8, 2016); *Medicines Co. v. Mylan Inc.*, 936 F. Supp. 2d 894, 905-06 (N.D. Ill. 2013); *Server Tech., Inc. v. Am. Power Conversion Corp.*, 2011 WL 1447620 (D. Nev. Apr. 14, 2011); *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 168 (E.D.N.Y. 2010); *Echometer Co. v. Lufkin Indus., Inc.*, 2002 WL 87323, at *1–2 (N.D. Tex. Jan. 16, 2002); *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653 (N.D. Cal.1994). (Exs. C–H).

Respectfully,

*/s/ Jeremy D. Anderson*

Jeremy D. Anderson (#4515)

cc:   All Counsel of Record – via e-mail