IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-760-GBW |
| | ) | |
| GENETEC (USA) INC. and GENETEC INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court in this patent litigation matter is Defendants Genetec (USA) Inc. and Genetec Inc.'s ("Defendants") motion seeking to compel Plaintiff Sensormatic Electronics, LLC ("Plaintiff") to produce all correspondence and attachments on Plaintiff's privilege log between April 5, 2004 and May 12, 2006 ("Motion"). (D.I. 175; *see also* D.I. 194 at 1) For the reasons set out below, the Court DENIES the Motion.

**I.   BACKGROUND**

Because the parties are in the later stages of this case and desire a timely decision on the Motion, the Court writes primarily for them, and so it will dispense with a lengthy recitation of the facts relating to this dispute. To the extent that certain facts of record are relevant, the Court will note them in Section II.

On June 29, 2022, Defendants filed the instant Motion. (D.I. 175) The Motion was fully briefed as of August 1, 2022. (D.I. 224)

**II.   DISCUSSION**

Relevant to this dispute is Defendants' counterclaim of inequitable conduct. Therein, Defendants allege that Plaintiff (via its then-affiliate, Tyco Fire and Security Services, or

"TFSS")[1] and its prosecuting attorneys, including in-house counsel Frank Cona and outside counsel Evan Sotiriou, intentionally abandoned U.S. Patent Application Serial No. 09/801,484 (the "'484 application")—the application that ultimately led to asserted U.S. Patent No. 7,307,652 (the "'652 patent")—in favor of related patent applications. (D.I. 8 at 11-28; D.I. 160; D.I. 194 at 1-2) The United States Patent and Trademark Office ("USPTO") thereafter issued a Notice of Abandonment as to the '484 application in December 2004, and the patent applicant did not submit a petition to revive the application until May 2006, approximately 18 months later. (D.I. 8 at 14; D.I. 194 at 2) Defendants allege that when Mr. Sotiriou thereafter told the USPTO that the delay in reviving the application was unintentional, this was knowingly false—and thus that this and related acts amount to inequitable conduct on Plaintiff's part. (D.I. 8 at 16-28)

With their Motion, Defendants are seeking documents and communications between Plaintiff's in-house and outside counsel that relate to the prosecution of the '652 patent and related patents, which Plaintiff has withheld as being protected by the attorney-client privilege. (D.I. 175 at 1) Defendants argue that Plaintiff has waived any privilege applicable to these documents by asserting a defense to the inequitable conduct counterclaim—set out in Plaintiff's pending motion for summary judgment of no inequitable conduct ("MSJ"), (D.I. 123)—that puts Plaintiff's attorneys' advice firmly "at issue" in this litigation, (D.I. 194 at 4).

In *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit explained the contours of the "at issue" doctrine.[2]

---

[1]   Herein, for ease of reference, the Court will refer to TFSS as "Plaintiff."

[2]   In this patent case, the Court follows regional circuit law as to disputes relating to the applicability of the attorney-client privilege and related doctrines, to the extent that those issues are not unique to patent law. *See INVISTA N. Am. S.a.r.l. v. M&G USA Corp.*, Civil

The Third Circuit noted that when a party takes the affirmative step of placing its attorney's advice at issue in defending against a claim, courts have found that by doing so, that party has opened to examination facts relating to the advice. *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863. But the *Rhone-Poulenc* Court went on to caution that advice is not in issue merely because it is relevant, nor simply because it might affect the client's state of mind in a relevant manner; instead, such advice is placed at issue only where the "client asserts a claim or defense, and attempts to prove that claim or defense by *disclosing or describing an attorney client communication*." *Id*. (emphasis added).

In *Rhone-Poulenc*, the Third Circuit was emphasizing that the "at issue" doctrine only applies when the party puts at issue the *actual contents* of an attorney-client communication in support of its claim or defense. *Id.* (explaining that in the patent context, for example, the "at issue" doctrine can lead to waiver when privileged communications are used to rebut the charge

---

Action No. 11-1007-SLR-CJB, 2013 WL 12171721, at *4 n.4 (D. Del. June 25, 2013) (citing cases). However, when a determination of the applicability of a privilege implicates a substantive patent law issue, the law of the United States Court of Appeals for the Federal Circuit applies. *Id.* (citing cases).

In their opening letter brief, Defendants suggested that Third Circuit law applied to this dispute, as they cited exclusively to Third Circuit cases in setting out the contours of the "at issue" doctrine. (D.I. 194 at 4) In its answering brief, Plaintiff did not disagree with that position (Plaintiff therein simply explained its view as to why Third Circuit caselaw did not support Defendants' position). (D.I. 211 at 4) Then, in their reply brief, Defendants for the first time mentioned Federal Circuit law and vaguely suggested that that law might apply instead. (D.I. 224 at 3) But Defendants immediately noted thereafter that when it comes to the issue of how attorney-client privileged information is placed "at issue" in a case, "the Federal Circuit does not differ" from the Third Circuit. (*Id.*)

Because Defendants themselves initially relied on Third Circuit caselaw here (as did Plaintiff) and because Defendants assert that the Third Circuit's approach to this issue is no different from that of the Federal Circuit, the Court will herein apply Third Circuit law regarding the "at issue" doctrine to this patent case. *Cf. Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, C.A. No. 14-1430-LPS-JLH, 2021 WL 4819904, at *1 (D. Del. Oct. 15, 2021).

3

of willful infringement, but only when "the infringer seeks to limit its liability by *describing that advice* and by asserting that he relied on that advice") (emphasis added); *see also Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 n.36 (3d Cir. 1996) (noting that the "at issue" doctrine applies when a party puts "the substance of counsel's advice" at issue via their claim or defense); *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) (concluding that a party waived the attorney-client privilege by putting at issue reliance on the advice of counsel, where the party voluntarily produced an opinion letter that included the content of certain of the advice at issue). This is perhaps easiest to see by looking at the two cases from the United States District Court for the District of New Jersey that were cited by the *Rhone-Poulenc* Court in explaining the rationale behind the "at issue" doctrine. *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863 (citing *N. River Ins. Co. v. Phila. Reins. Corp.*, 797 F. Supp. 363 (D.N.J. 1992); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992)). In *N. River Ins. Co. v. Phila. Reins. Corp.*, 797 F. Supp. 363 (D.N.J. 1992), the Court explained that the "at issue" doctrine "should be construed narrowly to create an implied waiver of the attorney-client privilege only when a party puts 'in issue' the *contents* of an attorney client communication" by confirming that it "intends to prove [its claim or defense] by disclosure of [the] attorney-client communication" itself. 797 F. Supp. at 370 (emphasis in original). And in *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992), the Court explained that the "at issue" doctrine should apply only where a party has asserted a claim or defense that it "intends to prove *by use of the privileged materials*" such that it could be said that the party seeking protection has "injected the communications into the action[.]" 143 F.R.D. at 71 (emphasis added).

Because of the importance of the attorney-client privilege, the Third Circuit construes the "at issue" waiver "narrowly[.]" *In re Teleglobe Commc'ns Corp.*, 392 B.R. 561, 586 (D. Del.

4

2008) (citing *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863). The *Rhone-Poulenc* Court explained that this approach is appropriate because it is consistent with the "essential elements of the privilege." 32 F.3d at 863. In this regard, the Third Circuit noted that by interpreting the "at issue" doctrine in the manner set out above, this "leave[s] to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue"; it also allows for certainty and predictability, in that the client knows that its confidential communications will not be disclosed unless it takes the "affirmative step" of waiving privilege by directly utilizing the contents of a privileged communication as part of its claim or defense. *Id*. at 863-64. The *Rhone-Poulenc* Court rejected the idea that the "at issue" doctrine could be invoked simply when a party's state of mind is at issue in the litigation. *Id*. at 864. The Third Circuit explained that while in such a scenario, facts about the client's state of mind may be "relevant" (or "vital" or "highly probative" or "even go to the heart of an issue"), a "finding that confidentiality may be waived depending on the relevance of the communication completely undermines" the interest to be served by the attorney-client privilege—i.e., ensuring that the client can consult with their counsel in confidence. *Id*.

With the relevant law now set out, the Court turns to Defendants' arguments. Defendants assert that in nine paragraphs of a concise statement of facts ("SOF") that Plaintiff filed along with its MSJ (paragraphs 12-16, 22, 24, 26 and 30), Plaintiff clearly showed how it has put its attorney-client communications at issue in the case. (D.I. 194 at 1) So the question becomes: In these nine SOF paragraphs (and, relatedly, in Plaintiff's MSJ), did Plaintiff actually put at issue the actual contents of an otherwise privileged communication? Below, the Court examines Defendants' arguments about each of the SOF paragraphs that are at issue here.

- **Paragraphs 12 and 30**: In these paragraphs, Plaintiff states that: (1) in or around June 2005, it realized that the '484

application had been unintentionally abandoned; and (2) Mr. Cona testified that this happened either because the deadline for filing a required reply was "misdocketed" or that he and his colleagues just "missed" the deadline. (D.I. 124 at ¶¶ 12, 30 (internal quotation marks and citations omitted))  The Court does not see how this amounts to Plaintiff using the contents of otherwise privileged attorney-client communications to make out its defense.  Plaintiff here is characterizing the abandonment as unintentional and suggesting possible factual reasons as to why this might be so, nothing more. (D.I. 211 at 2)  While privileged communications between Mr. Cona and others associated with Plaintiff might be *relevant* to their state of mind regarding the reason for the abandonment, relevance is not the test.[3]  (D.I. 194 at 4 (Defendants acknowledging that were Plaintiff simply to make reference to its attorneys' state of mind, that itself "may not result in waiver"))

- **Paragraphs 13, 14 and 15**: In these paragraphs, Plaintiff explains how, after realizing that the '484 application had been unintentionally abandoned in June 2005, it engaged Armstrong Teasdale LLP ("Armstrong Teasdale") to "prepare and file a petition to revive" the application (and how Mr. Sotiriou of that firm was the person selected to work on the petition to revive). (D.I. 124 at ¶¶ 13-15)  Defendants argue that by asserting that Armstrong Teasdale was hired to "prepare and file a petition to revive" the '484 application, Plaintiff is "characteriz[ing] the instructions communicated to and between attorneys on how to handle the [] [a]pplication—correspondence [Plaintiff] withheld as privileged and precluded questioning by instruction." (D.I. 194 at 2)  The Court disagrees.  In these paragraphs, Plaintiff is discussing only non-privileged *facts*: i.e., that: (1) it hired a law firm; (2) the law firm was to and did prepare and file a petition to revive; and (3) a particular

---

[3]   At one point in his deposition, Defendants asked Mr. Cona how he had figured out that abandonment of the application was unintentional.  To this, Mr. Cona responded that he did not recall how this was discovered, but he thought that the discovery would have come "during the review of the cases or the docket[.]" (D.I. 129, ex. 10 at 152)  Defendants then point to the fact that certain screen captures of a "Tyco patent database" have been withheld as privileged by Plaintiff, (D.I. 157, ex. I at 7), and they suggest that Mr. Cona's reference to "cases or the docket" must be a reference to these withheld databases, (D.I. 194 at 2).  But Plaintiff denies that this is so, (D.I. 211 at 2), and it is not clear at all to the Court that Mr. Cona was referencing allegedly privileged documents in this deposition answer.  Indeed, when asked during his deposition about the references to a "Tyco patent database" on Plaintiff's privilege log, Mr. Cona testified that he did not know what those entries referred to. (D.I. 129, ex. 10 at 106-07)

attorney (Mr. Sotiriou) received the assignment to work on the matter. (D.I. 211 at 2) Plaintiff could have (but did not) attempt to augment those facts with the *content of information drawn from actual communications* between it and Armstrong Teasdale attorneys, or among those attorneys. Had it done so, Plaintiff would have been using otherwise privileged attorney-client communications as part of its defense, and that would have placed other such similar privileged communications "at issue." But Plaintiff did not take this step here.[4]

- **Paragraphs 16, 22, 24 and 26**: In these paragraphs, Plaintiff states that: (1) in late 2005, Mr. Cona and Mr. Sotiriou worked on preparing the petition and related USPTO filings; (2) in May 2006, Mr. Cona "realized" that no petition to revive had been filed "and inquired" about that; (3) the "entire delay in filing the petition to revive the '484 [a]pplication was unintentional" and (4) Plaintiff's statement to the USPTO that the delay was unintentional "was true and correct." (D.I. 124 at ¶¶ 16, 22, 24, 26) Defendants assert that in these paragraphs, Plaintiff is attempting to "affirmatively prove the attorneys' state of mind as 'unintentional' by characterizing communications withheld as privilege[d]." (D.I. 194 at 3) To a great extent, this argument is easily dismissed. Instead, the bulk of these statements are either statements of fact (i.e., about what Mr. Cona and Mr. Sotiriou did) or assertions about what the attorneys'/Plaintiff's state of mind was at a given time—not statements that weaponize the *content of otherwise privileged attorney-client communications*. (D.I. 211 at 3) The one

---

[4] It is true, as Defendants note, that Defendants' counsel asked Mr. Cona and Mr. Sotiriou during their depositions about certain communications between Plaintiff and Armstrong Teasdale (or among Armstrong Teasdale attorneys) in late 2005, after Plaintiff had hired the firm. (D.I. 194 at 2) But that is not an example of Plaintiff affirmatively seeking to use the content of those communications in its defense—it is an example of Defendants seeking to gain access to privileged communications and Plaintiff invoking the privilege to deny such access.

As the Court has noted above, that Armstrong Teasdale was hired by Plaintiff and was to "prepare and file a petition to revive" on behalf of Plaintiff are facts that are themselves evident from non-privileged sources. After all, the firm did eventually publicly file such a petition on behalf of Plaintiff. Now, suppose that in its MSJ, Plaintiff had also written: "After hiring Armstrong Teasdale, Mr. Cona immediately e-mailed Mr. Sotiriou, instructing: 'Please file a petition right away, with no delay. As we have discussed, it is important that this filing be on record as quickly as possible; please spare no expense!'" Had Plaintiff done this, its reference would clearly be an example of the use of the content of otherwise privileged communications to support its defense. But Plaintiff did not do anything like that in paragraphs 13-15 of the SOF or elsewhere in its MSJ.

7

>arguable exception is the statement, found in paragraph 22, that after Mr. Cona realized in May 2006 that no petition to revive had yet been filed, he "inquired" about it with Armstrong Teasdale. (D.I. 124 at ¶ 22 (citing D.I. 129, ex. 10 at 127)) This statement about Mr. Cona's "inquir[y]" might (if considered in a vacuum) suggest that Plaintiff is putting at issue the substance of communications that Mr. Cona thereafter had with Armstrong Teasdale attorneys (i.e., about *why* it was that the petition had not been filed). But in the end, the Court does not think that this stray reference in paragraph 22 amounts to waiver. That is in significant part because, so far as the Court can tell, Plaintiff never cites to this portion of paragraph 22 (that is, regarding the substance of what Mr. Cona "inquired" about, or the substance of any responses he was given) in its MSJ filings.[5]

Ultimately, in these nine SOF paragraphs, Plaintiff is, *inter alia*, making assertions about its state of mind and the state of mind of its counsel, in support of its defense to the inequitable conduct counterclaim. And it is surely true that Plaintiff's attorney-client communications regarding the petition to revive and related matters would be relevant to what Plaintiff's/Plaintiff's counsel's state of mind truly was at the time. But in none of the nine SOF paragraphs does Plaintiff attempt to use the *actual content* of otherwise privileged attorney-client communications as a sword—i.e., as an affirmative means to defeat Defendants' counterclaim. (D.I. 211 at 1 ("In [denying liability as to the counterclaim] Sensormatic does not characterize, selectively disclose, or otherwise rely on the substance of any withheld communications.")) It is *that type* of offensive use of otherwise privileged material that, pursuant to relevant precedent, amounts to putting privileged attorney-client communications "at issue" in a case. *See Teleglobe*, 392 B.R. at 586 (concluding that there was no waiver based on the "at issue" doctrine,

---

[5]   Again, during Mr. Cona's deposition, Defendants did ask questions seeking to learn the substance of Mr. Cona's May 2006 inquiry with Armstrong Teasdale. (D.I. 129, ex. 10 at 127, 164-65) But Mr. Cona did not divulge those communications. (*Id.*) He either testified that he did not recall what was said in those conversations, or he was prohibited from sharing that information via a privilege objection from Plaintiff's counsel. (*Id.*)

8

where the party asserting privilege did not seek to "use the privileged documents as a sword while keeping other information hidden behind the shield of the attorney-client privilege" and where that party's witness testified simply about her "actions and her beliefs and did not refer specifically to the contents of any of the alleged privileged documents"); *cf. Princeton Digit. Image Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS, 2017 WL 3264068, at *1-2 (D. Del. Aug. 1, 2017) (concluding that the plaintiff had put at issue its otherwise privileged communications with counsel, but only where the plaintiff had "produced and described certain privileged communications regarding its pre-suit investigation and [] relie[d] on those materials as evidence of its good faith[,]" and where it had "inconsistently asserted privilege over some of these communications") (internal quotation marks and citation omitted); *see also N.J. Mfrs. Ins. Co. v. Brady*, CIVIL ACTION NO. 3:15-CV-02236, 2017 WL 264457, at *13 (M.D. Pa. Jan. 20, 2017).

In light of all of this, and in light of the fact that the "at issue" waiver doctrine is to be narrowly construed, the Court DENIES Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, the Motion is DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the document. Any such redacted version shall be submitted by no later than **October 25, 2022** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation

marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: October 20, 2022

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE