████████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC, | |
| *Plaintiff*, | CASE NO. 1:20-CV-00760-GBA |
| v. | PATENT CASE |
| GENETEC (USA) INC. and GENETEC INC., | JURY TRIAL DEMANDED |
| *Defendants*. | ████████████ |
| | PUBLIC VERSION |

**GENETEC'S BRIEF IN SUPPORT OF ITS**
**MOTION FOR EXCEPTIONAL CASE**

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael R. Ellis
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
njm@fr.com
conrad@fr.com
rbonilla@fr.com
ellis@fr.com

Jeremy D. Anderson (#4515)
FISH & RICHARDSON P.C.
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

*Counsel for Defendants*
*Genetec (USA) Inc. and Genetec Inc.*

██████████████████████████

# **TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF THE ARGUMENT .............................................................................. 1

III. STATEMENT OF FACTS .............................................................................................. 2

    A.   '652 Patent Prosecution ........................................................................................2

    B.   Litigation Conduct ................................................................................................3

IV.  LEGAL STANDARD .................................................................................................... 7

V.   ARGUMENT ................................................................................................................. 8

    A.   Genetec is the prevailing party. ...........................................................................8

    B.   The substantive weakness of Sensormatic's case for the validity of the '652
         Patent was exceptional no later than November 13, 2020. ...................................8

    C.   Sensormatic's ultimate basis for the validity of the '652 Patent was
         objectively without merit. ...................................................................................10

    D.   Sensormatic litigated the '652 Patent in an unreasonable manner. ......................13

        1.   Sensormatic did not try to discover facts disproving the on-sale bar
            after being put on notice. ........................................................................13

        2.   Sensormatic dragged its feet in defending validity, and took contrary
            positions to delay any resolution of Genetec's invalidity defense............14

        3.   Following an adverse claim construction ruling, Sensormatic shifted
            its theory of infringement........................................................................17

    E.   Sensormatic unreasonably increased the cost of litigating the '652 Patent in
         other ways. ..........................................................................................................18

    F.   Sensormatic also litigated the '954 Patent in an unreasonable manner. ...............18

VI.  CONCLUSION............................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blackbird Tech LLC v. Health In Motion LLC,*
  944 F.3d 910 (Fed. Cir. 2019)..........................................................................8

*Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.,*
  141 F.3d 1073 (Fed. Cir. 1998).................................................................11, 12

*In re Cygnus Telecoms. Tech., LLC,*
  536 F. 3d 1343 (Fed. Cir. 2008).....................................................................11

*Elizabeth v. Pavement Co.,*
  97 U.S. 126 (1877).........................................................................................12

*Howmedica Osteonics Corp. v. Zimmer, Inc.,*
  No. CV 05-897 (WHW)(CLW), 2018 WL 2378406 (D.N.J. May 23, 2018)........11

*Hughes v. Novi Am., Inc.,*
  724 F.2d 122 (Fed. Cir. 1984).......................................................................15

*IA Labs CA, LLC v. Nintendo Co.,*
  No. CIV. PJM 10-833, 2012 WL 1565296 (D. Md. May 1, 2012), *aff'd,* 515 F.
  App'x 892 (Fed. Cir. 2013)...............................................................................9

*MarcTec, LLC v. J&J,*
  664 F.3d 907 (Fed. Cir. 2012)........................................................13, 15, 16, 18

*Microstrategy Inc. v. Crystal Decisions, Inc.,*
  555 F. Supp. 2d 475 (D. Del. 2008)...............................................................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  572 U.S. 545 (2014)..............................................................................7, 8, 13

*Phigenix, Inc. v. Genentech, Inc.,*
  No. 15-CV-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018)..........18, 19

*Quad Environ. Tech. v. Union Sanitary Dist.,*
  946 F.2d 870 (Fed. Cir. 1991)...........................................................................9

*RCA Corp. v. Data Gen. Corp.,*
  887 F.2d 1056 (Fed. Cir. 1989).....................................................................12

*Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.,*
  No. C-04-4265 MMC, 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005) ...................15

*In re Rembrandt,*
    899 F.3d 1254 (Fed. Cir. 2018)..................................................................................16, 18

*SFA Sys. LLC v. Newegg Inc.,*
    793 F.3d 1344 (Fed. Cir. 2015)........................................................................................13

*Smith & Griggs Mfg. Co. v. Sprague,*
    123 U.S. 249 (1887)....................................................................................................12, 13

*ZT IP, LLC v. VMWare, Inc.,*
    No. 3:22-cv-00970, Dkt. No. 43 (N.D. Tex. Feb. 6, 2023)......................................8

**Statutes**

35 U.S.C. § 102(b) ...............................................................................................2, 5, 10, 11

Fed. R. Civ. P. 26(d)(1)...........................................................................................................4

Fed. R. Civ. P. 36(b) ............................................................................................................10

# I. NATURE AND STAGE OF THE PROCEEDINGS

Sensormatic Electronics, LLC ("Sensormatic") filed its complaint against Genetec (USA) Inc. and Genetec Inc. (collectively "Genetec") on June 5, 2020, alleging infringement of U.S. Patent Nos. 7,307,652 (the "'652 Patent") and 9,463,954 (the "'954 Patent"). (D.I. 1.) On May 26, 2022, Genetec filed a motion for summary judgment alleging invalidity of the '652 Patent due to the on-sale bar based upon the inventor's sale of the invention to Sensormatic. (D.I. 110.) This Court granted the motion on January 3, 2023. (D.I. 246.) To avoid trial, Sensormatic moved for dismissal on January 13, 2023 (D.I. 254) and concurrently granted Genetec a covenant not to sue on the '954 Patent. (D.I. 255.) This Court entered final judgment on February 8, 2023. (D.I. 263.)

# II. SUMMARY OF THE ARGUMENT

Genetec should be awarded fees because of the lack of objective merit of the case and the improper way it was litigated.

Since at least November 13, 2020, Genetec has doggedly pursued its contention that the '652 Patent was invalid due to the on-sale bar and sought information regarding Sensormatic's information and contentions regarding this issue. (*See* D.I. 110, Ex. 22.) Genetec raised the on-sale bar issue very early in discovery. The inventor, and then Sensormatic itself, repeatedly maintained the invention was reduced to practice before the critical date. Sensormatic ignored Federal Circuit and Supreme Court law expressly rejecting "experimental use" to avoid the on-sale bar in this scenario. Sensormatic refused to see what clearly stood before it: the obvious and essential fact that the inventor monetized the invention by selling it prior to the critical date.

The way in which Sensormatic litigated the '652 Patent was also exceptional. It deliberately delayed providing substantive information on its validity contention on this key issue—doing so only after Genetec sought court relief. And it maintained its position admitting reduction to practice prior to the critical date throughout fact and expert discovery. It reversed

course just days before dispositive motions were due, taking a contrary position to try to get to trial. Other conduct where it ignored the record and shifted its litigation positions, and took a "kitchen sink" approach, further demonstrates the unreasonable manner of litigation.

The assertion of the '954 Patent was also "exceptional." Although the Court never reached the ultimate merits on that patent, Sensormatic never intended to take this patent to trial. It granted a covenant not to sue after the '954 Patent became the only remaining patent, preventing Genetec from pursuing a declaration of non-infringement and invalidity. There was no reason for its assertion other than to tie Genetec up in litigation.

## III.    STATEMENT OF FACTS

### A.    '652 Patent Prosecution

The '652 Patent was filed on March 7, 2001, and claims priority to Provisional Application No. 60/188,171 filed on March 10, 2000. This sets its critical date for the on-sale-bar under 35 U.S.C. 102(b) as March 10, 1999.

During prosecution, the examiner issued a Final Rejection as anticipated by U.S. Patent No. 6,445,409 ("Ito"). Ito was filed July 28, 1999, after the critical date. (D.I. 157, Ex. K at SENSOR0000065–68.) In response, Sensormatic's prosecution counsel submitted a sworn declaration from the inventor, Mr. Broemmelsiek, testifying that he "conceived, and actually reduced to practice, the subject matter claimed in the above-identified patent application at least as early as August 7, 1998." (D.I. 111, Ex. 9.) Attached were several documents that Mr. Brommesiek attested "set forth the claimed invention." (*Id.*) These documents included a "Contract Engineering Agreement" and "Statement of Work for the Phase 1 Autonomous Tracker/Controller Project," both dated August 7, 1998, and a "Contract Engineering Agreement" and "Statement of Work for the Phase 2 Autonomous Tracker/Controller Project," both dated December 3, 1998 (collectively, the "Phase 1 and 2 Agreements"). (*Id.*) As set forth in Defendants'

summary judgment briefing, and this Court's order on summary judgment, these contracts constituted an invalidating sale of the invention under 102(b). (D.I. 246 at 4–10.)

The patent examiner advised that the rejection was not overcome, misconstruing the parties (D.I. 111, Ex. 27.) Sensormatic did not further act, and the application went abandoned. (D.I. 111, Ex. 27.) Six months later, it began work to revive the application. It did not file a petition to revive for almost another year, however—eighteen months after abandonment. (D.I. 157, Ex. K at SENSOR0000130.) Sensormatic never offered an explanation for the abandonment or the initial delay. Sensormatic's in-house counsel Frank Cona did, however, testify that ██████ ████████████████████████████████████████████████████████████████ ████. (D.I. 129, Ex. 10 [Cona Depo. Tr.] at 121:15-122:25, 154:16-157:23.) Despite this, Mr. Cona approved filing the petition to revive with the sworn statement that "The entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1,137(b) was unintentional." (D.I. 157, Ex. K at SENSOR0000130; Ex. 129, Ex. 10 at 170:4–171:15.) In the accompanying response, Sensormatic pointed out the examiner "in fact, has the parties backwards." (*Id.* at SENSOR0000128.) It further argued that "Documents submitted in support of the Declaration contain all of the claimed elements." (*Id.*)

The examiner subsequently dropped the rejection in view of Ito and instead asserted rejections in view of older prior art, U.S. Patent No. 6,263,088 issued to Crabtree, filed before the '652 Patent's critical date. (*Id.* at SENSOR0000151.) Sensormatic ultimately overcame the rejections in view of Crabtree and the '652 Patent issued on December 11, 2007.

## B.     Litigation Conduct

In response to the Complaint, Genetec filed counterclaims alleging that the abandonment of the application leading to the '652 Patent and its subsequent improper revival constituted inequitable conduct. (D.I. 8.)

Discovery opened no later than November 5, 2020. (D.I. 14; Fed. R. Civ. P. 26(d)(1).) Genetec immediately recognized the on-sale bar issue raised by Sensormatic's contracts with Mr. Brommelsiek and doggedly pursued it. Genetec propounded Interrogatory No. 1 on November 13, 2020, requesting that Sensormatic identify the '652 Patent's alleged conception and reduction to practice dates. (D.I. 111, Ex. 22 at 8.) Genetec also propounded Interrogatory No. 3, which asked Sensormatic to describe its contentions that the '652 Patent was not the subject of a commercial offer for sale in view of "Spin Lock [sic] Technology." (*Id.*) The discovery request defined this as the technology "described in the March 29, 2004 Declaration of Raymond Broemmelsiek submitted during the prosecution of U.S. Patent App. No. 09/081,484 leading to the '652 Patent." (*Id.* at 3.) Although Genetec asserted other grounds for the invalidity the '652 Patent, this was the only prior art on which it requested Sensormatic's specific contention during fact discovery.

In response, Sensormatic served vague or non-responsive answers. (D.I. 111, Ex. 23) It contended that "[t]he dates of conception and reduction to practice of the inventions claimed in the '652 Patent are at least as early as the March 10, 2000 filing date of the provisional application No. 60/188,171, from which the '652 Patent claims priority." (D.I. 110, Ex 23.) In response to Interrogatory No. 3, rather than provide any information, Sensormatic contended only that "Defendants—not Sensormatic—bear the burden of establishing any alleged commercial offer." (D.I. 110, Ex. 23.)

On April 1, 2021, Genetec served its Preliminary Invalidity Contentions which identified that the '652 Patent was anticipated in view of the on-sale bar related to Broemmelsiek's SakerTrax Automomous Object Tracker. (*See* D.I. 31; D.I. 151 at Ex. B (Defendants' A23 Preliminary Invalidity Contention Chart re the On-Sale Bar).) Genetec's claim chart was thorough. It identified its invalidity ground under 35 U.S.C. § 102(b)—that the making and the demonstrating for

Sensormatic of a prototype for remuneration prior to the critical date, in view of Brommelsiek's

admission of reduction to practice, was an invalidating commercial exploitation of the invention:

> For example, the Contract Engineering Agreement between Spin Logic and Sensormatic Video Products Division dated August 7, 1998 was a sale of the claimed invention more than one year prior to the earliest effective filing date of the '652 Patent. It stated that "subcontractor shall help design develop, integrate, test, document and demonstrate a technology demonstration based on the integration of proprietary Spin Logic Technology with the Sensormatic SpeedDome." The final demonstration of the Phase 1 system was agreed to "take place on or before November 2nd, 1998." Per this agreement, [Broemmelsiek] and/or Spin Logic were to receive [remuneration] for the services rendered.
>
> The Contract Engineering Agreement between Spin Logic and Sensormatic Video Products Division dated December 3, 1998 was also a sale of the claimed invention more than one year prior to the earliest effective filing date of the '652 Patent. That agreement also confirmed that there was in fact a technology demonstration as a result of the Phase 1 agreement August 7, 1998. ("An initial business agreement resulted in a Phase 1 technology demonstration.").
>
> …
>
> A 37 CFR 1.132 declaration such as Broemmelsiek's March 14, 2004 declaration can constitute admission of "ready for patenting." Affidavits or declarations submitted under 1.131 to swear behind a reference may constitute, among other things, an admission that an invention was "complete" more than 1 year before the filing of an application. *See In re Foster*, 343 F.2d 980, 987-88, 145 USPQ 166, 173 (CCPA 1965); *Dart Indus. v. E.I. duPont de Nemours & Co.*, 489 F.2d 1359, 1365, 179 USPQ 392, 396 (7th Cir. 1973). *Also see* MPEP § 715.10.

(D.I. 151, Ex. B at A23.5.)

Genetec did not rest and pushed Sensormatic to amend its non-answer to Interrogatory No.

3 to justify its basis for contending this was not an invalidating sale. Sensormatic refused, so

Genetec filed a Discovery Dispute Letter on August 4, 2021, pointing out that this deficiency was

a "delay tactic." (D.I. 51.) The Court set a discovery hearing for September 8, 2021. (D.I. 53.) A

few days before the hearing Sensormatic supplemented its response for Interrogatory No. 3. (D.I.

61.) Its only substantive response was that the documents were before the examiner during

prosecution, yet the Examiner did not issue any on-sale bar rejection, and pointing to a contract provision that "no Intellectual Property (IP)" was transferred. (D.I. 155, Ex. D at 2–4.)

Genetec continued to pursue this on-sale bar issue from all angles. On November 9, 2021, it propounded Interrogatory No. 21, requesting Sensormatic's contentions that the '652 Patent was entitled to an earlier priority date, and Requests for Admission Nos. 16, 17, 20, and 21 requesting that Sensormatic admit or deny that the '652 Patent claims were reduced to practice in August or December 1998. (D.I. 110, Exs. 24, 25.)

On November 12, 2021, Sensormatic served its first supplemental response to Interrogatory No. 1. It asserted that the "dates of conception and reduction to practice of the inventions claimed in the '652 Patent are at least as early as August 7, 1998." (D.I. 111, Ex. 3.) It identified two documents "in further answer to this interrogatory"— copies of the Broemmelsiek Declaration. (*Id.*) Sensormatic's 30(b)(6) designee confirmed its interrogatory responses, on the basis of this declaration. (D.I. 111, Ex. 5 at 15:4–24.).

On December 9, 2021, Genetec deposed Mr. Broemmelsiek, who confirmed the accuracy of his 2004 declaration to the USPTO. (D.I. 11, Ex. 7 at 130:5–16 ("Q. Is that true? . . . A. Yes, that's true. Absolutely. Yeah."); 134:13-20.) That same day, Sensormatic responded to Genetec's Interrogatory No. 21 and Request for Admission Nos. 16, 17, 20, and 21 admitting in each instance that the '652 Patent was reduced to practice in August or December 1998, once again citing Broemmelsiek's declaration. (D.I. 111, Exs. 5, 14.)

On May 13, 2022—almost two years after initiating the lawsuit, five months after the close of fact discovery, one week after the close of expert discovery, and just 13 days before the dispositive motion deadline—Sensormatic announced its intention to amend the RFA responses. (D.I. 111, Ex. 8.) Its basis was "further consideration of the record evidence and following expert

discovery." (*Id.*). Its expert opined that no '652 Patent claim was entitled to priority before the critical date. (D.I. 111, Ex. 11 at 192:6-10.) Contradictorily, Sensormatic did not seek to amend its interrogatory answers still alleging an August 1998 reduction to practice on the same topic. On May 23, 2022, Sensormatic filed a discovery motion requesting to amend its responses to Requests for Admissions Nos. 16, 17, 20, and 21 (but not its contradictory discovery responses). (D.I. 106.) In view of the uncertainty this now created, Genetec was forced to expend its limited page limits for briefing dispositive motions to demonstrate why summary judgment was warranted even without Sensormatic's RFA admissions.

On June 30, 2022, Magistrate Judge Burke denied Sensoramatic's discovery motion. Judge Burke noted that Sensormatic had, at all relevant times, "all of the information that it now relies on in seeking to amend those prior admissions." (June 30, 2022 Oral Order.) Judge Noreika overruled Sensormatic's objections. (D.I. 221.) This Court granted summary judgment of invalidity in view of the on-sale bar. (D.I. 246.)

## IV.    LEGAL STANDARD

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An exceptional case under § 285 is "simply one that stands out from other with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* "There is no precise rule or formula for determining whether a case stands out from others with respect to the substantive strength of a party's litigating position; instead, district courts may make this determination in the case-by-case exercise of their discretion, considering the totality of the

circumstances." *Blackbird Tech LLC v. Health In Motion LLC,* 944 F.3d 910, 915–16 (Fed. Cir. 2019) (quoting *Octane*, 572 U.S. at 554–55 (internal quotation marks and brackets omitted)).

The facts here implicate all of the "nonexclusive" factors relevant to § 285 suggested by the Supreme Court in *Octane Fitness*, including "meritlessness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n.6. Genetec need only demonstrate that this case is exceptional by a preponderance of the evidence, but the facts presented here exceed that standard. *Id.* at 557.

## V.   ARGUMENT

### A.   Genetec is the prevailing party.

There can be no dispute that Genetec prevailed in this litigation. The Court granted Genetec's motion for summary judgment of invalidity of the '652 Patent. Sensormatic subsequently moved to dismiss with prejudice its claims against Genetec with respect to the '954 Patent in view of its granting a covenant not to sue. (D.I. 254, 255.) The Court issued final judgment dismissing Sensormatic's claims for both patents with prejudice. (D.I. 263.)

### B.   The substantive weakness of Sensormatic's case for the validity of the '652 Patent was exceptional no later than November 13, 2020.

Sensormatic's case "stands out" because its '652 Patent validity contention was unreasonable on the facts available to it at the outset of the case. It "did not see what clearly stood before it: the obvious and essential fact that" the inventor monetized the invention prior to the critical date. *See ZT IP, LLC v. VMWare, Inc.*, No. 3:22-cv-00970, Dkt. No. 43 (N.D. Tex. Feb. 6, 2023), Ex. 1 at 4. The action never should have been filed. Sensormatic's pre-suit investigation should have shown it had no viable claim to the validity of its patent in view of the materials in the prosecution history. *See IA Labs CA, LLC v. Nintendo Co.*, No. CIV. PJM 10-833, 2012 WL

1565296, at *2 (D. Md. May 1, 2012), *aff'd,* 515 F. App'x 892 (Fed. Cir. 2013) ("It was sharply apparent that the Kilowatt had been publicly demonstrated at trade shows, disclosed in numerous publications, and offered for sale more than one year prior to the filing of the patent application.… Since [plaintiff] knew of these invalidating activities before it sued [defendant] for infringement, the Court can only conclude that it sued on the [asserted patent] in bad faith.").

Of course, Sensormatic may argue it relied upon the presumption of validity of a patent issued by the Patent Office to file suit. But the on-sale bar issue was not played out in prosecution. It was simply missed. Nothing in the prosecution history suggests that the examiner ever determined whether the contracts implicated the on-sale bar. That does not excuse Sensormatic's refusal to recognize the patent's invalidity on the facts available to it.

Still, any doubt that could be afforded to Sensormatic on this presumption was gone by the early days of fact discovery, no later than November 13, 2020, when Genetec identified the on-sale bar issue in Interrogatory No. 3. This was not an omnibus request—it was just the opposite, in fact. It was the first and only targeted prior art contention for the '652 Patent that Genetec requested during fact discovery. Genetec made the on-sale bar the central issue in its defense against the '652 Patent from the beginning of discovery. Sensormatic had no excuse to not conduct a reasonable investigation into the issue. Any assumption Sensormatic wanted to draw from the file history to file suit was irrelevant. *See Quad Environ. Tech. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991) ("The courts are the final arbiter of patent validity . . . without deference to the rulings of the patent examiner.")

It was immediately apparent that Sensormatic did not have a legitimate basis to contend there was no on-sale bar. Sensormatic initially refused to provide a substantive response to Interrogatory No. 3, forcing Defendants to move to compel. (D.I. 51.) When it did supplement its

contention with some substance, it relied exclusively on a single statement in the contracts that "no Intellectual Property (IP)" was transferred, even though that was not Genetec's contention. (D.I. 155, Ex. D at 2–4.) All the evidence Sensormatic needed was before it, yet Sensormatic proceeded "without any evidence to the contrary." *See Microstrategy Inc. v. Crystal Decisions, Inc.*, 555 F. Supp. 2d 475, 480 (D. Del. 2008) (awarding fees where "[e]ven in the face of clear and convincing evidence of anticipation under 35 U.S.C. § 102(b), [plaintiff] failed to reassess the merit of its claims under the [asserted patent], and instead, proceeded without any evidence to the contrary.")

### C. Sensormatic's ultimate basis for the validity of the '652 Patent was objectively without merit.

The arguments that Sensormatic ultimately presented against the on-sale bar during briefing on dispositive motions were objectively without merit. They assumed that there was no reduction to practice—contrary to what it repeatedly admitted and what the inventor repeatedly testified. It relied on a proposition expressly rejected by the Federal Circuit and the Supreme Court.

<u>First</u>, Sensormatic argued that elements were not reduced to practice prior to the critical date. (*Id.* at 30–33.) This was directly contrary to its admissions, which conclusively established the prior reduction to practice. Fed. R. Civ. P. 36(b). Even if the Court had permitted Sensormatic to withdraw those admissions, they did not alter the rest of the factual record. Sensormatic elsewhere admitted prior reduction to practice in multiple discovery requests that it did not withdraw or otherwise alter. (D.I. 246 at 3 n.4.) And this new position at summary judgment directly contradicted the inventor's declaration swearing to the prior reduction to practice (which he reaffirmed during his deposition. This was objectively meritless. *See In re Cygnus Telecoms. Tech., LLC*, 536 F. 3d 1343, 1354 (Fed. Cir. 2008) ("The lower courts ... have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment

simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity.")).

As the Court noted, "there is a significant amount of evidence in the record suggesting that the prior admissions [sought to be withdrawn] are instead accurate." (D.I. 246 at 3 n.4.) Sensormatic's contradictory positions demonstrates that it always knew what it refused to concede. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. CV 05-897 (WHW)(CLW), 2018 WL 2378406, at *11 (D.N.J. May 23, 2018) ("Plaintiff is correct that it was not required to accept the validity of [the] reference on its face, and it certainly would have been entitled to engage in expert testing of the thesis before agreeing to dismiss its claims.... However, by adopting a completely new and contradictory position, Plaintiff demonstrated that it knew what Defendant, the Federal Circuit, and the PTAB ultimately agreed upon: the … reference invalidated their patents.").

Second, Sensormatic argued that the contracts were not a "commercial offer for sale" because they fell within the "experimental use" exception to 35 U.S.C. 102(b). (D.I. 127 at 27–30.) It argued their primary purpose was "experimentation": "the non-commercial or pre-commercial purpose of developing and testing whether his inventions would work for their intended purposes and to test their features." (*Id.* at 27–30.) But the case law is well settled that "experimental use cannot occur after a reduction to practice," which its inventor admitted during prosecution to overcome the prior art. *Cygnus*, 536 F.3d at 1351; *see also Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998) ("The policy behind experimental use negation is to give the inventor an opportunity to reduce the invention to practice"); *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1061 (Fed. Cir. 1989) ("[E]xperimental use, which means perfecting or completing an invention to the point of determining that it will work for its intended purpose, ends with an actual reduction to practice."). As this Court noted,

"Mr. Broemmelsiek concedes that the claims of the '652 patent were reduced to practice as of August 7, 1998, *see supra* n.4, so experimental use cannot excuse Sensormatic from the on-sale bar's application." (D.I. 246 at 12.)

Sensormatic tried to avoid this settled Federal Circuit law by arguing in its summary briefing—for the first time in the case—that an exception for experimental use "properly applies even after reduction to practice." (D.I. 199 at 14–17.) It relied primarily on *Elizabeth v. Pavement Co.*, 97 U.S. 126 (1877), and *Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249 (1887). (D.I. 167 at 15-16; D.I. 199 at 14-15.) But, as this Court noted, "[t]he law has long recognized a distinction between experimental usage and commercial exploitation of an invention." (D.I. 246 at 11.) The Federal Circuit rejected Sensormatic's contention in *Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998).

Sensormatic also did not have an objectively reasonable basis to contend that the Federal Circuit's binding authority somehow misinterpreted Supreme Court jurisprudence. In the *Smith* case Sensormatic relies on, for example, the Supreme Court mused about the policy reasons for the experimental use exception and whether it applies to selling shoe buckles made by a patented machine. It reaffirmed that a "single sale" by the inventor of the patented machine itself would "certainly" have barred the patent, even his using the machine to make and sell the buckles it produces in order to perfect the machine might be a permitted experimental use:

> ***A single sale to another of such a machine as that shown to have been in use by the complainant more than two years prior to the date of his application would certainly have defeated his right to a patent***; and yet, during that period in which its use by another would have defeated its right, he himself used it, for the same purpose for which it would have been used by a purchaser. Why should the similar use by himself not be counted as strongly against his rights as the use by another to whom he had sold it, unless his use was substantially with the motive and for the purpose, by further experiment, of completing the successful operation of his invention?

*Smith*, 123 U.S. at 257 (emphasis added). Here, as this Court noted, "[o]n their face," the contracts showed the inventor's company "agreed to perform the claimed method and build the claimed apparatus in exchange for a series of payments." (D.I. 246 at 5.) The "the plain text of the Phase 1 and 2 Agreements contain the 'essential price, delivery, and payment terms' unambiguously evincing that, before the critical date of March 10, 1999, Mr. Broemmelsiek offered his claimed invention for sale to Sensormatic in exchange for money—a commercial offer for sale under the on-sale bar."" (*Id.* at 7.) On their face, these contracts already in Sensormatic's hands "certainly" presented a single offer for sale that barred the invention under Supreme Court jurisprudence.

**D.    Sensormatic litigated the '652 Patent in an unreasonable manner.**

Sensormatic's litigation conduct also renders this case "exceptional." A court "must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination." *SFA Sys. LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). Litigation misconduct "provides a separate and independent basis supporting" a court's determination that a case is exceptional. *Id.* at 1350 (quoting *MarcTec, LLC v. J&J*, 664 F.3d 907, 920–21 (Fed. Cir. 2012)). "[I]t is well-established that litigation misconduct and "unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *MarcTec*, 664 F.3d at 919 (quoting *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003)). This prong focuses on conduct that—"while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 572 U.S. at 555.

**1.    Sensormatic did not try to discover facts disproving the on-sale bar after being put on notice.**

The record demonstrates that Sensormatic willfully disregarded the basic facts in front of it about the on-sale bar. It apparently had no reason to believe that discovery would uncover contradictory facts, because it did not pursue any. For example, Sensoramatic did not try to

subpoena the inventor Ray Brommelsiek early in discovery, after learning of Genetec's on-sale bar contention in November 2020, to try to find a contradiction to the documentary record. Genetec was the first party to seek Mr. Brommelsiek's testimony—a year later—at the end of fact discovery. (D.I. 76.) Although Sensormatic did try to reach out to Mr. Broemmelsiek in the summer of 2021, it apparently was only an effort to try to engage him as part of its team. (D.I. 92 at Ex. 1 [Broemmelsiek Dep. Tr.] at 13:23–15:23.) Mr. Broemmelsiek refused its advances. (*Id.*) After that, Sensormatic apparently tried to avoid learning what he knew, until Genetec deposed him.

Outside of formal discovery, Sensormatic's internal investigation apparently turned up nothing to contradict the plain record on the face of the contracts that Mr. Broemmelsiek relied on in his declaration. It offered no parol evidence from its own records showing that the building and demonstration of prototypes in August or December 1998 were not commercial sales—even though it was a party to the transactions.

After almost two years of extensive litigation on this issue, any discovery only served to reaffirm the statement Mr. Broemmelsiek swore to during the patent's prosecution. At no point did Sensormatic have reason to believe that there would be any issues of fact that could have changed the nature of the contracts. Sensormatic admitted in its response to Genetec's Motion for Summary Judgment that "more than twenty years after the fact, Sensormatic does not have special knowledge of whether or when the inventions claimed in the '652 Patent were actually reduced to practice." (D.I. 167 at 3). Sensormatic just put its head in the sand and acted as if Mr. Broemmelsiek's declaration and the contracts attached to it did not say what they said.

**2.      Sensormatic dragged its feet in defending validity, and took contrary positions to delay any resolution of Genetec's invalidity defense.**

As discussed above, Sensormatic initially refused to address Genetec's invalidity contention, providing only a non-response. When it provided more information after Genetec sought Court intervention, it did not confront Genetec's explicit contention that the contracts were an offer to build and use the claimed invention. Then, when it finally had to defend itself to this Court, it tried to reverse its prior admissions about reduction to practice. And it argued a meritless theory—experimental use—never before disclosed. *See Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 WL 3634617, at *6 (N.D. Cal. Nov. 21, 2005) ("[Plaintiff's] failure to comply with its discovery obligations and its prolongation of discovery on a crucial issue in the case further supports a finding that the instant action presents an 'exceptional case.'"); *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 124–25 (Fed. Cir. 1984) (affirming award of attorneys' fees where "plaintiffs denied their own prior public use and sale of the patented brackets in their answers to interrogatories posed by the defendant prior to trial . . . [and] persisted in the maintenance of the present litigation even though plaintiffs had knowledge of the invalidating prior use and sale….").

Sensormatic also "introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto." *MarcTec*, 664 F.3d at 919–20. Sensormatic's expert opined that ***no*** claim was reduced to practice in complete contradiction to the Brommelsiek Declaration. (D.I 110 at 6–7 (citing D.I. 111, Ex. 10 at ¶ 286.) This was based on no new evidence raised during discovery and contradicted Sensormatic's own revised RFA responses, which still conceded that claims 13, 16, and 25 were reduced to practice as of August or December 1998. (*Id.*) This expert report was a self-serving attempt to avoid the inevitable. It prevented Genetec from building a clearer factual case in expert depositions and forced Genetec to incur additional costs in expert discovery and preparing

dispositive motions. (June 30, 2022 Oral Order ("[I]t is easy to see how [Genetec] would have relied on those prior admissions in planning their path through expert discovery and in preparing for summary judgment and trial").) Sensormatic accordingly "persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused [Genetec] to incur needless litigation expenses." *MarcTec*, 664 F.3d at 920–21. "This vexatious conduct is, by definition, litigation misconduct, and provides a separate and independent basis supporting the … determination that this case is exceptional." *Id.*

Sensormatic's numerous litigation admissions that reduction to practice was complete as of August 7, 1998, as stated in Mr. Broemmelsiek's declaration—only to reverse course once it was absolutely necessary—made sense when one considers that Genetec was concurrently asserting a counterclaim for inequitable conduct. (D.I. 8, Count III.) This counterclaim contended that Sensormatic deliberately abandoned prosecution when it failed to overcome a final rejection even after submitting Mr. Broemmelsiek's declaration to swear behind prior art. (*Id.*) It also alleged that Sensormatic's attempt to revive prosecution—eighteen months later—raised questions about its candor to the patent office about any "unintentional" delay. (*Id.*) We don't know all the reasons for the abandonment and delay because Sensormatic fought to keep the evidence withheld as privileged. But if Sensormatic readily admitted that it **also** had presented a false inventor declaration to the USPTO, it would risk demonstrating that the circumstantial evidence warranted an inference that it deliberately deceived the USPTO in reviving the petition. *See In re Rembrandt*, 899 F.3d 1254, 1275 (Fed. Cir. 2018) (giving deference to a finding of deliberate deception in a petition to revive because "the same people who deceived the PTO were involved in a variety of other misconduct."). Sensormatic tried to have it both ways at every stage of the case, shifting its

positions whenever expedient, even when "there [was] a significant amount of evidence in the record suggesting that the prior [positions] are instead accurate." (D.I. 254 at 3 n.4.)

### 3. Following an adverse claim construction ruling, Sensormatic shifted its theory of infringement.

Sensormatic's validity contentions was not its only shifting litigation position. It also tried to circumvent non-infringement by shifting its theory in response to an adverse claim construction ruling. Sensormatic lost an argument at the Markman hearing when the Court determined that patent applicant disclaimed detection outside the "monitoring area" indicated by the user:

> Here, I agree with Defendants.… A person of skill viewing the amendments alongside the Applicant's remarks would understand that the invention claimed in … involved "detecting moving objects *only within the selected monitoring area" previously indicated by the user.*

(D.I. 68 at 8 (emphasis added).) The discussion during the hearing shows that the Court rejected the idea of detection within a "buffer zone" outside this selected area. (D.I. 110 at 14–15 (quoting D.I. 60 at 44:10–45:2, 49:20-51:13, and 50:22–51:2.)

Sensormatic's problem was that its theory in its Initial and Final Infringement Contentions identified the monitoring area as a user-selected "alarm region," but Genetec's product detects outside this region. (*See, e.g.*, D.I. 195 at 6–12.) Sensormatic never amended its contentions. Instead, it contineued to press its "alarm region" theory even though it required a "buffer zone" outside of this "alarm region." In his deposition, Sensormatic's expert conceded that his infringement analysis relied upon analyzing information "in blocks … along the periphery of the alarm region that contain pixels both in the alarm region and outside." (D.I. 110. at 13 (citing D.I. 111, Ex. 11 at 94:3-25.). Accordingly, Genetec moved for summary judgment of non-infringement, showing how Sensormatic's infringement theory relied on the "buffer zone" concept Judge Noreika explicitly rejected. (*Id.* at 12–15.)

To avoid summary judgment, Sensormatic abruptly changed its infringement theory for what mapped to the "monitoring area." In responsive brief it alleged—for the first time—that "alarm region *blocks themselves* are a selected monitoring area," not the user-selected "alarm region" it previously disclosed. (*Id.* (emphasis added).) This shifting sands approach to litigation makes the case exceptional:

> Despite the fact that it 'transformed the nature of [its] infringement theory," [plaintiff] chose not to amend its infringement contentions or notify Genentech of the change in theory. Instead, the new theory was divulged only by responses to questions posed by Genentech's counsel during a deposition, after the close of fact discovery. [Plaintiff] provides no good reason why it failed to disclose the new theory earlier. Those circumstances evince that [plaintiff] unreasonably manipulated its theories to postpone defeat. Such gamesmanship supports the conclusion that [defendant] is entitled to some portion of its attorneys' fees. . . . [plaintiff's] maneuver is particularly egregious as it is apparent that the late disclosed new theory was proffered to avoid anticipation of the [asserted patent] which [plaintiff] was repeatedly warned about throughout the litigation.

*Phigenix, Inc. v. Genentech, Inc.*, No. 15-CV-01238-BLF, 2018 WL 3845998, at *7 (N.D. Cal. Aug. 13, 2018); *see also MarcTec*, 664 F.3d at 920–21.

### E.    Sensormatic unreasonably increased the cost of litigating the '652 Patent in other ways.

In addition to its shifting validity and infringement theories, Sensormatic repeatedly refused to narrow its case to a reasonable number of claims, maintaining any assertion of at least 24 of 28 claims until Genetec ultimately sought the Court's assistance. (D.I. 243, 244 (citing requests to narrow at D.I. 111-1; 115-17.).) It also filed a "kitchen sink" motion for summary judgement of no anticipation on all of Genetec's prior art references. (D.I. 156 at 13–14.)

### F.    Sensormatic also litigated the '954 Patent in an unreasonable manner.

This case also stands out from others because of Sensormatic's addition of a completely unrelated patent and unrelated accused product—Sensormatic's '954 Patent and the alleged

infringement by Genetec's elevator access control products. This claim, and Sensormatic's conduct litigating it, only served to multiply the cost of the proceedings for no material gain.

Just like its litigation of the '652 Patent, Sensormatic repeatedly refused to narrow its case to a reasonable number of claims. (D.I. 243.) And just like its litigation of the '652 Patent, Sensormatic took contradictory claim construction positions and introduced new infringement theories to keep the '954 Patent alive as long as possible. It took a meritless position that "providing" a landing matrix "data structure" to an elevator controller does not, in fact, require "sending" that landing matrix "data structure" to the elevator controller (D.I. 114 at 3–4.) Genetec insisted during the Markman hearing that there would be a latent claim construction dispute on this limitation, but Sensormatic argued it did not see the point in construing the term. (*Id.* at 5 (citing D.I. 60 at 9:6–10:1, 11:4–12:4.) Genetec was prescient. Sensormatic's expert introduced a new infringement theory regarding the "providing" limitation. (D.I. 114 at 4–7; D.I. 195 at 12–14.) And in its draft pretrial order, Sensormatic contended that there was now—contrary to its efforts to dissuade Judge Noreika from construing the phrase—a claim construction dispute concerning this limitation. (Ex. 2 at 6.)

Unfortunately, the Court never reached the ultimate merits on the '954 Patent. The reason is because Sensormatic never had any intention of letting that happen. It contradicted its arguments at claim construction and shifted infringement theories to avoid summary judgment. (D.I. 114 at 4–7.) And as soon as the '954 Patent became the only remaining patent in the case, Sensormatic granted a covenant-not-to-sue and sought dismissal, pursuant to *SuperSack*, to prevent Genetec from forcing Sensormatic to try the patent. (D.I. 254, 255.)

It was apparent to Sensormatic from the outset that the '954 Patent would have never had any significant value commensurate with the scope of its lawsuit against a competitor. For both

parties, the patent was directed to a minor add-on product—a "plug-in." Consequently, Genetec never tracked any profitibillity for its accused product. (*See, e.g.*, D.I. 117, Ex. 1 at ¶ 170.) And Sensormatic knew its own practicing product ██████████████. (*See, e.g.*, D.I. 117-1 at ¶ 54 (indentifying ████████).) No party contended that the products had any great significance to their business. For example, Sensormatic's expert did not assume the plug-in sales drove revenue for anything other than their technical support contracts. (*See, e.g.*, D.I. 117, Ex. 1 at ¶ 96.) Sensormatic's 30(b)(6) witness could not ███████████████████████ (Ex. 3, Ouellette Depo. Tr. 259:24–261:10.) Ultimately, Sensormatic's expert concluded that there was only $5800 in damages for the '954 Patent. (D.I. 117, Ex. 1 at ¶ 12.) And Sensormatic never pursued an injunction, even though its Complaint reqested one. (D.I. 1 at Prayer for Relief.)

Sensormatic has never explained why it asserted the '954 Patent in the first place if it did not intend to reach a resolution on the merits. ████████████████████████████ ████████████████████████████████████████ ████████████████████████ (Ex. 3, Ouellette Depo. Tr. 259:24–261:10.) Perhaps Sensormatic wanted to assert the '954 Patent in retaliation to losing out on major sales opportunities. Perhaps it wanted to injure Genetec's image in the marketplace. Perhaps, lacking a business case to bring a lawsuit on the '954 Patent, it included an entirely unrelated patent— the '652 Patent—that it should have known lacked objective merit. Perhaps Sensormatic simply added the '954 Patent with no intention of trying it just to multiply the cost of litigation to Genetec. Any of these reasons would have been be improper.

## VI. CONCLUSION

For the foregoing reasons, Genetec respectfully request that the Court declare this an exceptional case under 35 U.S.C. § 285 and find Genetec is entitled to an award of its attorneys' fees of $3,290,654.50 including pre-judgment and post-judgment interest. (Ex. 4, Conrad Decl.)

Dated: February 22, 2023

Respectfully submitted,

**FISH & RICHARDSON P.C.**

/s/ Jeremy D. Anderson
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael R. Ellis
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
njm@fr.com
conrad@fr.com
rbonilla@fr.com
ellis@fr.com

*Counsel for Defendants*
*Genetec (USA) Inc. and Genetec Inc.*