IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSORMATIC ELECTRONICS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> GENETEC (USA) INC. et al, <br><br> Defendants. | Civil Action No. 20-760-GBW <br><br> **UNSEALED ON 6/7/24** |

## MEMORANDUM ORDER

Plaintiff Sensormatic Electronics, LLC ("Plaintiff" or "Sensormatic") filed the above-captioned action against Defendants Genetec (USA) Inc. et al ("Defendants" or "Genetec") on June 5, 2020 for patent infringement of U.S. Patent No. 7,307,652, (the "'652 Patent") and U.S. Patent No. 9,463,954 (the "'954 Patent"). The Court granted final judgment and dismissed Plaintiff's claims with prejudice on February 8, 2023. D.I. 263. Presently pending before the Court is Defendants' Motion for Attorneys' Fees. D.I. 265. The Court, having viewed the Motion and all related briefing, (D.I. 266, D.I. 268, D.I. 269, D.I. 270, D.I. 273, D.I. 274), **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Motion for Attorneys' Fees. Defendants are entitled to recover attorneys' fees related to their defense of the '652 Patent infringement claim from **December 10, 2021** through **January 03, 2023**. Defendants' Motion is otherwise DENIED.

## I. LEGAL STANDARD[1]

Section 285 of Title 35 provides that "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has defined an "exceptional" case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Whether a case is exceptional is left to the discretion of the district court, which should make a case-by-case determination based on the totality of the circumstances. *Id.* One of the factors to consider in deciding whether a case is exceptional is "objective unreasonableness (both in the factual and legal components of the case)." *Id.* at 554 n.6.

A party moving for attorneys' fees must demonstrate, by a preponderance of the evidence, that the case is "exceptional." *Id.* at 556. Typically, exceptional cases will involve "litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002).

## II. DISCUSSION

### a. Prevailing Party

This Court granted partial summary judgment and dismissed Sensormatic's allegations against Genetec for infringement of the '652 Patent (hereinafter, the "'652 Patent Claim") on January 3, 2023. D.I. 247. Shortly thereafter, Sensormatic moved to dismiss the only remaining dispute—Sensormatic's allegations against Genetec for infringement of the '952 Patent,

---

[1] The Court writes for the benefit of the parties who are already familiar with the pertinent background facts.

(hereinafter, the "'952 Patent Claim"). The Court subsequently granted dismissal of both claims with prejudice. D.I. 263. Thus, Genetec is the prevailing party. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed.Cir.2006) (noting that "as a matter of patent law," dismissal of claims with prejudice when granted by a district court "has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that [a] district court properly [can] entertain [a] fee claim under 35 U.S.C. § 285").

### b. Exceptional Claims

For the following reasons, the Court finds that the '652 Patent Claim lacked substantive merit and, thus, became exceptional after Broemmelsiek's deposition on December 9, 2021. Genetec, therefore, is entitled to recover attorneys' fees and other costs incurred in defense of the '652 Patent Claim after December 9, 2021. Because the Court finds that the litigation of the '952 Patent Claim was not exceptional, Genetec is not entitled to recover fees incurred in defense of the '952 Patent Claim.

### i. The '652 Patent Claim

*1. The '652 Patent Claim was not exceptional when it was filed.*

Genetec contends that the "'652 Patent's validity contention was unreasonable on the facts available to [Sensormatic] at the outset of the case." D.I. 266 at 8. Thus, Genetec argues that, like plaintiff in *IA Labs CA, LLC v. Nintendo Co.*, Sensormatic's pre-filing investigation of the '652 Patent's prosecution history "should have shown [Sensormatic] [that] it had no viable claim to the validity of its patent," and Sensormatic's decision to file the '652 Patent Claim despite the prosecution history entitles Genetec to recover all attorneys' fees and expenses incurred in defending the '652 Patent Claim. *Id.* (citing *IA Labs CA, LLC v. Nintendo Co.*, No.

3

CIV. PJM 10-833, 2012 WL1565296, at *2 (D. Md. May 1, 2012), *aff'd*, 515 F. App'x 892 (Fed. Cir. 2013)).

The Court disagrees and finds this case is distinguishable from *IA Labs* in at least one material respect. The court in *IA Labs* found that "[t]he evidence in the record demonstrates that [plaintiff] was intimately familiar with the many instances where Interaction Laboratories, Inc. publicly demonstrated the [patented invention]." 2012 WL1565296, at *2. In fact, plaintiff's CTO was the co-founder and former CLO and president of Interaction Laboratories, Inc. and "was *personally involved* in the on-sale bar activities." *Id.* (emphasis added). Thus, the case was exceptional because "[i]t was sharply apparent [to plaintiff] that the [patented invention] had been publicly demonstrated at trade shows, disclosed in numerous publications, and offered for sale more than one year prior to the filing of the patent application." *Id.* In the instant action, Genetec has not shown that Sensormatic engaged in the alleged on-sale activity or assisted the patent's inventor, Ray Broemmelsiek, in doing so. In fact, while Sensormatic was a party to the 1998 Agreements, Broemmelsiek explained during his deposition that he reduced the claimed invention to practice several months before initiating any discussions with Sensormatic in 1998. Broemmelsiek Tr. at 130:5-131:7.

Also, Sensormatic has presented some evidence that "Broemmelsiek was not cooperative" with Sensormatic's requests for more information "[b]y at least May 3, 2021." D.I. 268 at 13. While Sensormatic's requests to meet with Broemmelsiek in May 2021 came several months after Sensormatic filed the '652 Patent Claim in June 2020, from the limited evidentiary record before the Court, it is unclear whether Broemmelsiek would have cooperated with any pre-suit investigation conducted by Sensormatic, his prior employer, before the '652 Patent

4

Claim was filed.[2] Thus, the Court cannot find that Sensormatic deliberately evaded Broemmelsiek before filing its claim to avoid discovering the actual date the '652 Patent was reduced to practice.

Further, while the Court agrees with Genetec that the Broemmelsiek Declaration and the 1998 Agreements should have alerted Sensormatic to the potential of an on-sale issue, D.I. 266 at 9, the prosecution history alone would not reveal that Sensormatic had no viable claim for asserting the '652 Patent. As Sensormatic notes, the Broemmelsiek Declaration and the 1998 Agreements were presented to USPTO examiners during prosecution of the patent application in 2004 and again in 2007, and "two separate patent examiners failed to raise any on-sale bar rejection." D.I. 268 at 7-8. In fact, in 2004, the first examiner issued a notice of denial in which the examiner noted that the applicant failed to overcome a prior art source because "[t]he statement of work d[id] not show a reduction to practice." D.I. 185-3 at 120-123. Genetec highlights that the examiner's commentary referred only to the patent application's statement of work and thus did not "suggest[] that the examiner ever determined whether the contracts implicated the on-sale bar." D.I. 266 at 9. While the Court agrees, the Court also finds that the notice of denial fails to reveal whether, and to what extent, the examiner reviewed the other prosecution materials.

Thus, while it would be reasonable for a party to assume from the prosecution history, as Genetec argues, that the examiner "simply missed" the 1998 Agreements, it would also be reasonable for a party to assume that the examiner reviewed the Broemmelsiek Declaration and 1998 Agreements but found that those documents were insufficient evidence of reduction to

---

[2] While Genetec claims that Sensormatic reached out to Broemmelsiek "only [in] an effort to try to engage him as part of its team," Genetec cites testimony from Broemmelsiek's deposition that has not been shared with the Court. *See* D.I. 266 at 9 (citing Broemmelsiek Dep. 13:23-15:23).

practice. Indeed, the 1998 Agreements were presented to the examiner to support claims in the Broemmelsiek Declaration that the invention *was* reduced to practice. *See* D.I. 185-3 at 87-88. Given the examiner found there was a lack of evidence of reduction to practice, it was reasonable for Sensormatic to assume that the examiner reached this outcome with the 1998 Agreements and the Broemmelsiek Declaration in mind. *See id.* at 107-108.

Also, while the Broemmelsiek Declaration explicitly states that Broemmelsiek "conceived, and actually reduced to practice, the subject matter claimed in the above-identified patent application at least as early as August 7, 1998," this statement was obscured by the applicant's response to the examiner's rejection, which clarified that "conception and due diligence to filing of the application," rather than reduction to practice, "is [what is] evidenced by the contracts and agreements attached to and supporting the [Broemmelsiek Declaration]." *See id.* at 85-104, 128. Moreover, given that a second examiner later reviewed the same prosecution history materials and, like the first, failed to issue an on-sale rejection, the Court finds that a review of the prosecution history alone would not have made the issue of the on-sale bar so obvious as to make Sensormatic's reliance on the '652 Patent's presumption of validity "exceptional." *See id.* at 149-50.

                                     2. *Plaintiff's claim of infringement of the '652 Patent was not exceptional as of November 13, 2020.*

Genetec claims that "any doubt that could be afforded to Sensormatic on this presumption was gone by the early days of fact discovery, no later than November 13, 2020, when Genetec identified the on-sale bar issue in [Interrogatory] No. 3." Again, the Court disagrees.

6

By squarely identifying the 1998 Agreements in Interrogatory No. 3, the Court agrees that Genetec "made the on-sale bar [a] central issue" in their defense, and Interrogatory No. 3, in turn, should have alerted Sensormatic that the validity of the '652 Patent would be in dispute. D.I. 266 at 9. However, Interrogatory No. 3 did little to clarify whether the invention had been reduced to practice. In addition, Interrogatory No. 3 asked Sensormatic to describe its contentions that the '652 Patent was not the subject of a commercial offer for sale in view of the "Spin Lock [sic] Technology." While Genetec contends that Interrogatory No. 3 should have led Sensormatic to re-investigate the potential of an on-sale bar, Interrogatory No. 3 "sought the basis for Sensormatic's defense to Genetec's invalidity theory under 35 U.S.C. § 102(b) before Genetec—the party with the burden of proof—even set forth that theory." D.I. 268 at 4. Because the burden to prove invalidity pursuant to the on-sale bar belonged to Genetec alone, Sensormatic did not act exceptionally when it objected to Interrogatory No. 3 as untimely.

Further, while Genetec argues that Sensormatic acted exceptionally by continuing to provide elusive and unresponsive answers to Interrogatory No. 3 and other similar discovery requests, the Court disagrees that Sensormatic's responses to Genetec's discovery requests serve as evidence that "Sensormatic did not have a legitimate basis to contend there was no on-sale bar." *See* D.I. 266 at 9-10. In fact, as the Court noted above, the prosecution history was vague on the issue of reduction to practice and included evidence that could support either party's claims. For example, Genetec had grounds to argue that the applicability of the on-sale bar was unequivocal in light of the statement in the Broemmelsiek Declaration that the invention was reduced to practice and the clear commercial nature and terms of the 1998 Agreements. On the other hand, Sensormatic could counter this claim by highlighting the examiner's notice of denial, which found no reduction, and the applicant's response, which called into question the

Broemmelsiek Declaration, as evidence that the claimed invention had not been reduced to practice by or before August 1998.

Under the circumstances as of November 13, 2020, the Court cannot find that "[a]ll the evidence Sensormatic needed was before it" or that "Sensormatic proceeded 'without any evidence'" that the invention was not reduced to practice before its critical date. D.I. 266 at 9-10.

> 3. *This case became exceptional when Plaintiff continued to assert the '652 Patent Claim after Broemmelsiek's deposition on December 9, 2021.*

During Broemmelsiek's deposition on December 9, 2021, the parties were presented with the additional evidence and background necessary to estimate the claimed invention's date of reduction. On December 9, 2021, Broemmelsiek unequivocally testified that the subject matter covered by the '652 Patent had been reduced to practice well before the patent's priority date. Broemmelsiek Tr. at 130:5-16. In fact, Broemmelsiek confirmed that his statements in the Broemmelsiek Declaration were "still true" and were intended to mean "that [he] conceived and reduced to practice the subject matter claimed in the . . . '652 patent application, at least as early as August 7, 1998." *Id.* at 134:13-20. Broemmelsiek also recalled that he filed the '652 patent application "late, [or] later than [he] probably should have." *Id.* at 136:1-3. From these comments alone, it was or should have become clear to Sensormatic that it could no longer rely on the patent's presumption of validity or the ambiguity of the prosecution record.

Sensormatic contends, however, that it still had grounds to challenge the on-sale bar given that "[t]he 2007 amendments [] narrowed most claims relative to the claims that were pending in 2004 and addressed by Broemmelsiek's declaration" and added new claims to the patent application. D.I. 268 at 10. According to Sensormatic, Broemmelsiek "never testified that the claims as issued (including the new and amended claims) were each [reduced to practice]

8

in 1998." *Id.* Thus, Sensormatic argues that it still had reason to believe that the issued claims, as amended, were not reduced to practice. *Id.* While the Court recognizes that the patent application was amended several years after Broemmelsiek filed his declaration with the USPTO in 2004, the Court agrees with Genetec that the 2007 amendments were immaterial and did not change the overall invention disclosed by the '652 Patent. *See* D.I. 270 at 4-5. For example, while a limitation for "selected monitoring area" was added to claim 1, this amendment "was merely an incorporation of then dependent claim 2 . . . into independent claim 1." *Id.*

Also, Sensormatic is wrong that Broemmelsiek "never testified" that the amended claims were reduced to practice. *See* D.I. 268 at 10. During his deposition, Broemmelsiek reviewed each limitation of claim 1 of the '652 Patent, as amended and issued, and confirmed that every limitation of the claim, including those limitations that did not appear in the claim in 2004, had also been reduced to practice prior to the '652 Patent's critical date. Broemmelsiek Tr. at 181:3-185:16. Sensormatic also understood that Broemmelsiek's testimony applied to the claims as amended. Indeed, on the same day as Broemmelsiek's deposition, Sensormatic responded to Genetec's discovery requests with admissions that the '652 Patent was reduced to practice by August or December 1998. D.I. 111, Exs. 5, 14.

### 4. *Sensormatic's commercial sale and experimental use challenges to the on-sale bar were meritless.*

In support of its motion for summary judgment, Sensormatic raised two challenges to the on-sale bar: (1) the on-sale bar was inapplicable because the 1998 Agreements did not involve a commercial sale; and (2) the on-sale bar did not apply because the 1998 Agreements were executed for experimental purposes. *See generally* D.I. 127 at 27-32. The Court, however, granted summary judgment in favor of Genetec and, in doing so, found that both challenges to

9

the on-sale bar failed under the weight of the factual evidence and governing law. D.I. 246 at 2-13.

For instance, the Court found that Sensormatic's claims that the 1998 Agreements' purposes were to develop technology were irreconcilable with Broemmelsiek's deposition testimony, which revealed that the claimed invention had already been reduced to practice by the time the 1998 Agreements were signed on August 7, 1998 and December 3, 1998. Broemmelsiek Tr. at 130:5-16. Broemmelsiek also revealed that he used a demonstrative of the claimed invention as "proof of concept" during his initial meetings with Sensormatic in 1998. *Id.* Broemmelsiek explained that the demonstrative, which he called the "VHS demo," was built "as late as . . . December '97." *Id.* at 130:22-131:7; 135:16-18. While Broemmelsiek admitted that the VHS demo lacked the user-selection feature disclosed in the '652 Patent, Broemmelsiek noted that every other limitation was met by the VHS demo and, by the time Broemmelsiek contacted Sensormatic, Broemmelsiek had already reduced to practice the process for allowing user-selectable input in at least one other invention. *Id.* at 137:16-138:14. Thus, there would have been little reason for Broemmelsiek to enter a "joint effort" with Sensormatic "to develop" the claimed invention.

Broemmelsiek's testimony also reveals that Broemmelsiek negotiated the 1998 Agreements with Sensormatic as part of a commercial sale of the invention. Broemmelsiek recalled sending Sensormatic a letter in which he introduced the invention and explained that he created a "tracking technology" that "can [be] incorporated into your camera to steer your technology." *Id.* at 53:23-54:20. Also, by executing the 1998 Agreements, Broemmelsiek explained that he was agreeing "to build a system" for Sensormatic. *Id.* at 179:7-19. This testimony was consistent with the terms of the 1998 Agreements, which indicated that

Broemmelsiek and Spin Logic would build the claimed apparatus and would be "responsible for providing all of the required hardware elements of the technology demo, except for the SpeedDome, UltraDome and dome power adapters." D.I. 111-9, Ex. 9 at 12 § 5.0. Federal Circuit precedent has long held that such an offer by a patentee "to perform the steps of the patented methods for customers in exchange for payment" is commercial and thus "triggers the on-sale bar." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1374 (Fed. Cir. 2016); *see also Plumtree Software, Inc. v. Datamize*, LLC, 473 F.3d 1152, 1163 (Fed. Cir. 2006); *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328-29 (Fed. Cir. 2001) ("[W]e think the fact that the process itself was not offered for sale but only offered to be used by the patentee to process waste does not take it outside the on sale bar rule."). Thus, Broemmelsiek's testimony should have made it clear to Sensormatic that the 1998 Agreements involved a commercial sale of the claimed invention.

Similarly, in dismissing Sensormatic's claim that the 1998 Agreements "concerned pre-commercial development activity undertaken primarily for purpose of experimentation," D.I. 127 at 27, the Court once more relied on Broemmelsiek's sworn testimony that he reduced the claimed invention to practice before the 1998 Agreements with Sensormatic were finalized. D.I. 246 at 9. As the Court noted, binding precedent is clear that an "experimental use cannot occur after a reduction to practice." *Id.* at 11. Attempts by Sensormatic to challenge this established legal rule by relying on "public use" authority were wholly unavailing, given the Federal Circuit's clear instruction that experimentation under the Supreme Court's "public use" is distinguishable from experimentation under the Court's "on-sale" authority. *Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998) ("'Public use' and 'on-sale' bars, while they share the same statutory basis, are grounded on

11

different policy emphases. The primary policy underlying the 'public use' bar is that of detrimental public reliance, whereas the primary policy underlying an 'on-sale' bar is that of prohibiting the commercial exploitation of the design beyond the statutorily prescribed time period."). Thus, Sensormatic could not support its experimental sale argument under the facts of the case, and Sensormatic acted unreasonably by challenging settled and binding legal authority on the meaning and scope of experimentation under the on-sale bar.

Given that Sensormatic's challenges to the on-sale bar were unsupported by facts and inconsistent with settled law, the Court finds that Sensormatic's continued efforts to litigate a substantively meritless infringement claim were unreasonable. That is, following Broemmelsiek's deposition, Sensormatic should have known that it could not challenge the on-sale bar, and the Court finds that this case became exceptional on December 9, 2021, after Sensormatic continued to assert the '652 Patent notwithstanding Broemmelsiek's testimony.

> 5. *Sensormatic acted in an unreasonable manner by moving to amend its RFA responses.*

The fact that Sensormatic attempted to amend its RFA responses five months after Broemmelsiek's deposition further evidences that Sensormatic's conduct became exceptional. *See* D.I. 111, Exs. 5, 14. Prior to its attempt to amend, Sensormatic had already conceded through RFA responses that the '652 Patent's claimed invention was reduced to practice in July or August 1998. D.I. 111, Exs. 5, 14. When Sensormatic's expert, Dr. Alan Bovik, filed a rebuttal report on March 29, 2022 that undermined Sensormatic's RFA responses by claiming that the '652 Patent claims were not entitled to a priority date before August 1998,[3] Sensormatic did not immediately move to amend the responses. Instead, Sensormatic waited over three months and, "just [thirteen] days before the dispositive motion deadline," to seek permission

---

[3] *See* D.I. 128, Ex. B at 49-50.

from Genetec and the Court to amend and align their RFA responses with Dr. Bovik's rebuttal opinions. D.I. 266 at 6; D.I. 111, Exs. 5, 14.

Sensormatic contends that it waited three months to amend the RFA responses because the parties were actively engaging in expert discovery from January to May 2022. *See* D.I. 268 at 5. The Court does not find this explanation credible given the inconsistencies between Dr. Bovik's rebuttal report served in March 2023 and the RFA responses. In fact, as Magistrate Judge Burke noted, Sensormatic "had all of the information that it now relies on in seeking to amend [its] prior admissions" when it made the admissions on December 9, 2021. D.I. 177. Thus, the Court sees no reasonable explanation for Sensormatic's delay in moving to amend their admissions.

Because Sensormatic made the request to amend just days before the dispositive motion deadline, the Court agrees with Genetec that the request was likely made as a final attempt to avoid the inevitable: dismissal at summary judgment. D.I. 266 at 15. While Genetec ultimately prevailed on their motion for summary judgment, the Court does not doubt that Sensormatic's attempt to amend the RFA responses just thirteen days before the dispositive motion deadline caused Genetec to incur additional cost and expend their limited time and "limited page limits for briefing dispositive motions" to argue against Sensormatic's untimely request to amend its responses. *Id.* at 7.

Given the above, the Court finds that Genetec is entitled to recover the attorneys' fees they incurred in defending against the '652 Patent Claim between December 10, 2021, the day after Broemmelsiek's deposition, and January 3, 2023, the date of the Court's summary judgment decision.

### ii. The '954 Patent

Genetec contends that they are entitled to an award of their attorneys' fees incurred with respect to the '954 Patent Claim because, similar to the '652 Patent Claim, the '954 Patent Claim was litigated in an exceptional manner. *Id.* at 18-19.

According to Genetec, the '954 Patent and the '652 Patent are "completely unrelated patent[s]," and Sensormatic's infringement claims under the two patents involved "unrelated accused product." *Id.* Yet, Genetec contends that Sensormatic asserted the '954 Patent solely to increase the cost of the proceedings. *Id.* In support of their argument that Sensormatic asserted the '954 Patent to increase litigation costs, Genetec alleges that Sensormatic consistently refused Genetec's request that Sensormatic narrow its case to a reasonable number of claims. *Id.* at 19. Because Genetec failed to respond to Sensormatic's offer that the parties "postpon[e] further discussions of reductions" until "service of the parties' respective final contentions," the Court finds that Sensormatic did not "refuse" to narrow its claims. D.I. 268 at 17.

Genetec also contends that Sensormatic sought to increase costs and complicate proceedings by taking contradictory claim construction positions and introducing new infringement theories to keep the '954 Patent Claim alive "for as long as possible." D.I. 266 at 19-20. As an example, Genetec argues that Sensormatic "took a meritless position that 'providing' a landing matrix 'data structure' to an elevator controller does not, in fact, require 'sending' that landing matrix 'data structure' to the elevator controller." *Id.* According to Genetec, Sensormatic adopted this position after it "dissuade[d] Judge Noreika from construing this term" during the Markman hearing. *Id.* While Genetec claims that it insisted during the hearing that Judge Noreika construe the term because, without construction, "there would be a latent claim construction dispute on this limitation," *id.*, the Court rejected this argument at

summary judgment and found that "neither party requested the Court to separately construe the term 'provide' during claim construction, and neither party does so now." D.I. 246 at 18. Thus, the Court is not convinced that Sensormatic acted in an unreasonable manner by raising this "new" construction dispute several months later.

Lastly, Genetec argues that Sensormatic could not have intended to reach a resolution on the merits of the '954 Patent Claim because Sensormatic knew that the accused product was insignificant to Genetec's business and "knew [that] its own practicing product did not have substantial sales." D.I. 266 at 20. Thus, Genetec maintains that "[i]t was apparent to Sensormatic from the outset that the '954 Patent would have never had any significant value commensurate with the scope of its lawsuit against a competitor." *Id.* at 19-20. Genetec, however, has identified no "de minimis exception for infringement" that would bar suit where "the amount of damages were small relative to the cost of litigation." *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. CV 10-812-RGA, 2014 WL 2196418, at *2 (D. Del. May 27, 2014). Further, even if such a rule existed, the Court agrees with Sensormatic that its decision to dismiss the '954 Patent Claim once summary judgment eliminated the '652 Patent Claim offers at least some support for the argument that Sensormatic never intended to drive up cost and "[chose] to end the litigation to conserve the parties' and Court's resources." D.I. 268 at 18.

For these reasons, Genetec has not proven that Sensormatic's litigation of the '954 Patent Claim was exceptional. Thus, Genetec's request to recover the attorneys' fees incurred by Genetec in defending against the '954 Patent Claim is denied.

### III. CONCLUSION

For the reasons stated above, at Wilmington this **27th** day of March 2024, Genetec's Motion for Attorneys' Fees (D.I. 265) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Genetec is entitled to recover their attorneys' fees incurred in defending against Sensormatic's allegations of infringement of the '652 Patent from **December 10, 2021** through **January 03, 2023**. Genetec shall provide the Court with an updated and itemized invoice for those attorneys' fees no later than **April 19, 2024**. Genetec's motion is otherwise DENIED.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE